**No. 25-1918**

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————————

STEFANO GRANATA; CAMERON PROSPERI; GUNRUNNER, LLC;
FIREARMS POLICY COALITION, INC.,
*Plaintiffs-Appellants*,

JUDSON THOMAS; COLBY CANNIZZARO,
*Plaintiffs*,

v.

ANDREA JOY CAMPBELL, in her official capacity as Attorney General of the
Commonwealth of Massachusetts; GINA KWON, in her official capacity as
Secretary of the Executive Office of Public Safety and Security of the
Commonwealth of Massachusetts,
*Defendants-Appellees*.

———————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————————————

**ASSENTED-TO MOTION FOR LEAVE TO FILE AMICUS
BRIEF OF GIFFORDS LAW CENTER TO PREVENT GUN
VIOLENCE AND BRADY CENTER TO PREVENT GUN
VIOLENCE IN SUPPORT OF DEFENDANTS-APPELLEES**

———————————————————

Jean-Paul Jaillet (1st Cir. No. 1136189)
Madeleine M. Kausel (1st Cir. No. 1206855)
Sarah B. Gonsenhauser (1st Cir. No. 1220021)
jjaillet@choate.com
mkausel@choate.com
sgonsenhauser@choate.com
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
617-248-5000

*Counsel for Amici Curiae*

*\*Of Counsel*

Douglas N. Letter*
Shira Lauren Feldman*
Tess M. Fardon*
BRADY CENTER TO
PREVENT GUN VIOLENCE
840 First Street NE, Suite 400
Washington, DC 20002
202-370-8100

William T. Clark*
Leigh Rome*
GIFFORDS LAW CENTER
TO PREVENT GUN
VIOLENCE
244 Madison Ave., Suite 147
New York, NY 10016
415-433-2062

In accordance with Federal Rule of Appellate Procedure 29, proposed amici curiae Giffords Law Center to Prevent Gun Violence ("Giffords") and Brady Center to Prevent Gun Violence ("Brady") respectfully request leave to file the attached amicus brief, statutory addendum, and notices of appearance in support of Defendants-Appellees. All parties to the above-captioned appeal consent to the filing of the attached amicus brief:

1. Giffords is a nonprofit organization dedicated to serving lawmakers, advocates, legal professionals, gun violence survivors, and others who seek to reduce gun violence and improve the safety of their communities. Giffords researches, drafts, and defends the laws, policies, and programs proven to effectively reduce gun violence. Giffords has a substantial interest in defending gun safety legislation and contributes technical expertise and informed analysis as it has in numerous cases involving firearm regulations and constitutional principles affecting gun policy.

2. Brady is the nation's most longstanding nonpartisan, nonprofit organization dedicated to reducing gun violence through education, research, and legal advocacy. Brady works to free America from gun violence by passing and defending gun violence prevention laws, reforming the gun industry, and educating the public about responsible gun ownership. Brady has a substantial interest in ensuring that the U.S. Constitution is construed to protect Americans' fundamental right to live.

1

Brady also has a substantial interest in protecting the authority of democratically elected officials to address the nation's gun violence epidemic.

3. The proposed brief will assist the Court in its consideration of the pending appeal because it offers a unique historical perspective relevant to the Second Amendment issues before the Court.

4. The proposed brief, excluding exhibits, does not exceed 6,500 words in accordance with Fed. R. App. P. 29(a)(5) and 32(g)(1).

5. All parties, through conference with counsel, have consented to the relief requested by this motion.

WHEREFORE, Giffords and Brady respectfully request that this Court grant leave to file the attached amicus brief.

2

Dated: April 1, 2026

Respectfully submitted,

/s/ Jean-Paul Jaillet

Douglas N. Letter*
Shira Lauren Feldman*
Tess M. Fardon*
BRADY CENTER TO PREVENT
GUN VIOLENCE
840 First Street NE, Suite 400
Washington, DC 20002
202-370-8100

Jean-Paul Jaillet (1st Cir. No. 1136189)
Madeleine M. Kausel (1st Cir. No. 1206855)
Sarah B. Gonsenhauser (1st Cir. No. 1220021)
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA  02110
617-248-5000
jjaillet@choate.com
mkausel@choate.com
sgonsenhauser@choate.com

William T. Clark*
Leigh Rome*
GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE
244 Madison Ave., Suite 147
New York, NY 10016
415-433-2062

*Of Counsel

*Counsel for Proposed Amici Giffords Law
Center to Prevent Gun Violence and Brady
Center to Prevent Gun Violence*

3

**No. 25-1918**

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**
_____

STEFANO GRANATA; CAMERON PROSPERI; GUNRUNNER, LLC;
FIREARMS POLICY COALITION, INC.,
*Plaintiffs-Appellants*,

JUDSON THOMAS; COLBY CANNIZZARO,
*Plaintiffs*,

v.

ANDREA JOY CAMPBELL, in her official capacity as Attorney General of the
Commonwealth of Massachusetts; GINA KWON, in her official capacity as
Secretary of the Executive Office of Public Safety and Security of the
Commonwealth of Massachusetts,
*Defendants-Appellees*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
_____

**BRIEF OF GIFFORDS LAW CENTER TO PREVENT GUN
VIOLENCE AND BRADY CENTER TO PREVENT GUN
VIOLENCE AS AMICI CURIAE IN SUPPORT OF
DEFENDANTS-APPELLEES AND AFFIRMANCE**
_____

Jean-Paul Jaillet (1st Cir. No. 1136189)
Madeleine M. Kausel (1st Cir. No. 1206855)
Sarah B. Gonsenhauser (1st Cir. No. 1220021)
jjaillet@choate.com
mkausel@choate.com
sgonsenhauser@choate.com
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
617-248-5000

*Counsel for Amici Curiae*

*\*Of Counsel*

Douglas N. Letter*
Shira Lauren Feldman*
Tess M. Fardon*
BRADY CENTER TO
PREVENT GUN VIOLENCE
840 First Street NE, Suite 400
Washington, DC 20002
202-370-8100

William T. Clark*
Leigh Rome*
GIFFORDS LAW CENTER
TO PREVENT GUN
VIOLENCE
244 Madison Ave., Suite 147
New York, NY 10016
415-433-2062

## DISCLOSURE STATEMENT

Amicus curiae Giffords Law Center to Prevent Gun Violence ("Giffords") hereby certifies that it has no parent corporation. It has no stock, and therefore no publicly held corporation owns 10% or more of its stock.

Amicus curiae Brady Center to Prevent Gun Violence ("Brady") hereby certifies that it has no parent corporation. It has no stock, and therefore no publicly held corporation owns 10% or more of its stock.

# **TABLE OF CONTENTS**

**Page**

DISCLOSURE STATEMENT ........................................................................ i

STATEMENT OF IDENTIFICATION ..........................................................1

SUMMARY OF THE ARGUMENT ..............................................................3

ARGUMENT .................................................................................................6

I.  THE REGULATIONS DO NOT IMPLICATE CONDUCT PRO-
    TECTED BY THE SECOND AMENDMENT'S PLAIN TEXT. .................6

    A.  Plaintiffs-Appellants Fail to Demonstrate That the Second
        Amendment's Plain Text Applies. ................................................8

    B.  The Regulations Do Not "Meaningfully Constrain" Plaintiffs'
        Second Amendment Rights. ........................................................10

    C.  The Regulations Are "Presumptively Lawful." ..........................12

II.  ALTERNATIVELY, THE REGULATIONS ARE CONSTITU-
     TIONAL BECAUSE THEY ARE CONSISTENT WITH OUR HIS-
     TORICAL TRADITION OF FIREARM REGULATION. ........................13

    A.  Bruen's Historical Analogue Test. ..............................................13

        1.  The Relevant Timeframe. ....................................................14

        2.  The Number of Historical Analogues. ................................15

    B.  The Nation Has a Historical Tradition of Gun Safety Regula-
        tion. ..............................................................................................15

        1.  Overview of the Firearm and Gunpowder "Proving" Pro-
            cess. ....................................................................................16

        2.  Our Nation Has a Longstanding Tradition of Firearm and
            Gunpowder Proving Laws. .................................................19

        3.  These Proving Laws Are "Relevantly Similar" to the
            Contemporary Massachusetts Regulations. .......................26

CONCLUSION ...............................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antonyuk v. James*,
  120 F.4th 941 (2d Cir. 2024) ...............................................................15

*Ass'n of N.J. Rifle & Pistol Clubs v. Att'y Gen. N.J.*,
  910 F.3d 106 (3d Cir. 2018) ..................................................................1

*B & L Prods., Inc. v. Newsom*,
  104 F.4th 108 (9th Cir. 2024) ...............................................9, 11, 12

*Barnett v. Raoul*,
  756 F. Supp. 3d 564 (S.D. Ill. 2024)......................................................1

*Capen v. Campbell*,
  134 F.4th 660 (1st Cir. 2025).........................................................*passim*

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)........................................................................*passim*

*Garland v. Cargill*,
  602 U.S. 406 (2024)...............................................................................1

*Gazzola v. Hochul*,
  88 F.4th 186 (2d Cir. 2023) ................................................................12

*Granata v. Campbell*,
  798 F. Supp. 3d 46 (D. Mass. 2025)..............................................*passim*

*Granata v. Campbell*,
  No. 25- 1918 (1st Cir. Mar. 25, 2026)................................................23

*Granata v. Campbell*,
  No. 25-1918 (1st Cir. Feb. 2, 2026).......................................................6

*Hanson v. District of Columbia*,
    671 F. Supp. 3d 1 (D.D.C. 2023), *aff'd sub nom.*, *Hanson v. Smith*,
    120 F.4th 223 (D.C. Cir. 2024), *cert. denied*, 145 S. Ct. 2778
    (2025).............................................................................................................2

*Hanson v. Smith*,
    120 F.4th 223 (D.C. Cir. 2024)..........................................................................2

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010).....................................................................................1, 12

*McRorey v. Garland*,
    99 F.4th 831 (5th Cir. 2024) ..............................................................................9

*Morehouse Enters., LLC v. BATFE*,
    2022 U.S. Dist. LEXIS 151356 (D.N.D. Aug. 23, 2022), *aff'd*, 78
    F.4th 1011 (8th Cir. 2023) .................................................................................9

*N.Y. State Firearms Ass'n v. James*,
    157 F.4th 232 (2d Cir. 2025) ............................................................................11

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
    597 U.S. 1 (2022).................................................................................*passim*

*Nat'l Ass'n for Gun Rights v. Lamont*,
    685 F. Supp. 3d 63 (D. Conn 2023)....................................................................2

*Ocean State Tactical, LLC v. State of Rhode Island*,
    95 F.4th 38 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 2771 (2025).......................2

*Rocky Mtn. Gun Owners v. Polis*,
    121 F.4th 96 (10th Cir. 2024) .......................................................................9, 12

*Teixeira v. Cty. of Alameda*,
    873 F.3d 670 (9th Cir. 2017) .........................................................................9, 20

*United States v. Cherry*,
    2024 U.S. Dist. LEXIS 12315 (E.D. Pa. Jan. 24, 2024)....................................26

*United States v. Hayes*,
    555 U.S. 415 (2009).............................................................................................2

*United States v. Rahimi*,
   602 U.S. 680 (2024)..................................................................................*passim*

*United States v. Sharkey*,
   693 F. Supp. 3d 1004 (S.D. Iowa 2023), *aff'd*, 131 F.4th 621 (8th
   Cir. 2025) ..............................................................................................26

*United States v. Tita*,
   2022 U.S. Dist. LEXIS 231140 (D. Md. Dec. 22, 2022), *aff'd sub
   nom.*, *United States v. Nji*, 159 F.4th 259 (4th Cir. 2025)....................16

*United States v. Vlha*,
   142 F.4th 1194 (9th Cir. 2025) ............................................................11

*Vt. Fed'n of Sportsmen's Clubs v. Birmingham*,
   741 F. Supp. 3d 172 (D. Vt. 2024) .........................................................9

**Constitution**

U.S. CONST. amend. II....................................................................................5

**Statutes and Regulations**

15 U.S.C. § 7901(b)(1)...................................................................................9

15 U.S.C. § 7903(5)(A)(v)..............................................................................9

18 U.S.C. § 922(k) ........................................................................................26

501 C.M.R. § 7.03.........................................................................................28

501 C.M.R. § 7.05...........................................................................................7

940 C.M.R. § 16.00 et seq. ........................................................................5, 7

940 C.M.R. § 16.03........................................................................................18

940 C.M.R. § 16.04(1)-(2)............................................................................27

940 C.M.R. § 16.05(1)-(2)............................................................................28

1856 Ala. Acts 17, No. 26.............................................................................28

Fed. R. App. P. 29(a)(2)................................................................3

1804 Mass. Acts 111, ch. 81 ...............................................23, 24, 29

1808 Mass. Acts 444, ch. 52 ............................................................24

1809 Mass. Acts 205, ch. 118 ..........................................................25

1810 Mass. Acts 303, ch. 72 ............................................................25

1814 Mass. Acts 464, ch. 192 ..........................................................26

1881 Mass. Acts 373, ch. 27 ............................................................24

1884 Mass. Acts 57, ch. 76 ..............................................................28

1911 Mass. Acts 484, ch. 495 ..........................................................24

Mass. Gen. Laws ch. 140, § 123(o) .............................................*passim*

Mass. Gen. Laws ch. 140, § 131 ¾.....................................................7

1821 Me. Laws 546, ch. 162............................................................26

1820 N.H. Laws 274 ......................................................................22

1776-1777 N.J. Laws 6, ch. 6 .........................................................21

1794 Pa. Laws 764, ch. 337 ............................................................22

1776 R.I. Pub. Laws 25..................................................................22

1800 VA. ACTS 118, ch. 152 ............................................................28

## Other Authorities

*8 Documents and Records Relating to the State of New Hampshire*
   *During the Period of the American Revolution, from 1776-1783*,
   15-16 (Nathaniel Bouton ed. 1874) (Jan. 12, 1775) ...........................21

Billy Clark, *"Proven" Safety Regulations: Massachusetts 1805*
   *Proving Law As Historical Analogue for Modern Gun Safety Laws*,
   108 Minn. L. Rev. 327 (2024) ........................................................17

Calvin Goddard, *Proof Tests and Proof Marks: I: Small Arms Practice of the British Companies*, 14 Army Ordinance 140 (1933).................17

Calvin Goddard, *Proof Tests and Proof Marks: IV: Practices of Manufacturers in the United States*, 14 Army Ordinance 354 (1934)..................................................................................................17

Calvin Goddard, *Proof Tests and Proof Marks: V: Practices in the U. S. Military Service*, 15 Army Ordinance, 32 (1934)....................................18, 19

George D. Moller, American Military Shoulder Arms 218-19 (2nd ed. 2011) ....................................................................................................26

Massachusetts Militia Musket, Perhaps for an Officer, Massachusetts, c. 1827, Bonhams Cars (Oct. 5, 2023), https://cars.bonhams.com/auction/28627/lot/32/massachusetts-militia-musket-perhaps-for-an-officer [https://perma.cc/4HAY-VWPR]...............................................................................................25

MIN. SUP. PENN., 10:535 .....................................................................................21

*Proof Marks*, NRA Museum, https://www.nramuseum.org/gun-info-research/proof-marks-from-the-blue-book.aspx [https://perma.cc/8KTD-E7LK]...........................................................19

Resolution of the Maryland Council Of Safety, Aug. 29, 1775, Archives of Maryland, 11:75 ..........................................................20

Resolutions of the Pennsylvania Committee On Safety, Oct. 27, 1775, COL. REC. PENN. 10:383.........................................................................20

Richard W. Stewart, *The London Gunmakers and the Ordinance Office*, 1590-1637, 55 Am. Soc'y of Arms Collectors Bulletin 21, 23 (1986)....................................................................................19

William Burdick, *The Massachusetts Manual: or Political and Historical Register, For the Political Year from June 1814 to June 1815*, 137-38 (Vol. 1, 1814) ..............................................................25

Wolseley, *The Charter of the Company of Gunmakers*, J. of the Soc'y for Army Hist. Rsch., 79-94 (1927)..................................................... 20

## STATEMENT OF IDENTIFICATION

Giffords Law Center to Prevent Gun Violence ("Giffords") is a survivor-led nonprofit organization serving lawmakers, advocates, legal professionals, gun violence survivors, and others seeking to reduce gun violence and to improve the safety of their communities. Through partnerships with gun violence researchers, public health experts, and community organizations, Giffords researches, drafts, and defends the laws, policies, and programs proven to reduce gun violence. Giffords also advocates for the interests of gun owners and law enforcement officials who understand that Second Amendment rights have always been consistent with gun safety legislation and community violence prevention strategies. Giffords has contributed technical expertise and informed analysis as an amicus in numerous cases involving firearm regulations and constitutional principles affecting gun policy. *See, e.g.*, *United States v. Rahimi*, 602 U.S. 680 (2024); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *District of Columbia v. Heller*, 554 U.S. 570 (2008); *Capen v. Campbell*, 134 F.4th 660 (1st Cir. 2025). Several courts have cited Giffords' expertise in Second Amendment rulings. *See, e.g.*, *Garland v. Cargill*, 602 U.S. 406, 432-33 (2024) (Sotomayor, J., dissenting); *Ass'n of N.J. Rifle & Pistol Clubs v. Att'y Gen. N.J.*, 910 F.3d 106, 122 (3d Cir. 2018); *Barnett v. Raoul,* 756 F. Supp. 3d 564, 630 (S.D. Ill. 2024); *Granata v. Campbell*, 798 F. Supp. 3d 46, 53 (D. Mass. 2025) ("*Granata II*").

Brady Center to Prevent Gun Violence ("Brady") is the Nation's most longstanding nonpartisan, nonprofit organization dedicated to reducing gun violence through education, research, and legal advocacy.  Brady works to free America from gun violence by passing and defending gun violence prevention laws, reforming the gun industry, and educating the public about responsible gun ownership.  Brady has a substantial interest in ensuring that the U.S. Constitution is construed to protect the fundamental right to live for all Americans.  Brady also has a substantial interest in protecting the authority of democratically elected officials to address the Nation's gun violence epidemic.  Brady has filed amicus briefs in many cases involving the regulation of firearms, including *Rahimi*, 602 U.S. 680; *Bruen*, 597 U.S. 1; *Heller*, 554 U.S. 570; and *Ocean State Tactical, LLC v. State of Rhode Island*, 95 F.4th 38 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 2771 (2025); *Capen*, 134 F.4th 660.  Multiple courts have cited Brady's expertise on these issues.  *See, e.g.*, *United States v. Hayes*, 555 U.S. 415, 427 (2009); *Granata II*, 798 F. Supp. 3d at 53; *Hanson v. Smith*, 120 F.4th 223, 248, 249 (D.C. Cir. 2024); *Nat'l Ass'n for Gun Rights v. Lamont*, 685 F. Supp. 3d 63, 85, 96, 97 n.30, 104, 110 & n.52 (D. Conn 2023); *Hanson v. District of Columbia*, 671 F. Supp. 3d 1, 14, 19 n.10, 20, 23 (D.D.C. 2023), *aff'd sub nom.*, *Hanson v. Smith*, 120 F.4th 223 (D.C. Cir. 2024), *cert. denied*, 145 S. Ct. 2778 (2025).

Giffords and Brady file this brief pursuant to Federal Rule of Appellate Procedure 29(a)(2). All parties to the appeal have consented to the filing of this brief.[1]

## SUMMARY OF THE ARGUMENT

The Second Amendment to the U.S. Constitution does not prevent commonsense safety regulations that restrict the commercial sale of defective and otherwise unsafe handguns. The challenged regulations at issue here ensure that guns are safer for those who shoot and store them. Under this regime, there are over 1,000 handgun models that remain available for lawful purchase in Massachusetts. The Second Amendment is not applicable here because Plaintiffs-Appellants do not have a constitutional right to buy or possess firearms that are prone to malfunction and are, thus, unsafe for users and those around them. Put simply, there is no constitutional right to purchase an unsafe handgun.

Even if the Second Amendment applied, the Supreme Court's recent Second Amendment decisions support affirmance. The Supreme Court has repeatedly and expressly held that regulations placing conditions on the commercial sale of guns are "presumptively lawful." *See Heller*, 554 U.S. at 626-27 & n.26; *id.* at 626

---

[1] No party's counsel authored this brief, and no party, counsel, or other person contributed funds for its preparation or submission.

("[T]he right secured by the Second Amendment is not unlimited.  From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.").

In *Bruen*, the Supreme Court articulated a two-step process for analyzing Second Amendment challenges.  597 U.S. at 24.  Under the first step, Plaintiffs-Appellants must establish that they are part of "the people" to whom the Second Amendment's protections attach and that the Second Amendment's plain text protects the conduct at issue.  *See id*. at 31-33.  If not, the Second Amendment does not bar the challenged regulation.  *See id*. at 24.  If the Second Amendment's plain text protects the conduct at issue, the burden shifts to the government to "demonstrat[e] that [the conduct] is consistent with the Nation's historical tradition of firearm regulation."  *Id.* at 24, 33-34.  Under either step, this Court should conclude that the challenged regulations are constitutional.

First, Plaintiffs-Appellants cannot establish that the Second Amendment's plain text covers the conduct at issue.  *See id.* at 24, 32.  They challenge the constitutionality of Massachusetts laws restricting the commercial sale of handguns that fail performance tests designed to determine if these handguns are prone to malfunction or failure (the "Regulations").  Specifically, the Regulations require that

firearm models sold by in-state licensed dealers possess certain minimum manufacturing standards and pass minimum operational safety tests. MASS. GEN. LAWS ch. 140, § 123(o); 940 C.M.R. § 16.00 et seq. The Second Amendment's plain text protects "the right of the people to keep and bear Arms," which the Supreme Court has interpreted to guarantee an "individual right to possess and carry weapons" for lawful self-defense. U.S. CONST. amend. II; *Heller*, 554 U.S. at 592. The Regulations do not prohibit or regulate the *possession* or *carrying* of firearms in any way.

To the contrary, the challenged Regulations actually facilitate Second Amendment rights by ensuring that Massachusetts residents' handguns are safe to use for lawful self-defense. The Regulations simply require that handguns sold in Massachusetts meet manufacturing requirements designed to minimize gun failures by keeping defective products off the market. As a result, they allow for the purchase and sale of hundreds of properly manufactured handgun models. These "conditions . . . on the commercial sale of arms" are "presumptively lawful regulatory measures." *Heller*, 554 U.S. at 626-27 & n.26. The inquiry can end there.

If the Court were to reach *Bruen's* second step, Massachusetts has met its burden because it has identified "a well-established and representative historical *analogue*" to the modern regulation. *See* 597 U.S. at 30 (emphasis in original).

There are over 70 analogous historical regulations and resolutions from the colonial period through 1900 that mandate safety conditions for firearms or weapon sales.[2] Collectively, these laws evidence a long-standing recognition that firearms, like any product, can be (and indeed should be) regulated to ensure that they do not pose an unreasonable danger to their users or the public at large. The Regulations strike the same important balance as these historical laws: preserving access to firearms while promoting public safety by establishing minimum safety standards.

Accordingly, the Court should conclude that both the text and history support the constitutionality of the Regulations and affirm the District Court's judgment.

## ARGUMENT

### I. THE REGULATIONS DO NOT IMPLICATE CONDUCT PROTECTED BY THE SECOND AMENDMENT'S PLAIN TEXT.

Plaintiffs-Appellants challenge the constitutionality of certain portions of Massachusetts law requiring safety performance standards on handguns that are commercially sold by licensed firearms dealers. *See* MASS. GEN. LAWS ch. 140, § 123(o); Appellants' Br. at 5-6, *Granata v. Campbell*, No. 25-1918 (1st Cir. Feb. 2,

---

[2] *See* Appendix A.

- 6 -

2026).[3]

The Regulations do not prohibit or regulate the *possession* or *carrying* of handguns. Rather, they impose safety standards on the commercial sale of firearms. Under MASS. GEN. LAWS ch. 140, § 131 ¾, the Massachusetts Secretary of the Executive Office of Public Safety and Security is directed to publish a roster of handguns that meet the requirements set forth in MASS. GEN. LAWS ch. 140, § 123(o) (the "Approved Firearms Roster").

With certain exceptions not relevant here, a licensed firearms dealer can sell guns in Massachusetts only if the guns are listed on the Approved Firearms Roster. *See* 501 C.M.R. § 7.05. To be eligible for the Approved Firearms Roster, a handgun model must satisfy a series of safety-related manufacturing conditions. *See, e.g.*, MASS. GEN. LAWS ch. 140, § 123(o) (handgun must satisfy certain melting point, strength, and density requirements, unless the make and model of firearm passes a "test" where an inspector "fires the first 20 rounds without a malfunction, fires the full 600 rounds with not more than six malfunctions and completes the test without any crack or breakage"). These restrictions are designed to make guns safer to operate, and thus, predominantly benefit the gun owners themselves as they use their

---

[3] Plaintiffs-Appellants also challenge certain similar—and at times overlapping—Massachusetts Attorney General regulations placing safety conditions on the commercial sale of guns. *See* 940 C.M.R. § 16.00 et seq.

weapons for lawful self-defense purposes.  The Supreme Court has identified lawful self-defense as the central purpose of the Second Amendment individual right to have guns.

As a result, the Regulations actually *promote* Second Amendment rights for Massachusetts residents by ensuring the availability of safe handguns that can be relied on by their owners as they engage in lawful self-defense.

## A.    Plaintiffs-Appellants Fail to Demonstrate That the Second Amendment's Plain Text Applies.

Plaintiffs-Appellants cannot meet their burden under the first step of *Bruen* because safety regulations placing conditions on commercial gun sales do not infringe on Second Amendment rights.  The Second Amendment protects "the right of the people to keep and bear Arms."  U.S. CONST. amend. II.  In *Heller*, the Supreme Court concluded that "keep" means "possess" and "bear arms" means "carrying for a particular purpose," which is lawful self-defense.  554 U.S. at 583-85, 628-29.

That individual right does not encompass a right to purchase or sell a

particular firearm, especially a defectively manufactured one.[4]  *See, e.g., McRorey v. Garland*, 99 F.4th 831, 838 (5th Cir. 2024) ("[O]n its face 'keep and bear' does not include purchase . . . in either the contemporary or the Founding-era context."); *B & L Prods., Inc. v. Newsom*, 104 F.4th 108, 117-18 (9th Cir. 2024) (same); *Rocky Mtn. Gun Owners v. Polis*, 121 F.4th 96, 120 (10th Cir. 2024) ("[L]aws imposing conditions and qualifications on the sale and purchase of arms do not implicate the plain text of the Second Amendment."); *Vt. Fed'n of Sportsmen's Clubs v. Birmingham*, 741 F. Supp. 3d 172, 184, 208 (D. Vt. 2024) ("[S]tates may impose conditions and qualifications on the commercial sale of arms" without infringing on "the right of the people to keep and bear Arms.").[5]

Plaintiffs-Appellants argue that because the Regulations prevent them from

---

[4] Congress agrees.  For example, the Protection of Lawful Commerce in Arms Act ("PLCAA") permits lawsuits against gun industry members for selling defective firearms.  *See* 15 U.S.C. § 7903(5)(A)(v) (establishing a design or manufacturing defect exception to PLCAA); *see also id.* § 7901(b)(1) (providing immunity "when the product functioned as designed and intended").

[5] *See also Teixeira v. Cty. of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) ("[T]he Second Amendment does not confer a freestanding right . . . upon a proprietor of a commercial establishment to sell firearms" because "the right of gun users to acquire firearms legally is not coextensive with the right of a particular proprietor to sell them."); *Morehouse Enters., LLC v. BATFE*, 2022 U.S. Dist. LEXIS 151356, at *27 (D.N.D. Aug. 23, 2022) ("There is a longstanding distinction between the right to keep and bears arms and commercial regulation of firearm sales."), *aff'd*, 78 F.4th 1011 (8th Cir. 2023).

buying certain *unsafe* handguns, the laws impose a "handgun ban." This argument is doubly flawed. First, as detailed above, selling a firearm and possessing one are constitutionally distinct. Second, Plaintiffs-Appellants concede that the Approved Firearms Roster contains hundreds of handguns that comply with MASS. GEN. LAWS. ch. 140, § 123(o), *see* Appellants' Br. at 4, 8-9, and they do not argue that the Regulations prevent their purchase or render them inadequate in effectuating their Second Amendment rights. *See Capen*, 134 F.4th at 674 (rejecting the proposition that "a law that bans certain handguns with certain features is equivalent for constitutional purposes to a law that bans all handguns as a class").

Because the Regulations do not prohibit the *possession* or *carrying* of handguns but instead permit the purchase of hundreds of models of handguns that have commonsense safety features, the plain text of the Second Amendment does not apply. On this basis alone, this Court should hold the challenged Regulations constitutional.

### B.   The Regulations Do Not "Meaningfully Constrain" Plaintiffs' Second Amendment Rights.

The plain text of the Second Amendment speaks of a right to "keep" and "bear" arms for lawful self-defense—not some right to acquire any firearm, particularly unsafe firearms. However, to ensure the full exercise of the right to "keep" and "bear" arms, the Second Amendment may protect "activities ancillary to

the core possessory right." *United States v. Vlha*, 142 F.4th 1194, 1198 (9th Cir. 2025). Under the ancillary rights doctrine, "ancillary conduct" is "only protected to the extent that [it is] necessary to the realization of the textually specified right to keep and bear arms." *N.Y. State Firearms Ass'n v. James*, 157 F.4th 232, 244 (2d Cir. 2025) (quotation marks omitted). Consequently, laws regulating the "acquiring, transporting, and storing [of] firearms only implicate the text of the Second Amendment if they *meaningfully constrain* the right to possess and carry arms." *Id.* (quotation marks omitted); *see also B & L Prods., Inc.,* 104 F.4th at 118 ("[T]he plain text of the Second Amendment only prohibits meaningful constraints on the right to acquire firearms.").

Here, the Regulations do not meaningfully constrain Plaintiffs-Appellants' Second Amendment rights. Plaintiffs-Appellants have never argued that they are unable to purchase a handgun in Massachusetts. There are over 1,000 handguns—whose safety has been established by scientific testing—available for lawful purchase. As the District Court noted below, Plaintiffs already "own various handguns suitable to keep and carry in the event of a confrontation," with Plaintiff Granata owning fourteen firearms, including nine different handgun models. *Granata II*, 798 F. Supp. 3d at 57. There is no evidence that Plaintiffs-Appellants have been unable to purchase and possess handguns in Massachusetts. *Id.*

Thus, Plaintiffs-Appellants face no meaningful constraint on their right to "keep" and "bear" arms. *See Gazzola v. Hochul*, 88 F.4th 186, 197-98 (2d Cir. 2023) (upholding New York regulations on gun dealers, finding "no evidence" that New York citizens "will be meaningfully constrained—or, for that matter, constrained at all—in acquiring firearms").

### C.     The Regulations Are "Presumptively Lawful."

Finally, the Regulations do not implicate the Second Amendment's plain text because they are "presumptively lawful" commercial regulations.  The Supreme Court has repeatedly confirmed that laws imposing conditions on the commercial sale of firearms are "presumptively lawful." *See Heller*, 554 U.S. at 626-27 & n.26; *McDonald*, 561 U.S. at 786; *Bruen*, 597 U.S. at 80-81 (Kavanaugh, J., concurring); *B & L Prods., Inc.*, 104 F.4th at 118-19 ("The Supreme Court itself has . . . explicitly framed 'laws imposing conditions and qualifications on the commercial sale of arms' as '*presumptively lawful* regulatory measures.'").  Lower courts have thus recognized that "laws imposing conditions and qualifications on the sale and purchase of arms do not implicate the plain text of the Second Amendment." *Rocky Mtn. Gun Owners*, 121 F.4th at 120; *see also B & L Prods., Inc.*, 104 F.4th at 119 ("[C]ommercial restrictions presumptively do not implicate the plain text of the Second Amendment at the first step of the *Bruen* test.").  Because the Regulations

are conditions on the commercial sale of guns, they are presumptively lawful, and for this additional reason, the Court should conclude that the Second Amendment does not apply here.

## II. ALTERNATIVELY, THE REGULATIONS ARE CONSTITUTIONAL BECAUSE THEY ARE CONSISTENT WITH OUR HISTORICAL TRADITION OF FIREARM REGULATION.

### A. Bruen's Historical Analogue Test.

If the Second Amendment's plain text applies to a challenged regulation, the burden shifts from the party challenging the law to the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. The government must demonstrate that the law at issue is "relevantly similar" to historical firearms regulations. *Id.* at 29.

Courts should use "analogical reasoning" and compare "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 28-30. Specifically, the government should "identify a well-established and representative historical *analogue*" but is not required to identify "a historical *twin*." *Id.* at 30. "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.*; *see also Rahimi*, 602 U.S. at 698 ("[The statute] is by no means identical to these founding era regimes, but it does not need to be.").

### 1.     The Relevant Timeframe.

As the District Court explained, the Supreme Court has declined to establish a bright-line rule concerning the relevant timeframe for historical analysis. *See Granata II*, 798 F. Supp. 3d at 60. In fact, in *Bruen*, the Court expressly declined to address "whether courts should primarily rely on the prevailing understanding of an individual right" at the time of the Second Amendment's ratification in 1791, the Fourteenth Amendment's ratification in 1868, or some other time. *See* 597 U.S. at 36-38; *see also Rahimi*, 602 U.S. at 692 n.1.

Instead, *Bruen* examined regulations from various periods: "(1) medieval to early modern England; (2) the American Colonies and the early Republic; (3) antebellum America; (4) Reconstruction; and (5) the late-19th and early-20th centuries." 597 U.S. at 34, 38-70. The Court also confirmed that "how the Second Amendment was interpreted from immediately after its ratification [in 1791] through the end of the 19th century represented a critical tool of constitutional interpretation." *Id.* at 35. Late 19th century and early 20th century evidence can also be probative to the extent that it corroborates "earlier evidence." *See id.* at 66 & n.28; *Heller*, 554 U.S. at 614.

Against this backdrop, courts define the relevant historical timeframe broadly. *See Rahimi*, 602 U.S. at 740 ("'Analogical reasoning' under *Bruen* demands a wider

- 14 -

lens: Historical regulations reveal a principle, not a mold.") (Barrett, J., concurring); *see also Antonyuk v. James*, 120 F.4th 941, 974 (2d Cir. 2024) (stating that "1791 and 1868 are both fertile ground" to "seek evidence of our national tradition of firearms regulation").

### 2.    The Number of Historical Analogues.

Nothing in the Supreme Court's Second Amendment jurisprudence requires the government to identify a specific number of historical analogues.  The inquiry is not about identifying a specific number of "dead ringer[s]," but is instead a holistic one that asks whether a challenged law "comport[s] with the principles underlying the Second Amendment."  *Rahimi*, 602 U.S. at 692*; see also Capen*, 134 F. 4th at 672-74 (concluding that several different categories of analogues are sufficient to justify the Massachusetts assault weapons ban).

As discussed below and in the Statutory Addendum attached as Appendix A, we reference over 70 laws and resolutions that are closely analogous to the Regulations at issue.  Although such a large number of analogues is unnecessary to survive a Second Amendment challenge, the volume demonstrates the strength of the historical tradition supporting the Regulations.

### B.    The Nation Has a Historical Tradition of Gun Safety Regulation.

The United States has a robust historical tradition of laws that are "relevantly similar" to the challenged Regulations.  *See Bruen*, 597 U.S. at 29.  As detailed

- 15 -

below, firearm and gunpowder "proving" laws are especially close analogues. These historical laws share the same "how" (imposing conditions on commercial gun sales) and the same "why" (ensuring the safety and functionality of commercially sold firearms) as the Regulations. *See id.*

As a result, the government easily meets its burden to identify a "representative historical *analogue*" to the Regulations. *See id.* at 30; *see also United States v. Tita*, 2022 U.S. Dist. LEXIS 231140, at *18-19 (D. Md. Dec. 22, 2022) ("As the Government aptly notes, 'governments have been regulating the sale, possession, and transfer of firearms' since the Founding Era. . . . States continued to regulate the manufacture, sale, and transport of guns and ammunition in the 18th and 19th centuries, notably in Massachusetts and New Hampshire where guns and storage facilities had to be inspected."), *aff'd sub nom.*, *United States v. Nji*, 159 F.4th 259 (4th Cir. 2025).

### 1.    Overview of the Firearm and Gunpowder "Proving" Process.

The Nation—and Massachusetts especially—has a rich history of requiring firearms and gunpowder to meet safety performance standards prior to their sale. Like the challenged Regulations, these historical laws were designed to prevent gun malfunctions, accidental discharges, explosions, and other safety risks. Historical laws requiring firearms and gunpowder to be "proved" before sale constitute an

- 16 -

especially close category of analogues.

Proving a firearm is a testing process whereby a weapon is fired using different levels of charges to confirm that the weapon will withstand the pressure and wear of use.[6] When the weapon passes a proving test, it is stamped with a "proof mark."[7] A proof mark may be the initials of the individual inspector who tested the weapon, or it may bear the mark of the "proof house" where the weapon was tested.[8] Historically, proving was "commonly conducted in two stages": the "provisional proof" stage and the "definitive proof" stage. At the provisional proof stage, the firearm's barrel was tested by itself with a small amount of powder, and then a larger amount of powder was used at the definitive stage to test the entire firearm.[9] Below are examples of English and American proof marks:

---

[6] *See generally* Billy Clark, *"Proven" Safety Regulations: Massachusetts 1805 Proving Law As Historical Analogue for Modern Gun Safety Laws*, 108 MINN. L. REV. 327, 329 (2024).

[7] *See* Calvin Goddard*, Proof Tests and Proof Marks: I: Small Arms Practice of the British Companies*, 14 ARMY ORDINANCE 140, 140 (1933) ("Goddard I"); *see e.g.,* Figures 1-3.

[8] *See* Calvin Goddard, *Proof Tests and Proof Marks: IV: Practices of Manufacturers in the United States*, 14 ARMY ORDINANCE 354, 357 (1934) ("Goddard IV").

[9] Goddard I at 148.



Figure 1: Provisional Proof Marks, Gunmakers' Company, London.[10]



Figure 2: United States Government Proof Marks (used from 1799-1934).[11]

Proving and proof marks served several important purposes that had no effect on Second Amendment rights, including ensuring that firearms met certain safety standards before being sold and creating a chain of custody to track how and where

---

[10] *Id.* at 145.

[11] Calvin Goddard, *Proof Tests and Proof Marks: V: Practices in the U. S. Military Service*, 15 ARMY ORDINANCE, 32, 33 (1934) ("Goddard V"); *cf.* 940 C.M.R. § 16.03 (requiring tamper-resistant serial numbers).

they were inspected.[12]

### 2. Our Nation Has a Longstanding Tradition of Firearm and Gunpowder Proving Laws.

Proving firearms is a longstanding tradition dating back to the 16th and 17th centuries. As early as the 16th century, England sought to regulate the firearms industry to ensure minimum safety and quality standards. In 1572, the English Parliament considered a bill requiring all weapons to be tested and branded with proof marks.[13] Although the bill did not pass at that time, the Privy Council continued to advocate for the regulation of firearms due to public safety concerns.[14]

In the 17th century, England enacted regulations governing the firearms industry to ensure the safety and quality of firearms sold and manufactured for its citizenry. In 1637, King Charles I granted the London Proof House a royal charter, empowering it to set safety and quality standards for firearms sold or manufactured

---

[12] *See* Goddard V at 32-33; *Proof Marks*, NRA MUSEUM, https://www.nra-museum.org/gun-info-research/proof-marks-from-the-blue-book.aspx [https://perma.cc/8KTD-E7LK] ("[P]roof marks . . . will assist in determining nationality of manufacturers when no other markings are evident.").

[13] Richard W. Stewart, *The London Gunmakers and the Ordinance Office*, 1590-1637, 55 AM. SOC'Y OF ARMS COLLECTORS BULLETIN 21, 23 (1986).

[14] *Id.* at 23-24.

in London.[15] The 1637 royal charter prohibited the sale of any firearms that had not been proved and stamped with a proofing mark "upon pain of the Loss and Forfeiture" and authorized the seizure of firearms that had not been proved.[16]

Prior to the Nation's founding, "colonial governments substantially controlled the firearms trade. The government provided and stored guns, controlled the conditions of trade, and financially supported private firearms manufacturers." *Teixeira*, 873 F.3d at 685.

Significantly, during the Revolutionary War, colonial "Councils of Safety" or "Committees of Safety"—which helped manage the War effort—required muskets to meet certain manufacturing and proving standards prior to their purchase. *See, e.g.*, Resolution of the Maryland Council Of Safety, Aug. 29, 1775, Archives of Maryland, 11:75 (approving purchase of muskets with detailed manufacturing specifications and requiring that they be "proved" prior to their purchase); Resolutions of the Pennsylvania Committee On Safety, Oct. 27, 1775, COL. REC.

---

[15] *See* Stewart, *supra* n.13, at 25 ("[T]he arrangement benefited the government because it provided the security of a guaranteed and expandable production base for weapons of a standard type and quality. . . . Standards could be maintained, weapons proofed systematically, proof marks established for better accountability . . . and enforcement powers vested in a recognized organization.").

[16] Wolseley, *The Charter of the Company of Gunmakers*, J. OF THE SOC'Y FOR ARMY HIST. RSCH., 79–94 (1927).

PENN. 10:383 (requiring that all muskets be "proved" prior to their purchase); Apr. 4, 1776, MIN. SUP. PENN., 10:535 (approving "Musket Ball" purchase "to prove the Firelocks making by him for the use of this province").

In 1775, New Hampshire passed a resolution requiring that each firearm sold to the colony possess certain specifications and pass an inspection involving the safe firing of the gun. *See 8 Documents and Records Relating to the State of New Hampshire During the Period of the American Revolution, from 1776-1783*, 15-16 (Nathaniel Bouton ed. 1874) (Jan. 12, 1775) ("That for every good Fire-Arm Manufactured in this Colony, made after the following manner (viz) a Barrel three feet nine inches long, to carry an ounce ball, a good bayonet, with blade eighteen inches long . . . the owner of such fire-arms, receive three pounds for each . . . after having tried said gun in the presence of the said Receiver-General with four Inches and a half of powder, well wadded, at the owner's own risk.").

In 1776, New Jersey passed an "Act For The Inspection Of Gun-Powder," the preamble of which stated that the "vending of damaged or bad Gun-Powder within this State, especially in a Time of War, may be of the most dangerous Consequence." 1776-1777 N.J. LAWS 6, ch. 6. The Act required the inspection of gunpowder prior to its sale, appointed state inspectors, and directed them to "mark" lots that passed inspection. *Id.* §§ 1-3.

- 21 -

In 1780, General George Washington ordered the Continental Army to ensure that all arms be "sufficiently proved" to avoid the purchase of guns of poor and unsafe quality. *See* Letter from George Washington to Henry Knox (Nov. 30, 1780), *in* The Writings of George Washington from the Original Manuscript Sources 1745-1799 (John C. Fitzpatrick) ("I think it will be best for you to give orders to the Officer superintending the Laboratory to have the Barrels sufficiently proved before they are delivered to Mr. Buel, as I suspect that they are most of them of the trash kind which Mr. Lee charges Mr. Deane[']s Agent with purchasing.").

Following the Revolutionary War, states passed laws to ensure the safety of firearms and gunpowder for sale. In 1795, Pennsylvania passed "An Act Providing for the Inspection of Gun-Powder," whose preamble identified the risks of gunpowder "found to vary much in its strength" and to possess "defects." 1794 PA. LAWS 764, ch. 337. Among other safety precautions, the Act appointed state gunpowder inspectors and set mandatory standards for the composition and strength of gunpowder to be sold within the state. *Id.* §§ 1-3.[17]

---

[17] Rhode Island and New Hampshire also passed laws requiring gunpowder to pass state inspection or adhere to certain specifications before being sold. *See* 1776 R.I. PUB. LAWS 25 (Oct. Sess.) ("An Act for the Inspection of Gunpowder Manufactured within this State"); 1820 N.H. LAWS 274 ("An Act to Provide for the Appointment of Inspectors and Regulating the Manufactory of Gunpowder").

In 1805, Massachusetts passed "An Act to Provide for the Proof of Fire Arms Manufactured Within this Commonwealth."  1804 MASS. ACTS 111, ch. 81 ("1805 Act").  The preamble of the 1805 Act specified that the Act's purpose was "to prevent" the sale of firearms "which are unsafe and thereby the lives of the Citizens be exposed."  *Id*.  The Act required the appointment of inspectors to ensure that all muskets and pistols met certain standards prior to their sale, including that they be "sufficiently ground bored and breeched."  *Id.* § 1.  It also required that each firearm undergo testing to show that it could carry a shot over a certain distance and "shall in no respect fail."  *Id.*  The 1805 Act further required inspectors to mark the barrels of the weapons with a stamp to show that they complied with state requirements, only after which the guns were fit for sale.  *Id*. §§ 1-4.  It also provided monetary penalties for anyone who knowingly sold firearms that did not meet the Commonwealth's regulatory standards.  *Id*. § 3.[18]

---

[18] The 1805 Act included an exception applicable to the Springfield Armory.  *See id.* § 2.  Although Plaintiffs-Appellants invoke this exception to argue that the Act is not comparable to modern commercial safety regulations, *see* Appellants' Br. at 47, they fail to explain *why* the Act included this exception.  As the Commonwealth explains in its brief, the Springfield Armory already set its own rigorous safety standards for the weapons it produced.  Appellee's Br. at 40*, Granata v. Campbell*, No. 25-1918 (1st Cir. Mar. 25, 2026).  Moreover, the 1805 Act likely included this exception out of respect for the Supremacy Clause because the Springfield Armory was a *federal* facility.  *See* Clark, *supra* n. 7, at 342-44.  It was not the Second Amendment that motivated this exception, but was instead the Supremacy Clause implications of a state regulating a federal facility.  The 1805 Act remained in effect until its repeal in

In 1809, Massachusetts passed "An Act Providing for the Appointment of Inspectors, and Regulating the Manufactory of Gun-Powder." 1808 MASS. ACTS 444, ch. 52 ("1809 Act"). The 1809 Act was similar to the 1805 Act, except that it focused on the regulation of gunpowder, rather than gun barrels. *Id.* § 1. The 1809 Act authorized the governor to "appoint an Inspector of gun-powder for every publick [sic] powder magazine, and at every manufactory of gun-powder in this Commonwealth." *Id.* The inspector was responsible for ensuring that all manufactured gunpowder contained specified quantities and qualities of materials and could safely throw a 12-pound shot at least 75 yards. *Id.* §§ 2-4. Under this Act, state inspectors examined each cask of gunpowder and marked it as having passed or failed inspection. *Id.* § 5.

The 1805 and 1809 Acts did not simply sit on the books. Rather, historical records show that the Governor of Massachusetts exercised the powers under these Acts to appoint provers of firearms and inspectors of gunpowder in counties across

---

1881. 1881 MASS. ACTS 373, ch. 27. In 1911, Massachusetts passed "An Act Relative to Firearms," which regulated the sale of firearms and created a licensing regime that remains in effect through present day. *See* 1911 MASS. ACTS 484, ch. 495.

the Commonwealth.[19]  For example, a proof mark from the 1820s is pictured below,

displaying the prover's initials ("LH"), the year of proving (1827), a "P" for proved,

and an "M" for Massachusetts:



Figure 3: Massachusetts Proof Mark.[20]

From 1810 to 1814, Massachusetts passed a series of additional firearm and

gunpowder proving laws.  *See* 1809 MASS. ACTS 205, ch. 118 (establishing fines if

manufacturers moved gunpowder prior to inspection); 1810 MASS. ACTS 303, ch. 72

(providing that the State should furnish a howitzer to all gunpowder inspectors to

---

[19] *See, e.g.*, William Burdick, *The Massachusetts Manual: or Political and Historical Register, For the Political Year from June 1814 to June 1815*, 137-38 (Vol. 1, 1814) (listing the provers of firearms, inspectors of firearms, and the inspectors of gunpowder for Worcester County, Hampden County, Franklin County, Berkshire County, and Norfolk County for 1814-15); The Massachusetts Register and United States Calendar for 1837, 48, 68, 71 (identifying the provers of firearms for Suffolk County, Franklin County, Hampden County, and Worcester County for 1837).

[20] Massachusetts Militia Musket, Perhaps for an Officer, Massachusetts, c. 1827, BONHAMS CARS (Oct. 5, 2023), https://cars.bonhams.com/auction/28627/lot/32/massachusetts-militia-musket-perhaps-for-an-officer [https://perma.cc/4HAY-VWPR].

assist them in performing their duties); 1814 MASS. ACTS 464, ch. 192 (updating the State standards that all muskets and pistols were required to meet prior to manufacture or sale). During this time, the Massachusetts legislature also authorized the purchase of a large number of firearms, all of which needed to meet the proving standards of the 1805 law.[21]

Other states in the First Circuit followed suit. In 1821, Maine passed "An Act to Provide for the Proof of Fire Arms." *See* 1821 ME. LAWS 546, ch. 162. Like the Massachusetts proving law regime, the Maine Act required inspectors of firearms to ensure that they met certain safety standards and to mark compliant firearms prior to their sale. *Id.* §§ 1, 3.

### 3. These Proving Laws Are "Relevantly Similar" to the Contemporary Massachusetts Regulations.

The District Court rightly found that these historical proving laws are "relevantly similar" to the Massachusetts Regulations. *Granata II*, 798 F. Supp. 3d at 62; *see also United States v. Cherry*, 2024 U.S. Dist. LEXIS 12315, at *14-16 (E.D. Pa. Jan. 24, 2024) (relying on Massachusetts 1805 proving law to reject a Second Amendment challenge to 18 U.S.C. § 922(k)); *United States v. Sharkey*, 693 F. Supp. 3d 1004, 1007-09 (S.D. Iowa 2023) (same), *aff'd*, 131 F.4th 621 (8th Cir.

---

[21] George D. Moller, AMERICAN MILITARY SHOULDER ARMS 218-19 (2nd ed. 2011).

2025).

These laws—both historical and modern—are designed to protect gun owners, as well as the general public, by ensuring that no firearms are sold that are unsafe or, for that matter, unable to function properly for the Second Amendment's core purpose of lawful self-defense.  For example, the Regulations restrict the sale of guns that do not meet state-imposed requirements for certain melting point, strength, and density (i.e., standards that ensure that firearms are not made of inferior materials), as well as firearms that are "prone to exploding, accidental discharge, or repeated firing from a single trigger pull."  *See, e.g.*, 940 C.M.R. § 16.04(1)-(2). These conditions protect gun users and the public from the foreseeable harms that unsafe firearms inflict.  *See Capen*, 134 F. 4th at 672 ("[T]he historical restrictions cited by the Commonwealth reflect a common concern regarding 'the State's responsibility to protect the public from the danger caused by weapons that create a particular public safety threat.'").

The Regulations also require gun sellers to test (or "proof") their guns to demonstrate compliance with the safety requirements.  *See* MASS. GEN. LAWS ch. 140, § 123(o) (requiring successful firearm testing); *see, e.g.*, *id.* at § 123(o)(i) (firearm must pass a firing test); *id.* at § 123(o)(ii) (firearm must pass a drop test); *id.* at § 123(o)(iii) (firearm cannot be prone to excessive firing or explosion during

firing).  Only after the Commonwealth has "received a final test report from an approved independent testing laboratory certifying that the specified firearm . . . successfully completed all testing requirements" can a firearm be considered for placement on the Approved Firearms Roster.  501 C.M.R. § 7.03. Furthermore, handguns must possess both a "safety" device and a mechanism, such as ten-pound trigger resistance, "which effectively precludes an average five year old child from operating the handgun when it is ready to fire."  *See* 940 C.M.R. § 16.05(1)-(2).[22]

The historical proving laws are "relevantly similar" because they establish manufacturing and testing requirements to ensure that guns can be used safely prior to their sale.  Contrary to Plaintiffs-Appellants' assertions, the proving laws did, in fact, "mandate that the firearm manufacturers alter how they constructed their firearms or insist upon the addition of other 'safety features'" by penalizing the sale of guns that did not comply with the requisite safety mechanisms.  *See* Appellants'

---

[22] This law draws from a long history of protecting children from danger by limiting their access to and use of firearms. *See, e.g.*, 1800 VA. ACTS 118, ch. 152 ("An Act to prevent selling or furnishing . . . pistols, dirks, or bowie-knives to minors under sixteen years of age"); 1856 ALA. ACTS 17, No. 26 (criminalizing sale of an "air gun or pistol" to minors); 1884 MASS. ACTS 57, ch. 76 ("An Act to Prohibit the Sale of Firearms and Other Dangerous Weapons to Minors").  For an extensive chronicle of historical laws concerning proving, restricting sales to minors, regulating the storage and transport of gunpowder, and their text, *see* Appendix A.

Br. at 46; 1804 MASS. ACTS 111, ch. 81 § 3.  The Commonwealth's Approved Firearms Roster is simply a reflection of those guns that *do* meet the prescribed safety requirements.

So, although the government need not identify any "historical twin," the Nation's historical firearm proving laws do closely mirror the Regulations.  These historical laws share the same "why" and "how" as the Massachusetts Regulations.  *See Rahimi*, 602 U.S. at 692.  The "how" for both the historical and challenged laws is the same: establishing requirements for firearms that reduce the chances of malfunction and danger.  The "why" is also the same: protecting gun owners and the public from firearm malfunctions.  These shared goals and structures are "strong indicator[s]" that the "contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations."  *Id*.

This Court should conclude that because the Nation has a long history of setting safety conditions on firearm sales, the Massachusetts Regulations are constitutional.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court should be affirmed.

- 29 -

Respectfully submitted,

Dated: April 1, 2026

Douglas N. Letter*
Shira Lauren Feldman*
Tess M. Fardon*
BRADY CENTER TO PREVENT
GUN VIOLENCE
840 First Street NE, Suite 400
Washington, DC 20002
202-370-8100

William T. Clark*
Leigh Rome*
GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE
244 Madison Ave., Suite 147
New York, NY 10016
415-433-2062

*Of Counsel

/s/ Jean-Paul Jaillet
Jean-Paul Jaillet (1st Cir. No. 1136189)
Madeleine M. Kausel (1st Cir. No. 1206855)
Sarah B. Gonsenhauser (1st Cir. No. 1220021)
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA  02110
617-248-5000
jjaillet@choate.com
mkausel@choate.com
sgonsenhauser@choate.com

Counsel for Amici Curiae

- 30 -

## CERTIFICATE OF COMPLIANCE

1.      I hereby certify that this amicus brief complies with the type-volume limit of Fed. R. App. P. 29(a)(5) and 32(g)(1) because the brief contains 6,372 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as determined by the word-count function of Microsoft Office Word 365.

2.      This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point, Times New Roman font.

*/s/ Jean-Paul Jaillet*
Jean-Paul Jaillet

Dated: April 1, 2026

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, filed through the ECF system for the United States Court of Appeals for the First Circuit on April 1, 2026, will be sent electronically to the registered participants on the Notice of Electronic Filing (NEF).

*/s/ Jean-Paul Jaillet*
Jean-Paul Jaillet

Dated: April 1, 2026

- 31 -

# APPENDIX A

# Statutory Addendum

## I.    Proving of Firearms and Gunpowder – Statutes

### A.    KENTUCKY

**1.    § 3, 1806 Ky. Acts 121, 122 -** AN ACT TO AMEND THE SEVERAL ACTS FOR THE BETTER REGULATION OF THE TOWN OF LEXINGTON.

Sec. 3.  Be it further enacted, That said trustees are hereby authorised to make such regulations as they may deem necessary and proper, relative to the keeping of gun-powder in the said town of Lexington, and if necessary may prohibit any inhabitants of said town, from keeping in the settled parts thereof, any quantity of gun powder which might in case of fire be dangerous: and any person violating such rules & regulations, or refusing to comply with the same, shall be liable for every such offence, to pay any sum not exceeding ten dollars, to be recovered and applies as aforesaid.

### B.    MAINE

**1.    Act of Mar. 10, 1821, 1821 Me. Laws 546, ch. 162. -** AN ACT TO PROVIDE FOR THE PROOF OF FIRE ARMS.

SEC. 1.  *Be it enacted by the Senate and House of Representatives, in Legislature assembled*, That the Governor, by and with the consent of the Council, be, and he hereby is empowered to appoint suitable persons, to be provers of the barrels of all new, or unused fire arms; and it shall be the duty of each person so appointed, to prove and try the strength of the barrels of all fire arms which shall be offered him for that purpose, in such manner as to satisfy himself of the strength of the same; and shall in a permanent manner, mark and number every barrel by him so proved, and make, and deliver to the person applying to have the same proved, a certificate for each barrel proved, and found good in the form following:

> I certify that on this     day of     A.D. 18   I proved for   , a musket, pistol, or rifle barrel, (as the case may be,) and which is numbered and marked as in the margin, and that the same is good and strong.

> A. B. Prover of fire arms.

SEC. 2.  *Be it further enacted*, That each prover shall be entitled to receive from the person applying to have such barrel proved, twenty-five cents, in addition to the expense of the powder necessary for that purpose for each barrel so provided; whether the same shall stand the proof and be marked or not.

SEC. 3.  *Be it further enacted*, That if any person shall sell or offer for sale within this State, any new, or unused musket, rifle or pistol barrel, without having the same first proved, marked and certified according to the provisions of this Act, he shall forfeit for each barrel so sold, the sum of

1

ten dollars, to be recovered by an action of debt before any Court proper to try the same; to the use of any person who shall sue for and recover the same, or by indictment to the use of the State.

SEC. 4. *Be it further enacted,* That if any person shall falsely alter the stamp or mark or the certificate of any prover of fire arms, appointed as aforesaid, and be convicted thereof before any Court proper to try the same, he shall forfeit and pay a fine of not more than one hundred dollars, nor less than twenty dollars, according to the nature and aggravation of the offense, for the use of the State.

### C.    MASSACHUSETTS

**1.    Act of Mar. 8, 1805, 1804 Mass. Acts 111, ch. 81. -** AN ACT TO PROVIDE FOR THE PROOF OF FIRE ARMS MANUFACTURED WITHIN THIS COMMONWEALTH.

*Whereas no provision hath been made by law for the proof of Fire Arms manufactured in this Commonwealth by which it is apprehended that many may be introduced into use which are unsafe and thereby the lives of the Citizens be exposed, to prevent which*

SECT. 1ST. *Be it enacted by the Senate and the House of Representatives in General Court assembled, and by the authority of the same* That the Governor by and with the advice and consent of the Council be and he hereby is empowered to appoint in any part of this Commonwealth where the Manufacture of fire Arms is carried on, suitable persons to be provers of fire arms not exceeding two in any County who shall be sworn to the faithful discharge of their trust, whose duty it shall be to prove all Musket Barrels and Pistol barrels which being sufficiently ground bored and breeched shall be offered to him to be proved – who shall prove the Musket barrels twice in manner following vizt. first with a charge consisting of one eighteenth part of a pound of Powder, one ounce of which in a five & an half inch Howitz at an elevation of forty five degrees will carry a twenty four pound shot, eighty Yards – with a ball suited to the bore of the barrel – the second proof to be with a charge consisting of one twenty second part of a pound of Powder, one ounc [sic] of which in a five and half inch Howitz at an elevation of forty five degrees, will carry a twenty four pound shot seventy Yards, with a ball suited to the bore of the barrel – which said powder and ball it shall be the duty of the prover to provide – And if the said musket and pistol barrels shall stand the proof aforesaid and shall in no respect fail, then it shall be the duty of the said prover to stamp the same on the upper side and within  one and a half inches of the breech of said barrels with a stamp consisting of the initial letters of the provers name & over those letters the letter P. also in the line of the said initial letters and further up said barrel the figures designating the Year of our Lord in which the proof is made and over the said figures the letter M. which said letters and figures shall be so deeply impressed on said barrel as that the same cannot be erased or

P    M

disfigured and shall be in the form following AB 1805 and when any barrels shall burst or shall in any manner fail in the proving as aforesaid so that in the opinion of the prover they are unfit for use they shall not be stamped but the prover shall suffer the owner to take them away – & any prover so proving musket or pistol barrels as aforesaid shall be entitled to receive from the owner for each musket barrel thirty three Cents, and for each pistol barrel twenty five Cents, whether the same stand proof and are Stamped or not.

2

SECT. 2D. *And be it further enacted*, that if any person after the first day of June next shall manufacture within this Commonwealth any musket or pistol without having the barrels proved and stamped as aforesaid, except such as are or may be Manufactured in the Armory of the United States, or in fulfillment of some contract made and entered into or that may hereafter be made and entered into for the Manufacturing of fire arms for the United States, shall forfiet [sic] and pay for every such Musket or pistol the sum of ten dollars to be recovered in an action of Debt before any Court proper to try the same by any person who shall sue for and recover the same to his own use.

SECT. 3D. *And be it further enacted* that if any person after the first day of June next, shall sell and deliver or shall knowingly purchase any Musket or Pistol which shall have been manufactured within this Commonwealth after the said first day of June next, which shall not have the marks of proof above required the person so selling and the person so purchasing, shall each forfiet [sic] the sum of Ten Dollars, to be recovered by action of debt before any Court proper to try the same to the use of any person who shall sue for and recover the same.

SECT. 4TH. *And be it further enacted*, that if any person, shall falsely forge or alter the stamp of any prover of Fire arms, so appointed as aforesaid impressed on any musket or Pistol Barrel pursuant to this Act, and be convicted thereof before the Supreme Judicial Court he shall be punished by fine not exceeding Fifty Dollars nor less than twenty dollars, according to the nature and aggravation of the offence.

### 2. **1911 Mass. Acts 495 -** AN ACT RELATIVE TO FIREARMS.

The 1805 Act remained in effect until its repeal in 1881. In 1911, Massachusetts passed "An Act Relative to Firearms," which regulated the sale of firearms and created a licensing regime that remains in effect through present day.

### 3. **Act of Mar. 1, 1809, 1808 Mass. Acts 444, ch. 52. -** AN ACT PROVIDING FOR THE APPOINTMENT OF INSPECTORS, AND REGULATING THE MANUFACTORY OF GUN-POWDER.

SECT. 1. *Be it enacted by the Senate and House of Representatives, in General Court assembled, and by the authority of the same*, That his Excellency the Governour, by and with the advice of Council, be, and he is hereby authorized to appoint an Inspector of gun-powder for every publick powder magazine, and every manufactory of gun-powder in this Commonwealth, and at such other places, as may by him be thought necessary; and his Excellency the Governour, by and with the advice of Council, is hereby authorized and empowered to remove said Inspectors, or any of them at pleasure, and may by new appointments from time to time fill any vacancy, or vacancies which may happen.

SECT. 2. *Be it further enacted*, That from and after the first day of July next, all gun powder which shall be manufactured within this Commonwealth shall be composed of the following proportions, and quality of materials, that is, every one hundred parts of gun powder, shall be composed of fourteen parts of fresh burnt coal, made from wood which forms the least ashes, and which has been carefully and well prepared, and made into coal, after being stripped of its bark, ten parts of pure sulphur, and seventy six parts of purified nitre.

3

SECT. 3. *Be it further enacted*, That it shall be the duty of each of said Inspectors, to inspect, examine and prove all gun-powder, which after the first day of July next, shall be deposited at any publick powder magazine, or manufactured in this Commonwealth, before the same shall be removed from the manufactory, or received into such publick powder magazine, and if upon such inspection and examination it shall appear to the Inspector, that such gun-powder is well manufactured, and composed of pure materials, and of the proper proportions of materials, and such gun-powder shall be of the proof herein after mentioned the Inspector shall mark each cask, containing gun-powder by him inspected, examined and proved as aforesaid, with the words Massachusetts Inspected Proof; and with his christian and sur-name, and shall also mark in figures upon each cask the quantity of powder contained therein, and the year in which the inspection is made.

SECT. 4. *Be it further enacted*, That no gun-powder within this Commonwealth, shall be considered to be of proof unless one ounce thereof placed in the chamber of a four and an half inch howitzer, with the howitzer elevated so as to form an angle of forty five degrees with the horizon, will, upon being fired, throw a twelve pound shot, seventy five yards at the least.

SECT. 5. *Be it further enacted*, That whenever any of said Inspectors, shall discover any gun-powder, deposited at any publick powder magazine, or any other place within this Commonwealth, which is not well manufactured, or which is composed of impure materials, or of an improper proportion of materials, and which shall not be of the proof herein before mentioned, the inspector in such case shall mark each cask containing such impure ill manufactured or deficient gun-powder with the word "Condemned" on both heads of the cask, and with the same words on the side thereof, with the christian and sur-name of the inspector on one head of the cask.

SECT. 6. *Be it further enacted*, That if any person shall knowingly sell any condemned gun powder as, and for, good gun-powder, or shall fraudulently alter, or deface any mark, or marks, placed by any Inspector upon any cask or casks containing gun-powder, or shall fraudulently put any gun-powder, which shall not have inspected, or which has been condemned, into any cask or casks, which shall have been marked by any Inspector, agreeably to the provisions contained in the third section of this act, every such person so offending shall forfeit and pay not less than two hundred, nor more than five hundred dollars, for each and every offence, to be recovered in an action of debt in any Court of competent jurisdiction; one half to the use of the Commonwealth, the other half to the use of him or them, who shall sue, and prosecute for the same.

SECT. 7. *Be it further enacted*, That each Inspector who may be appointed by virtue of this act, shall before he acts as Inspector, be sworn to the faithful and impartial discharge of the duties of his office, and each inspector shall be allowed one cent for each pound of gun-powder by him examined, inspected, and proved, whether the same be by him approved or condemned, to be paid by the owner or owners of the gun-powder.

SECT. 8. *Be it further enacted*, That if any manufacturer of gun-powder shall sell or dispose of, or shall cause or permit to be sold or disposed of, or shall export, or cause to be exported without the limits of this Commonwealth any powder of his manufacture, before the same has been inspected, and marked agreeably to the provisions of this act, he shall forfeit and pay the sum of fifty cents

4

for every pound of powder so sold, disposed of, or exported, to be recovered in the manner provided in the sixth section of this act.

SECT. 9. *Be it further enacted*, That if any person within this Commonwealth, after the first day of July next shall knowingly sell, expose, or offer for sale within this Commonwealth any gunpowder which is not well manufactured, or which is composed of impure materials, and which shall not be of the proof herein before required, shall forfeit and pay not less than five dollars, nor more than fifty dollars; for each and every offence, to be recovered in the manner provided in the sixth section of this act.

> **4.     Act of Mar. 6, 1810, 1809 Mass. Acts 205, ch. 118. -** AN ACT IN ADDITION TO AN ACT, ENTITLED, "AN ACT PROVIDING FOR THE APPOINTMENT OF INSPECTORS, AND REGULATING THE MANUFACTORY OF GUN POWDER."

*Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same*, That if any manufacturer of gun powder shall move, or suffer to be moved, from his manufactory, any powder, until it shall have been inspected, he shall forfeit and pay the sum of *five dollars* for every twenty-five pounds so carried away, to be recovered in an action on the case, to the use of any person or persons who may sue for the same, in any court proper to try the same. *Provided nevertheless*, That in case of the absence or death of the inspector, the Governour, or any member of the council, may grant permission to the manufacturer to transport his powder to same other inspector within the commonwealth, which inspector shall be named in the certificate so granted.

> **5.     Act of February 25, 1811, 1810 Mass. Acts 303, ch. 72. -** AN ACT IN FURTHER ADDITION TO AN ACT, ENTITLED, "AN ACT PROVIDING FOR THE APPOINTMENT OF INSPECTORS, AND REGULATING THE MANUFACTORY OF GUN-POWDER."

*Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same*, That the Quarter Master General be, and he is hereby directed to furnish each inspector of gun-powder within this Commonwealth, with a howitzer, of the description mentioned in the act to which this is an addition, the expense of procuring the said howitzers to be paid out of the Treasury of this Commonwealth, and the said inspectors shall be responsible for the safe keeping of the said howitzers.

> **6.     Act of Feb. 28, 1814, 1814 Mass. Laws 464, ch. 192. -** AN ACT IN ADDITION TO AN ACT, ENTITLED, "AN ACT TO PROVIDE FOR THE PROOF OF FIRE ARMS, MANUFACTURED WITHIN THIS COMMONWEALTH."

SEC. 1. *Be it enacted by the Senate and House of Representatives, in General Court assembled, and by the authority of the same*, That from and after the passing of this act, all musket barrels and pistol barrels, manufactured within this Commonwealth, shall, before the same shall be sold, and before the same shall be stocked, be proved by the person appointed according to the provisions of an act, entitled "An act to provide for the proof of Fire Arms, manufactured within this

5

Commonwealth," to which this is an addition, in manner following, viz: with a charge of powder equal in weight to the ball which fits the bore of the barrel to be proved; and the powder used in such proof one ounce thereof in a howitzer of four and a half inch caliber, at an elevation of forty-five degrees, shall be of sufficient power to carry a twelve pound shot one hundred and thirty yards; or one ounce thereof in a howitzer of five and a half inch caliber, at an elevation of fort-five degrees, shall be sufficient to carry a twenty-four pound shot eighty yards, and the ball used in such proof shall be suited to the bore of the barrel to be proved as aforesaid.

SEC. 2. *Be it further enacted*, That if any person or persons, from and after the passing of this act, shall manufacture, within this Commonwealth, any musket or pistol, or shall sell and deliver, or shall knowingly purchase any musket or pistol, without having the barrels first proved according to the provisions of the first section of this act, marked and stamped according the provisions of the first section of the act to which this is an addition; or if any person or persons shall sell, stock or finish, or shall knowingly purchase any musket barrel or pistol barrel manufactured within this Commonwealth, which shall not have been first proved, marked and stamped according to the provisions aforesaid, the person or persons who shall so manufacture, sell and deliver, or knowingly purchase any musket or pistol without causing the same to be first proved, marked and stamped as aforesaid, shall severally forfeit the sum of ten dollars, to be recovered by an action of debt before any court proper to try the same, by any person who shall sue and recover for the same, to his own use: *Provided however*, That the foregoing provisions and penalties shall not extend to any muskets or pistols, or musket or pistol barrels, manufactured in any armoury of the United States, for their use, or in execution of any contract made or to be made with the United States, for the manufacture of fire arms.

SEC. 3. *Be it further enacted*, That the second and third sections of the act to which this is in addition, and also so much of the first section thereof as prescribes the mode of proving musket barrels and pistol barrels, and the power of the powder to be used in such proof, be, and the same are hereby repealed.

## D.    NEW HAMPSHIRE

1.    **1786 N.H. Laws 383-84 -** AN ACT TO PREVENT THE KEEPING OF LARGE QUANTITIES OF GUN-POWDER IN PRIVATE HOUSES IN PORTSMOUTH, AND FOR APPOINTING A KEEPER OF THE MAGAZINE BELONGING TO SAID TOWN.

"That if any person or persons, shall keep in any dwelling-house, store or other buildings, on land, within the limits of said Portsmouth, except the magazine aforesaid, more than ten pounds of gun-powder at any one time, which ten pounds shall be kept in a tin canister properly secured for that purpose, such person or persons shall forfeit the powder so kept, to the firewards of said Portsmouth to be laid out by them in purchasing such utensils as they may judge proper for the extinguishing of the fire; and the said firewards are hereby directed and empowered to seize, and cause the same to be condemned in any Court of Law or Record proper to hear and try the same, to be disposed of for the purchase aforesaid. And the offender shall also forfeit and pay a fine for the use of the poor of said Portsmouth, equal to the value of the powder so kept in any store, dwelling-house, or building; which fine, shall be sued for and recovered by the overseers of the poor of said Portsmouth, for the use of said poor, in any Court of Law proper to try the same."

6

**2.    Act of June 21, 1820, 1820 N.H. Laws 274 -** AN ACT TO PROVIDE FOR THE APPOINTMENT OF INSPECTORS AND REGULATING THE MANUFACTORY OF GUNPOWDER.

SEC. 1.  BE *it enacted by the senate and  house of representatives in general court convened*, That his excellency the governor by and with the advice of council, be, and he is hereby authorized to appoint an inspector of gunpowder for every public powder magazine, and at every manufactory of gunpowder in this state, and at such other places as may by him be thought necessary; and his excellency the governor by and with the advice of council is hereby further authorized and empowered to remove said inspectors or any of them at pleasure, and may by new appointments from time to time fill any vacancy or vacancies which may happen.

SEC. 2.  *And be it further enacted,* That from and after the first day of July next, all gunpowder which shall be manufactured within this state, shall be composed of the following proportions and quality of materials, that is, every one hundred parts of gunpowder shall be composed of fourteen parts of fresh burnt coal, made from wood which forms the least ashes, and which has been carefully and well prepared and made into coal, after being stripped of its bark; ten parts of pure sulphur, and seventy-six parts of purified nitre.

SEC. 3.  *And be it further enacted*, That it shall be the duty of each of said inspectors to inspect, examine and prove all gun powder which after the first day of July next shall be deposited at any publick powder magazine, or manufactory in this state, before the same shall be removed from the manufactory or received into such public powder magazine, and if upon inspection and examination it shall appear to the inspector that such gunpowder is well manufactured and composed of pure materials, and such gunpowder shall be of the proof hereinafter mentioned, the inspector shall mark each cask containing gunpowder by him inspected, examined, and proved as aforesaid, with the words "*New Hampshire inspected proof,*" and with his christian and surname, and shall also in figures mark upon each cask the quantity of powder contained therein, and the year in which the inspection is made.

SEC. 4.  *And be it further enacted,* That no gunpowder within this state shall be considered to be of proof unless one ounce thereof, placed in the chamber of a four and an half inch howitzer, with the howitzer elevated so as to form an angle of forty-five degrees with the horizon, will, upon being fired, throw a twelve pound shot seventy-five years at the least.

SEC. 5.  *And be it further enacted*, That whenever any of said inspectors shall discover any gunpowder, deposited at any public powder magazine, or any other place within this state, which is not well manufactured, or which is composed of impure materials, or of any improper proportion of materials, and which shall not be of the proof herein before mentioned, the inspection in such cask, shall mark each cask containing such impure, ill manufactured, or deficient gunpowder, with the word "*Condemned,*" on both heads of the cask, and with the same words on the side thereof, with the christian and surname of the inspector on one head of the cask.

SEC. 6.  *And be it further enacted*, That if any person shall knowingly sell any condemned gunpowder, or shall fraudulently alter or deface any mark or marks, placed by any inspector upon any cask or casks containing gunpowder, or shall fraudulently put any gunpowder, which shall not

have been inspected, or which has been condemned, into any cask or casks, which shall have been marked by any inspector agreeably to the provisions contained in the third section of this act, every such person, so offending, shall forfeit and pay not less than two hundred nor more than five hundred dollars, for each and every offense, to be recovered in an action of debt, in any court of competent jurisdiction, one half thereof to the use of the state, the other to the use of him or them who shall sue and prosecute for the same.

SEC. 7. *And be it further enacted,* That each inspector who may be appointed by virtue of this act, shall, before he acts as inspector, be sworn to the faithful and impartial discharge of the duties of his office, and each inspector shall be allowed one cent for each pound of gunpowder, by him examined, inspected and proved, whether the same be by him approved or condemned, to be paid by the owner or owners of the gunpowder.

SEC. 8. *And be it further enacted,* That if any manufacturer of gunpowder shall sell or dispose of, or shall cause or permit to be sold or disposed of, or shall export or cause to be exported without the limits of this state, any powder of his manufacture, before the same has been inspected and marked agreeably to the provisions of this act, he shall forfeit and pay the sum of fifty cents for every pound of powder so sold, disposed of, or exported, to be recovered in the manner provided in the sixth section of this act.

SEC. 9. *And be it further enacted*, That if any person within this state, after the first day of January next, shall knowingly sell, expose, or offer for sale, within this state, any gunpowder which is not well manufactured, or which is composed of impure materials, and which shall not be of the proof herein before required, shall forfeit and pay not less than five dollars nor more than fifty dollars for each and every offence, to be recovered in the manner provided in the sixth section of this act.

E.    NEW JERSEY

1.    **Act of Oct. 4, 1776, 1776-1777 N.J. Laws 6, ch. 6 -** AN ACT FOR THE INSPECTION OF GUN-POWDER.

WHEREAS the vending of damaged or bad Gun-Powder within this State, especially in the Time of War, may be of the most dangerous Consequence;

Sect. 1. BE IT THEREFORE ENACTED *by the Council and General Assembly of this State, and it is hereby Enacted by the Authority of the same,* That any Person who, from and after the Publication of this Act, shall offer any Gun-Powder for Sale, without being previously inspected and marked as is herein after directed, shall forfeit, for every such Offence, the Sum of *Five Shillings* a Pound for every Pound weight so offered for Sale, and so in Proportion for greater or lesser Quantity; to be recovered in any Court where the same may be cognizable, and applied the one Half to the Person who shall prosecute therefor, and the other Half to be paid to the Treasurer for the Use of the State.

2. That *Jacob Zabriskie* of *Bergen* County, *Jonathan Sears* of *Essex, Samuel H. Sullivan* of *Middlesex, Kenneth Henkinson* and *Jacob Cook* of *Monmouth, Abraham Staats* of *Somerset, Samuel Day* and *Daniel Lindsly* of *Morris, William Perine* of *Sussex, David Cowell* of *Hunterdon, Josiah Foster* and *John Leck* of *Burlington, Joseph Hugg, John Somers* and *Thomas Clark* of

8

*Gloucester, Curtis Trenchard* of *Salem, Enos Seeley* of *Cumberland,* and *Joseph Ludley* and *Abraham Bennet* of *Cape-May,* be, and they are appointed Inspectors of Gun-Powder; who are directed to pass or mark no Gun-Powder but such as is good as to its Quickness in Firing, Strength, Dryness, and other Qualities; and who, before they do any Thing in the Execution of their Office, shall severally take, before any Justice of the Peace for the County in which they reside, the following Oath or Affirmation, *I* A B *will well and truly execute the Office of Inspector of Gun-Powder for this State, according to the best of my Skill and Understanding, and agreeable to the Directions of an Act,* entitled, An *Act* for the Inspection of Gun-Powder.

3.  That every Inspector shall mark each Cask of Gun-Powder, by him approved, with the Letters S N I, and such other Marks as are necessary to distinguish the several Sorts of Gun-Powder.

4.  That every maker of Gun-Powder shall pack his Powder in dry well-seasoned Casks, and mark every Cask in which he shall pack the same with the initial Letters of his Name.

5.  That every Inspector who shall neglect or refuse to do any of the Duties enjoined by this Act, shall forfeit for each Offence the Sum of *Five Pounds*, to be recovered and applied in like Manner and Form as the Fines and Penalties herein before-mentioned.

6.  That every Inspector shall be allowed the one Eighth Part of a Dollar for every Hundred Weight of Gun-Powder he shall examine, to be paid by the Owner of said Powder; provided, that no Inspector shall be obligated to ride more than ten Miles to inspect any Quantity of Gun-Powder less than one Thousand Weight, without being allowed by the Owner thereof the Sum of *Three-pence* a Mile for going, and *Three-pence* a Mile for returning, over and above the Fees of Inspection allowed by this Act.  PROVIDED ALSO, That Powder inspected by Order of the Continental Congress, or by any Person legally authorized for that Purpose, in any of the neighbouring States, shall be subject to Inspection by Virtue of this Act, any Thing herein to the contrary notwithstanding.

7.  That in case of the Death, Removal, Disability or Resignation of any Inspector, the Court of General Quarter-Sessions of the County where the same shall happen, are hereby authorized to appoint an Inspector to supply such Vacancy, who shall take the Oath or Affirmation, perform the Duty, and be subject to the Forfeitures in and by this Act prescribed.

      **F.**    **OHIO**

            **1.**       **§§ 1-3, 1833 Ohio Laws 118, 118 -** AN ACT TO REGULATE THE KEEPING OF GUNPOWDER IN THE COUNTY OF HAMILTON.

Sec. 1. *Be it enacted by the General Assembly of the State of Ohio*, That it shall be the duty of the commissioners of the county of Hamilton, to examine on or before the first day of May next, all buildings wherein any gunpowder may be kept or stored by a greater quantity than one keg within said county and without the corporate limits of the city of Cincinnati; and if upon examination said commissioners shall be of the opinion that the lives or property of the citizens, or any of them, shall be in any ways[1] endangered by the construction or management of any such magazine or powder warehouse, it shall be the duty [of][2] such commissioners forthwith to notify all such

9

owner or owner thereof, by leaving with him or them a written notice setting forth the facts on which their opinions are predicated.

Sec. 2. That it is hereby made the duty of all such owner or owners, if so required by the notice aforesaid, to proceed within twenty days thereafter, to erect or construct such magazines or warehouses as in the opinion of the said commissioners will best secure the citizens or their property from the damages that might result from explosions, in such place and in such manner and of such materials as may be directed by the said commissioners, which direction it is hereby made their duty to give in writing, when called for by any person now owning any such powder house, or that may hereafter wish to erect any such powder house in the county of Hamilton as aforesaid.

Sec. 3. That if any or persons shall keep in his, her or their store, any gunpowder by a greater quantity than one keg in any building of any description other than such as may be directed by the said commissioners, he, she, or they or any of them shall, on conviction thereof, be fined in any sum not exceeding one hundred dollars, and collected in the same manner as is provided for in the act for the punishment of certain offices therein named: Provided, that all prosecutions under the provisions of this act shall be by indictment.

### G.    PENNSYLVANIA

1.    **Act of Dec. 6, 1783, chap. 1059, 11 Pa. Stat. 209 -** AN ACT FOR THE BETTER SECURING THE CITY OF PHILADELPHIA AND ITS LIBERTIES FROM DANGER OF GUNPOWDER.

"(Section I, P.L.) Whereas by an act, entitled "An act for the better securing the city of Philadelphia from danger of gunpowder," passed in the year one thousand seven hundred and twenty-four, and a supplement thereto, passed in the year one thousand seven hundred and forty-seven, continuing the said act in force until altered by a future assembly, it was directed that all gun-powder brought into the port of Philadelphia should be deposited in a certain powder house therein described, under the penalty of ten pounds for every offense: And Whereas another powder house or magazine hath been erected in the said city in the public square on the south side of Vine street, between the Sixth and Seventh streets from Delaware at the public expense: And whereas the said penalty of ten pounds is not deemed sufficient to deter persons from storing large quantities of gunpowder in private houses and stores, to the great danger of the inhabitants: [Section I.] (Section II, P.L) Be it therefore enacted and it is hereby enacted by the Representatives of the Freemen of the Commonwealth of Pennsylvania in General Assembly met, and by the authority of the same, That no person whatsoever, within the precincts of Philadelphia, nor within two miles thereof, shall, from and after the passing of this act, presume to keep in any house, shop or cellar, store or place whatsoever, in the said city, nor within two miles thereof, other than in the said public magazine, any more or greater quantity at any one time than thirty pounds weight of gun-powder, under the penalty of forfeiture of the whole quantity so over and above stored, together with a fine of twenty pounds for every such offense."

10

**2.      1787, ch. 1279, §§ 1-16, PA. CONS. STAT. -** AN ACT FOR SECURING THE CITY OF PHILADELPHIA AND THE NEIGHBORHOOD THEREOF FROM DAMAGE BY GUNPOWDER.

(Section I. P. L.) Whereas it appears that the act, entitled 'An act for the better securing the city of Philadelphia and its liberties from danger of gunpowder,' is in several respects defective:

Therefore to remedy the defects thereof:

(Section II. P. L.) [Section I.] Be it enacted and it is hereby enacted by the Representatives of the Freemen of the Commonwealth of Pennsylvania in General Assembly met and by the authority of the same, That from and after the passing of this act no person shall keep in any house, store, shop or cellar or other place within the city of Philadelphia nor the country adjacent within two miles of the said city, except in the public magazine in the square to the south of Vine street, between Sixth and Seventh streets of the said city any greater quantity of gunpowder at one time than thirty pounds weight thereof under the penalty of forfeiture of the whole quantity so over and above stored or kept, together with the sum of twenty pounds for every such offense.

(Section III. P. L.) [Section II.] And be it further enacted by the authority aforesaid, That every captain or master of, or merchant owning any ship or vessel bringing therein to such part of the port of Philadelphia as lies between the southern boundary of the district of Southwark and the north eastern boundary of the township of the Northern Liberties any gunpowder for sale or other purpose other than such gunpowder as shall be specially licensed in that behalf by the supreme executive council shall within the space of forty-eight hours from the arrival and coming to anchor of the said ship or vessel within the limits aforesaid and before such ship or vessel shall be brought to any wharf of the said port within the said limits deliver or cause to be delivered all the gunpowder above thirty pounds weight brought as aforesaid at the said magazine, between the hours hereinafter prescribed under the penalty of forfeiting at and after the rate of twenty pounds for every cask of gunpowder so withheld and not delivered as aforesaid, together with the whole of such gunpowder above the thirty pounds weight if such property be the property of the offender, and in order that strangers may be better apprized of the tenor of this act the health officer and his deputies are required and enjoined as soon as they have opportunity to give information thereof to such captain, master or merchant and the custom house and naval officers and their deputies and required and enjoined to give such information to the captains or other persons coming to heir several offices to make entry or report of their arrival or of their cargoes.

(Section IV. P. L.) [Section III.] And be it further enacted by the authority aforesaid, That if any gunpowder stored in the said magazine be intended for exportation it shall not be delivered on board of the vessel intended to export the same while she remains at any of the wharves in such part of the port of the city of Philadelphia as aforesaid but after removal of any such gunpowder for the purpose aforesaid from the said magazine it shall be immediately delivered into some boat or craft to be used in conveying it on board of such vessel and which boat or craft shall be ready to receive and convey the same to such vessel and shall forthwith carry it on board thereof under penalty of forfeiture of such gunpowder and of the sum of twenty pounds to be paid by any person so offending and of the further sum of fifteen pounds for every hour such boat or craft shall remain at any such wharf after taking or receiving such gunpowder on board and such gunpowder shall not be unladen from any cart, dray or other carriage on any wharf within the said city and the

11

aforesaid adjacent country until the boat or craft into which it is to be delivered for the purpose of conveying it to the vessel intended to export the same shall be ready to receive it under the penalty of twenty pounds to be forfeited by every person so offending.

(Section V. P. L.) [Section IV.] And be it further enacted by the authority aforesaid, That all gunpowder by land into the said city or the adjacent country within two miles of the said city if above thirty pounds weight at one time shall be immediately carried to the said magazine and delivered to the superintendent thereof or his deputy within the hours hereinafter prescribed for his attendance at the said magazine under the same penalties as if brought by water and not delivered as in such case is herein directed at the said magazine.

(Section VI. P. L.) [Section V.] And be it further enacted by the authority aforesaid, That no person shall convey in any dray, cart, wagon or other carriage any greater quantity of gunpowder than thirty pounds weight in or through the said city or the adjacent country within two miles of the said city without securing it in a good bag or bags or putting a sheet or canvas under and around the said powder sufficient to prevent the same from scattering from the said carriage, under penalty of forfeiture of the said gunpowder and for every such offence the sum of twenty pounds to be paid by every person so offending.

(Section VII. P. L.) [Section VI.] And be it further enacted by the authority aforesaid, That the superintendent or keeper of the said magazine shall have and receive for storage of such powder so deposited there twelve pence per barrel per month and so proportionately for half barrels and quarter barrels for the first six months and six pence per barrel per month and so proportionately for half barrels and quarter barrels for every month any such powder shall remain in the said magazine above the space of six months and likewise shall have and receive for every twelve pounds or less quantity thereof delivered by the said superintendent or keeper of the said magazine or his deputy at one time, six pence over and above the said storage to be paid to him at and upon the delivery thereof to the owner thereof or the person appointed by the said owner to receive the same.

(Section VIII. P. L.) [Section VII.] And be it further enacted by the authority aforesaid, That the said superintendent or keeper of the said magazine or his successors in the said office for the time being shall be accountable to the owners or deliverers of such powder from and after their delivery at and depositing thereof in the said magazine (lightening and other unavoidable accidents of any kind excepted) and shall also cause daily attendance to be given at the magazine aforesaid from the hour of nine until twelve in the forenoon and from the hour of two until five in the afternoon except in the months of November, December and January, when such attendance in the afternoon shall be from two to four o'clock for delivering out and receiving of and taking in such powder and immediately on so receiving into his custody at the said magazine as aforesaid any quantity of gunpowder the said superintendent or keeper of the said magazine or his successors for the time being shall give receipts in writing for the same expressing the quantity of powder and describing the numbers and marks of the casks.

(Section IX. P. L.) [Section VIII.] And be it further enacted by the authority aforesaid, That the supreme executive council shall have power to remove the said superintendent or keeper of the said magazine and appoint another in his place whenever it shall appear to them necessary as well

12

as to appoint a successor in case of death in all which cases the successor in office shall make out an account of all powder in the said magazine in the presence of a person to be appointed by the council as also in the presence of his predecessors if living and if not in the presence of one of his executors or administrators, if any, he shall attend on notice given and the quantity found to be in the said magazine shall be charged to the new officer which account shall also be compared in the presence of such persons as aforesaid with the account of the immediate predecessor for which purpose the said superintendent or the keeper of the said magazine and his successors in the said office shall keep fair books in which all such powder so to be brought into the said magazine or found therein at the passing of this act shall be entered which books shall be delivered up to the successors in the said office, but in case any disputes or mistakes shall arise or appear the executors or administrators of any deceased superintendent or keeper of the said magazine shall have access at all reasonable times to the book delivered up in order to adjust the said disputes or mistakes.

(Section X. P. L.) [Section IX.] And be it further enacted by the authority aforesaid, That if the said superintendent or keeper of the said magazine for the time being shall refuse or neglect to give attendance as aforesaid or to receive or deliver as the case may be such powder or any part thereof to the owner or deliverer aforesaid requiring the same within the hours aforesaid or shall take any more or greater sums or rates than are by this act allowed to him, he or they so offending shall be fined for every such offense in a sum not exceeding five pounds upon conviction of such offence on indictment in the city court of the city of Philadelphia which fine or fines shall go into the hands of the treasurer of the commissioners for paving the streets of the city of Philadelphia for the purpose of paving the said streets.

(Section XI. P. L.) [Section X.] And be it further enacted by the authority aforesaid, That all and singular the fines, penalties and forfeitures mentioned in this act other than those mentioned in the tenth section hereof shall and may be recovered in any court of record in this state with costs of suit by bill, plaint or information wherein no essoin, protection or wager of law nor any more than one imparlance shall be allowed, the one moiety of which fines, penalties and forfeitures except as before excepted shall go into the hands of the treasurer of the commissioners for paving the streets of the city of Philadelphia to be by them disposed of for the purpose of paving the said streets and the other moiety thereof to the informer and prosecutor who shall sue for the same.

(Section XII. P. L.) [Section XI.] And be it further enacted by the authority aforesaid, That any justice of the peace within the limits of the said city and the adjacent country within two miles of the said city on demand made by such superintendent or keeper of the said magazine showing a reasonable cause on oath or affirmation may issue his warrant under his hand and seal empowering such superintendent or keeper of the said magazine to search in the day time any house, store, shop, cellar or other place or any boat, ship or other vessels for any quantity of gunpowder forbidden by this act to be kept in any place or places and for that purpose to break open in the day time any such house, store, shop or other places aforesaid or any boat, ship or other vessel if there be occasion and the said superintendent or keeper of the said magazine on finding such gunpowder may seize and remove the same in twelve hours from any such place or places, boats, ships or vessels to the said magazine and therein detain the same until it be determined in the proper court whether it be forfeited or not, by virtue of this act and the said superintendent or keeper of the said magazine shall not in the mean time be used for seizing, keeping or detaining the same nor shall

13

any writ of replevin issue therefore until such determination as aforesaid be made but all such suits are hereby declared to be illegal, erroneous and abated.

(Section XIII. P. L.) [Section XII.] And be it further enacted by the authority aforesaid, That the said superintendent or keeper of the said magazine may examine and if occasion be seize any greater quantity of gunpowder while in any dray, cart, wagon or other carriage than is hereby allowed to be loaded in the same or conveyed therein within the said city or the adjacent country within two miles of the said city and also to examine and seize any gunpowder found in any such carriage as aforesaid within the said city and adjacent country as aforesaid which shall be found not to be secured from scattering in the manner directed by this act or which may be found in any other situation prohibited hereby and the same shall be by him conveyed within twelve hours to the said magazine therein to be by him stored and detained until it shall be determined in the proper court whether the same shall be forfeited or not in virtue of this act and such superintendent or keeper of the said magazine shall not in the meantime be used for seizing, keeping and detaining the same nor shall any writ of replevin issue therefore until such determination as aforesaid be made but all such suits are hereby declared to be illegal, erroneous and abated.

(Section XIV. P. L.) [Section XIII.] And be it further enacted by the authority aforesaid, That if any suit or action be commenced or prosecuted against any person or persons for anything done in pursuance of this act every such person or persons may plead the general issue and give this act and the special matter in evidence at any trial to be had thereon and if a verdict shall pass for the defendant or the plaintiff become non-suit or discontinue his action or if on demurrer or otherwise judgment shall be given against the plaintiff, the defendant shall recover treble costs and shall have the like remedy for the same as any defendant hath in other cases.

(Section XV. P. L.) [Section XIV.] And be it further enacted by the authority aforesaid, That the superintendent or keeper of the said magazine shall before he enters on the execution of his office give bond with such security to the supreme executive council as they shall deem necessary in the sum of five hundred pounds conditioned for the faithful performance of his duty as directed by this act.

(Section XVI. P. L.) [Section XVI.] And be it further enacted by the authority aforesaid, That all acts heretofore made in any way respecting the storing or keeping of gunpowder in the said city or the adjacent country within two miles of the said city or in any part of the liberties of the same shall be and are hereby repealed.

### 3.    Act of Apr. 18, 1795, 1794 Pa. Laws 764, ch. 337 - AN ACT PROVIDING FOR THE INSPECTION OF GUN-POWDER.

WHEREAS gun-powder imported from abroad, and manufactured within this state, hath frequently been found to vary much in its strength, and sometimes of inferior qualities, and its defects not discovered until brought into actual use: And whereas the modes heretofore used to prove the force thereof have been found uncertain and variable: And whereas Joseph Leacock, of the city of Philadelphia, hath invented an engine, called a pendulum powder proof, with a graduated arch and catch-pall, by which it is conceived that the force of gun-powder may be proved by experiment, and the article reduced to certain and uniform standards of strength, whereby the

14

manufacture may be advanced towards ultimate perfection, and the purchaser and consumer protected against fraud and imposition:

SECTION I. *Be it therefore enacted by the* SENATE *and* HOUSE OF REPRESENTATIVES *of the commonwealth of Pennsylvania, in General Assembly met, and it is hereby enacted by the authority of the same,* That, from and after the first day of October next, all gun-powder manufactured within this state, with intent to sell the same within the city or county of Philadelphia, shall be put in good and tight kegs or casks of twenty-five, fifty, or one hundred pounds neat weight, each made of well seasoned timber, bound together with at least twelve hoops, and having a hole bored in each head, of the diameter of one fourth part of an inch, well stopped with corks, and having the tare weight of each cask marked thereon, and that all such gun-powder, and all other gun-powder, wheresoever manufactured, imported into the port of Philadelphia, or brought into the city or county of Philadelphia for sale, shall be deposited, forthwith on such importation or bringing in by land or by water, in the public magazine of the said city, and delivered to the care of the keeper of the same, who shall give his receipt for the same, deliverable to the other of him or them who shall so deposit the same.

SECT. II. *And be it farther enacted by the authority aforesaid,* That David Rittenhouse, Francis Gurney and Thomas Procler be, and they are hereby, appointed Commissioners, to procure at least two pendulum powder proofs, upon the construction invented by the said Joseph Leacock, as nearly uniform in the length et the radius and weight of pendulum, and in length of caliber and weight of the pistol, as they can procure the same, and therewith make experiments of the respective strength or force of the several species of gun-powder imported from abroad, and manufactured within this state, sufficient in number to ascertain the quality and force of three different degrees of strength in explosion, and marking the number of degrees on the graduated arch of the said engine, to which equal quantities by weight of the said three species of gun-powder, rammed with equal force into the pistol, shall elevate the said pendulum; and the powder, which shall be barely capable of raising the said pendulum to the lowest rate of elevation, shall be the standard for the state of Pennsylvania for gun-powder of the first or lowest proof; and the powder, which shall be capable of raising the said pendulum to the highest rate of elevation, shall be the standard of gun-powder for the state of Pennsylvania of the third or highest proof; and the middle or second proof standard of gun-powder shall be ascertained by the number of degrees on the said graduated arch, to which the same quantity by weight in equal moieties of the first and third proof powder shall be capable of raising the said pendulum; and the said standard being so fixed and ascertained, the said Commissioners shall make report thereof in writing, by indentures under their hands and seals, one part thereof, together with one of the said two pendulum powder proofs, and as accurate a draft and description thereof as can be made shall be returned to the Governor, to be filed and remain in the office of the Secretary of the commonwealth; one other part shall be returned to the Master of the Rolls, to be recorded in his office, and filed among the laws of the state; and the other part, together with the other pendulum powder proofs, shall be delivered to the first Inspector of gun-powder to be appointed in pursuance of this act, and by him, and his successors in office, to his and their successors, as often as another officer shall be appointed.

SECT. III. *And be it further enacted by the authority aforesaid,* That so often as the said pendulum powder om the possession of the Inspector shall, by natural wear, or by accident, be rendered unfit for use, or its accuracy doubted, the same shall be compared with the other remaining in the

15

Secretary's office, and, if found necessary, a new one constructed, and made comformably thereto in measure and weight, for the use of the Inspector, at his own costs and charges.

SECT. IV. *And be it further enacted by the authority aforesaid,* That the said Commissioners shall prepare and report a plan for the necessary buildings, and an estimate of the expense thereof, and the same being laid before and approved by the Governor, he shall cause to be erected and built, on the most proper part of the lot belonging to the public magazine aforesaid, a brick building, for the use of the Inspector, with two apartments, one for the purpose of keeping his engine apparatus and for making proofs, and the other for the purpose of keeping the samples of powder in safety, the expence of which building shall be paid and defrayed by warrants to be drawn by the Governor on the State Treasurer, which shall be allowed him, on settlement of his accounts, out of the fund for the support of government: *Provided,* That the whole amount of the expence thereof do not exceed the sum of five hundred dollars.

SECT. V. *And be it further enacted by the authority aforesaid,* That it shall and may be lawful for the Governor of this commonwealth, and he is hereby required, as soon as conveniently may be after the passing of this act, and as often afterwards as the office shall become vacant by death, resignation or otherwise, to appoint one suitable and skillful person to be Inspector of gun-powder in and for the city, port and county of Philadelphia, who, before he enters on the duties of his office, shall take and subscribe the oath or affirmation required by law for the support of the constitutions of the United States and of this state; and moreover shall take and subscribe, before the Governor, an oath or affirmation, that he will well and faithfully perform all and singular the duties required by this act, according to the heft of his knowledge, skill and ability, and without prejudice or partiality.

SECT. VI. *And be it further enacted by the authority aforesaid,* That it shall be the duty of the Inspector of gun-powder so to be appointed, for the time being, to attend at the said public magazine, and his office so to be built, as often as shall be necessary, to inspect and examine all gun-powder there to be deposited, to draw samples from each cask of powder which shall be so as aforesaid bored, and to open or otherwise get samples of casks of powder not bored as aforesaid, and removing such samples to his office, there to prove the same by the pendulum proof aforesaid, and note the standard quality of each cask, to provide himself with cedar plugs, stamped on the outer end with the letters S.P. and the figures number one, number two, and number three, to designate the first, second, and third proofs of standard gun-powder of the state of Pennsylvania, and another stamped with the letters S.P. to designate condemned gun-powder, and therewith carefully to plug up the holes opened or made for the purpose with such marked plugs, as the proof quality of the powder in each cask respectively contained, and occasionally to weigh the said casks; and if upon weighing the same suspicion should arise that the casks are false tared, or do not contain the quantity herein above mentioned for each cask, to empty the same, and weigh the cask and powder separately, to ascertain the deficiency, if any, in the neat weight, and to fill the same to its due weight out of any other cask belonging to the same person, marking the weight taken on the ullage casks, and keeping an exact amount in his books thereof, and of the names of the owners, and the persons bringing and depositing the same.

SECT. VII. *And be it further enacted by the authority aforesaid,* That every cask of gun-powder inspected as aforesaid shall be plugged up with a plug marked with the number next below the

16

standard number of degrees to which the pendulum shall not be elevated in the proof, and that every cask of gun-powder inspected as aforesaid, which shall not elevate the pendulum to the standard of the first or lowest proof, shall be condemned, and one pint of clean water for every twenty-five pounds of powder therein contained shall be poured thereinto, and the hole plugged up with the plug marked S.P. before the same shall be delivered over to the owner to be refined and re-manufactured; and to prevent a failure in the inspection by the temporary indisposition of the Inspector, it shall and may be lawful for him to execute all the duties hereby required by a Deputy, to be appointed by him, and approved by the Governor, the Deputy first taking and subscribing the like oaths or affirmations hereby required from the principal.

SECT. VIII. *And be it further enacted by the authority aforesaid,* That the Keeper of the said magazine shall at all seasonable times in every juridical day in the year admit the said Inspector, and his Deputy and Assistants, into the said magazine, to do and perform the several duties hereby required of him and them, and shall not deliver any powder from the said magazine until the same shall be inspected as aforesaid.

SECT. IX. *And be it further enacted by the authority aforesaid,* That no person appointed to the office of Inspector, or his Deputy, shall, during the time of holding or exercising the said office, be concerned directly or indirectly in manufacturing, buying or selling gun-powder in gross, or by retail, under penalty of forfeiting the sum of five hundred dollars for every such offence, to be recovered by any person who will sue for the same in any court having competent jurisdiction, one moiety for the use of this commonwealth, and the other to the use of him or them who shall sue for the same; and upon conviction thereof shall be removed from the said office, and wholly disqualified to take or hold any office of trust or profit under this commonwealth.

SECT. X. *And be it further enacted by the authority aforesaid,* That if any person, from and after the said first day of October next, importing or bringing into the port or city, or county of Philadelphia, any quantity of gun-powder exceeding twenty-five pounds, with intent to sell the same, shall neglect to deposit the same for inspection in the magazine aforesaid, or shall sell the same before it be inspected and marked as aforesaid, or shall sell any gun-powder that shall be condemned as aforesaid as and for merchantable gun-powder, every person so offending shall forfeit all such gun-powder as aforesaid.

SECT. XI. *And be it further enacted by the authority aforesaid,* That the Inspector shall be entitled to demand and receive of and from the owner and possessor of all gun-powder deposited in the said magazine, and by him or his Deputy examined, proved and plugged, as aforesaid, the following sums or rates, whether the same be approved or condemned, paid or secured, before the same shall be removed from the magazine, if the Inspector shall so require; for every cask of powder, manufactured in this state or any of the United States, bored, and stopped with corks by the manufacturer, containing twenty-five pounds neat weight, seven cents; for every like cask containing fifty pounds, eight cents; for every like cask containing one hundred pounds, nine cents; and for every cask of foreign powder, or powder manufactured in the United States, not bored and stopped with corks as aforesaid, double the said price or rates; and for every cask which he shall find deficient one per cent. in weight, and shall fill up, fifty cents.

17

SECT. XII. *And be it further enacted by the authority aforesaid,* That if any dispute should arise between the owner, possessor or consignee or any such powder and the Inspector, touching the proof or condemnation thereof, or of the goodness of the materials and manner in which the casks are made, upon application by the owner, possessor or consignee of such powder to one of the Magistrates of the city or county of Philadelphia, where the dispute shall arise, the said Magistrate shall issue his warrant to three indifferent judicious persons to be triers thereof, one of them to be named by the said owner, possessor or consignee, one by the said Inspector, and the third by the said Magistrate, directing the said triers to view and examine the said powder, and make report to him forthwith touching the condition thereof, and that if they shall find the said powder not merchantable, that they certify to him the cause thereof, and the said Magistrate shall thereupon give his judgment agreeably to the report of the said triers, or any two of them; and in case the said Magistrate shall on such report adjudge the powder not to be merchantable, he shall award the owner, possessor or consignee thereof, to be all costs; but in case the said powder shall be found merchantable, the Inspector shall be adjudged to pay all costs which may have accrued, and shall thereupon cause the powder to be marked as of the standard to be directed by the said triers.

## H.     RHODE ISLAND

### 1.     Act of Oct. 1776, 1776 R.I. Laws 25 - AN ACT FOR THE INSPECTION OF GUNPOWDER MANUFACTURED WITHIN THE STATE.

*BE it Enacted by this General Assembly, and, by the Authority thereof, it is Enacted,* That if any Person or Persons, within this State, shall vend or expose to Sale any Gunpowder, manufactured within the same, unless said Gunpowder be packed in a good dry Cask, marked with the two first Letters of the Manufacturer's Name, and hath been examined and approved by the Inspector of Gunpowder, for said State, and by him marked with the Letters U.S.A. and such other Marks as are necessary to distinguish the several Sorts of Gunpowder; the Person or Persons so offending, shall forfeit and pay six Pounds, lawful Money, for every Cask so exposed to Sale, to be recovered by Bill, Plaint or Information, upon Conviction before any Court of Record within this State; which Forfeiture shall one Moiety thereof be given to the Informer, and the other be paid into the General Treasury of this State: *And be it further Enacted by the Authority aforesaid,* That the said Inspector be paid, out of the General Treasury, nine Pence, lawful Money, for every Cask so marked and inspected by him.

### 2.     1798-1813 R.I. Pub. Laws 85 §2 - AN ACT RELATIVE TO THE KEEPING GUN-POWDER IN THE TOWN OF PROVIDENCE.

"§ 1. Be it therefore enacted by the General Assembly, and by the authority thereof it is hereby enacted, That no person or persons shall hereafter keep or deposit gunpowder, in a greater quantity than twenty-eight pounds, in any shop, building or other place, in the town of Providence, except such place or places as the Town Council of said town shall allow and designate for that purpose.

§ 2. And be it further enacted, That all and every person and persons whomsoever, who shall hereafter keep or depsoit gunpowder, in a greater quantity than twenty eight pounds, in any shop or shops, building or buildings, or in any other place or places in said town, except only such place or places as the Town-Council of said town shall allow and designate for that purpose, shall forfeit and pay the sum of twenty dollars, for each and every such offence, to be recovered by bill, plaint

18

or information, before one or more of the Justices of the Peace for said town, and for the use of the poor of said town.

§3. And be it further enacted, That the said quantity of twenty-eight pounds of gun-powder, shall be kept in tin canisters, and in no other vessels; and if any person or persons, whomsoever, shall keep the same in any vessel or thing, except said tin canisters, the person or persons guilty thereof, shall, for each and every such offence, forfeit and pay the sum of twenty dollars, to be recovered and appropriated as aforesaid."

I.   **WASHINGTON D.C.**

1.   **Washington, D.C., Laws of the Corporation of the City, ch. 107 (Public), §§ 1–2 -** AN ACT FOR THE SAFE KEEPING OF GUNPOWDER.

*Be it enacted by the board of aldermen and board of common council of the city of Washington*, That whenever gun-powder, (not the property of the United States) shall be brought to the city of Washington, for sale or deposit, in any quantity greater than thirty pounds, it shall be deposited in the United States' Arsenal at Greenleaf's point, within twelve hours thereafter, and if brought by any ship or vessel, in forty-eight hours after breaking bulk, under pain, in either case, of incurring a penalty of twenty dollars for each offence. And persons depositing gunpowder as above, shall be governed by the following regulations, which have been prescribed by the ordnance department, for the reception and delivery of gunpowder at the United States Arsenal at Greenleaf's Points viz:

1st. The commanding officer of the Arsenal will cause to be received, and safely preserved in the magazine at that place, any quantity of gunpowder which may be offered for storage, by any citizen of Washington; and will also deliver the same when required, upon the conditions hereinafter mentioned.

2d. The packages containing gunpowder, when sent to the magazine for storage, must be in good order, and should be legibly marked with the initial letters of the owners[1] name, or with other suitable distinguishing marks, by which they may be identified. An invoice signed by the owner or agent, will be sent with every parcel of powder, and should describe the packages, and specify the number, marks and contents of each. Upon the reception of any parcel of powder in the magazine, receipts therefor will be given by an officer of the arsenal, which will specify the number, description and contents of the packages received.[2]

3d. The gunpowder will be delivered from the magazine, upon the written orders of the owner or agent; (which orders will be deposited in the arsenal, and held as sufficient vouchers for the deliveries made,) and in any quantities, however small, not less than one entire package. No package will be opened at any time. Packages will be received into or delivered from the magazine, on any day except Sunday, and any hour between sunrise and sundown.

4th. A book will be kept at the arsenal, in which all deposits and all deliveries of powder, will be registered. A separate account will be kept for each parcel of powder deposited.

5th. The charges for receiving, delivering and storing the powder, will be as follows, viz:

19

For the reception of any parcel into the magazine, (whether large or small,) for registering the same, and for passing receipts therefor, for each separate parcel, twenty-five cents.

For the delivery of any parcel from the magazine, (whether large or small,) for each separate delivery, ten cents.

For storage at the following rates, viz:

| For Each Package. | | | |
|---|---|---|---|
| | Or 1-4th cask of 25 lbs. | Or half barrel of 20 lbs. | Or barrel of 100 lbs. |
| For any period not exceeding 3 months, | 6 cents. | 9 cents. | 12 cents. |
| Exceeding 3 months, and less than 1 year, | 12 cents. | 18 cents. | 25 cents. |
| Exceeding 1 year at this rate per annum. | 12 cents. | 18 cents. | 25 cents. |

For packages containing less than twenty-five pounds, storage to be charged at the same rate, by weight, as for quarter casks.

6th. The accounts will be stated, and bills will be presented annually, for such parcels as may remain in the magazine for one year or more; and upon the delivery of the last of any parcel, all charges due on that parcel will be paid, whether it has been in deposit for a greater or a less period than one year. All moneys received on this account will be placed to the credit of the arsenal post fund.

Sec. 2. And be it enacted, That no person shall keep in his, her or their possession, in any house, building or cellar, within the limits of this city, any quantity of gunpowder, exceeding thirty pounds; which shall be well secured in tin cannisters with small mouths, and a tin top to fit; each of which to contain not more than fourteen pounds weight, under the penalty of twenty dollars for each and every offence, and a further penalty of five dollars for every day in which gunpowder may be continued to be kept in violation of the provisions of this act.

## II.    **Proving of Firearms and Gunpowder – Council/Committee Of Safety Orders; Resolutions**

### A.    MARYLAND

#### 1.    Aug. 29, 1775, Archives of Maryland, 11:75.

Council of Safety

Resolved, That Mr. Charles Beatty of Frederick Town be empowered to contract for the making and Delivery of 650 good substantial proved Musquets, 3 ½ Feet in the Barrel, and of three

20

Quarters of an Inch in the Bore, with good double Bridle Locks, black walnut or Maple Stocks and plan strong brass mounting, Bayonets with Steel Blades 17 Inches long, steel Ramrods, double Screws, priming Wires, and Brushes fitted thereto, with a pair of brass Molds for every Eighty Musquets to cast 12 Bullets on one Side, and on the other side to cast Shot of such Size, as the Musquet will chamber three of them, for a Sum not exceeding Ten Dollars and two Thirds of a Dollar in Bills of Credit issued by the last Convention for every such Firelock with the above Accoutrements…

Resolved, That Robert Alexander Esqr of Baltimore Town be empowered to contract for the making and Delivery of 500 good substantial proved Musquets with the same Accoutrements and like Dimensions with those for which Mr. Beatty is empowered to contract, and for the same price, and may contract to advance in the same Manner.

August 31, 1775

Resolved, That the Treasurer of the Western Shore out of Bills of Credit in his Hands pay unto Mr. Isaac Harris or his order four Dollars and two Thirds of a Dollar for every [good substantial proved] Musquet Barrell 3 ½ Feet long and three [quarters of an] Inch in the Bore agreeable to the one now made and [delivered] and for a pair of brass Molds as aforesaid for every 80 Barrels which the said Harris shall deliver of the said Treasurer before the first day of May next.

### 2.    Sept. 1, 1775, Archives of Maryland, 11:77.

Council of Safety

Resolved, That the Honble Daniel of St. Thomas Jenifer Esq Charles Carroll (of Carrollton) Esq and Mr. Charles Wallace, or any of them, be empowered to contract for the making and Delivery of any number not exceeding 1000 good substantial proved Musquets, of the same Dimensions and with the same Accoutrements with those for which Mr. Beatty is empowered to contract, and for the same price, and may contract to advance in the same Manner.

Resolved, That Thomas Johnson Jr. Esq. be empowered to contract for the making and Delivery of any number not exceeding 1000 good substantial proved Musquets, of the same Dimensions and with the same Accoutrements with those for which Mr. Beatty is empowered to contract, and for the same price, and may contract to advance in the same Manner.

### 3.    Oct. 21, 1775, Archives of Maryland, 11:84-85.

Council of Safety

In Consequence of an Application made by Mr. William Whetcroft, of Annapolis, the Council agreed as follows viz.

The Council of Safety promise Mr. William Whetcroft that [in case he will next Spring import] a sufficient number of Workmen, and [will deliver for the] use of this Province for every week for two [years] then next following, 50 good substantial proved Musquets 3 ½ feet long in the Barrel and of three Quarters of an Inch in the Bore, with good double Bridle Locks, black walnut or Maple

21

Stocks and plan strong brass mounting Bayonets with Steel Blades 17 Inches long, steel Ramrods, double Screws, priming Wires, and Brushes fitted thereto, with a pair of brass Moulds for every Eighty Musquets to cast 12 Bullets on one Side, and on the other side to cast Shot of such Size, as the Musquet will chamber three of them, wholly made in this Province, the Public will, provided the Differences continue between Great Britain and the Colonies, take the said 50 Stands p$^r$ Week at the Rate if four pounds common money per stand …

### 4.    Feb. 12, 1776, Archives of Maryland, 11:127.

Council of Safety

Ordered, That Major Gist and Captain Ewing or either of them be requested to employ a skillful person for prove the said Muskets or any others that may hereafter made by the said Keener, Messersmith and Riddick or either of them under their aforesaid Contracts; and that the said Major Gist and Captain Ewing or either of them be empowered to draw on the Committee of Observation for Baltimore County, for powder sufficient for that purpose.

### 5.    Feb. 12, 1776, Archives of Maryland, 11:155.

[Ewing to Council]

Hon Sirs, I now acquaint you that agreeable to your orders directed to Major Gist and myself, I have prov'd all the guns made by the Gunsmiths in Town, as below, in Company with Mr. Vanbibber, who has seen them several times try'd in England.  Mr. Keener after seeing the rest try'd refus'd to have his proved but upon my threatning hi a good deal he comply'd.  We charg'd all the guns with one ounce of powder and two Balls. I have a proof stamp with which I stamp'd all that prov'd good, which stamp I will not deliver to any without your orders. I have the Honour to be yr most Obedt Hble Servt Thos Ewing

1776
| Feb$^y$ 7 | Peter Lydick | 72 Guns | 64 good. | 8 Bad. |
| " " | Sam Missersmith | 27 do. | 23 do. | 4 do. |
| " " | Keener | 32 do. | 13 do. | 19 do. |

### 6.    Sept. 13, 1776, Archives of Maryland, 11:269.

Council of Safety Journal and Correspondence

[Youst to Council]

George Town 17th Jan 1776

Gentlemen. Having applied to The Committee of observation for a sufficient quantity of Powder for proving the guns, which I have engaged to furnish the Council of Safety, which I have refused without your approbation should be glad you would please nominate a man in Town to see the Guns proved as it is inconvenient to me, at present to leave the Business. Mr. Deakins has left town, which prevent his writing to you according to agreement, I hope gentlemen you Please let

me know what I am to expect as the guns cannot be delivered or finished otherwise than by your granting a License for Powder.

Council of Safety

Saturday 20th January 1776

Ordered that Mr. Stephen West deliver to John Youst or Order the Quantity of ten Pounds weight of Gunpowder (out of that purchased by the Convention from him) to prove the Musquets made by the said Youst for the use of this Province.

## B.     NEW HAMPSHIRE

### 1.     8 Documents and Records Relating to the State of New Hampshire During the Period of the American Revolution, from 1776-1783 at 15-16 (Nathaniel Bouton ed. 1874).

PLAN FOR PROVIDING FIRE-ARMS FOR THE COLONY
N.H. H. Rep. (Jan. 12, 1775).

The Committee to draw a plan for providing Fire-Arms for a Colony stock, report as follows, viz:

That for every good Fire-Arm manufactured in this Colony, made after the following manner, viz: A barrel three feet nine inches long, to carry an ounce ball, a good bayonet with blade eighteen inches long, iron ramrod, with a spring to retain the same, the maker's name engraved on the lock, which shall be delivered at Exeter, to Nicholas Gilman, Esq˙, Receiver- General, on or before the 1st of May next, the owner of such fire-arms receive three pounds for each, of said Receiver-General, after having tried said gun in the presence of the said Receiver-General with four inches and a half of powder, well wadded, at the owner's own risk. And that there be appointed one good man, well approved, in each County, to receive any fire-arms so made in said County, on the same condition, (as before-mentioned for the Receiver-General to receive them,) and the persons so appointed to receive the money for the number of guns so delivered.

Which Report being read and considered,

Voted, That the same be received and established as a resolve of this House.

And, Voted, That Colonel Evans, for the County of Strafford; Samuel Emerson, for the County of Grafton; Major John Bellows, for the County of Cheshire; and Deacon Nahum Baldwin, for the County of Hillsborough, be Receivers of Fire-Arms, according to the aforesaid Resolve.

23

### C.   PENNSYLVANIA

#### 1.   Oct. 27, 1775, Col. Rec. Penn. 10:383.

Committee on Safety

Resolved, That Mr. Towers be directed to prove all the Muskets made in this City for the Provincial Service, and to Stamp such of them as are proof, with the letters P ; and that a Copy of this Minute be handed to the County Commissioners, who are to notify the Smiths they contract with for said Muskets, of this Resolve, and that none of their Guns will be receiv'd or paid for by this Board, but such as have been so proved and Stampt as aforesaid.

#### 2.   Mar. 2, 1776, Col. Rec. Penn. 10:502.

Committee on Safety

Matthias Keely having engaged with Colo. Miles to make 100 Firelocks, for the use of this Province, and having deliver'd 31 Firelocks to Mer. Towers; By order of the Board an order was drawn on Messrs. John Nixon & others, the Committee of accounts, in his favour for seventy-five pounds, toward the payment of said firelocks.

*Resolved*, That Colo. Hockley be desired to use all of the Muskets made by Matthias Keely & Comp'y, by order of this Board, proved with a weight of powder equal to the weight of the Ball, and cause the Muskets so proved to be stamp'd with the Letters P.P.

By order of the Board Robert Towers, Commiss'y, was directed to deliver Matthias Keely as much powder as will prove one hundred Firelocks, making by him for the use of this Province.

#### 3.   Apr. 4, 1776, Min. Sup. Penn., 10:535.

Committee of Safety

Robert Towers, Commissary, was directed to deliver Matthias Keller 56 Musket Ball, for proving Firelocks making by him for the use of this Province.

#### 4.   Apr. 9, 1776, Col. Rec. Penn. 10:536-37.

Committee on Safety

Upon application of Geo. Taylor, Esq'r, for a quarter cask of Powder for the use of Commiss'rs & Assessors of Northampton County, to prove the Firelocks making for the use of this Province,

By order of the Board, Rob't Towers, Commiss'y, was directed to deliver a quarter Cask for that purpose.

## III.   Laws Restricting Sales to Minors

### A.   ALABAMA

1.   **1856 Ala. Acts 17 -** AN ACT TO AMEND THE CRIMINAL LAW, NO. 26.

"That anyone who shall sell or give or lend, to any male minor, a bowie knife, or knife or instrument of the like kind or description, by whatever name called, or air gun or pistol, shall, on conviction be fined not less than three hundred, nor more than one thousand dollars."

2.   **1866 Ala. Code ch. 6, § 4230 -** OFFENSES AGAINST PUBLIC HEALTH, PUBLIC SAFETY, AND CONVENIENCE.

"Selling or giving fire-arms to minor. – Any person who sells, gives, or lends to any boy under eighteen years of age, any pistol, or bowie-knife, or other knife of like kind or description, must, on conviction, be fined not less than fifty, nor more than five hundred dollars."

### B.   CONNECTICUT

1.   **1881 Charter and Ordinances of the City of New Haven, § 506.**

"No person shall sell to any child under the age of sixteen years, without the written consent of the parent or guardian of such child, any cartridge or fixed ammunition of which any fulminate is a component part, or any gun, pistol or other mechanical contrivance arranged for the explosion of cartridge, or of any fulminate."

### C.   FLORIDA

1.   **1881 Fla. Laws 87, ch. 3285, § 1-2 -** AN ACT TO PREVENT THE SELLING, HIRING, BARTERING, LENDING OR GIVING TO MINORS UNDER SIXTEEN YEARS OF AGE, OR TO ANY PERSON OF UNSOUND MIND, CERTAIN FIRE-ARMS OR OTHER DANGEROUS WEAPONS.

SECTION 1. "It shall be unlawful for any person or persons to sell, hire, barter, lend or give to any minor under sixteen years of age any pistol, dirk or other arm or weapon, other than an ordinary pocket-knife, or a gun or rifle used for hunting, without the permission of the parent of such minor, or the person having charge to such minor, and it shall be unlawful for any person or persons to sell, hire, barter, lend or give to any person or persons of unsound mind any dangerous weapon, other than an ordinary pocket knife."

SECTION 2. "Any person or persons so offending shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty nor more than fifty dollars, or imprisoned in the county jail not more than three months."

25

D.    KANSAS

1.    **1883 Kan. Sess. Laws 159 -** AN ACT TO PREVENT SELLING, TRADING OR GIVING DEADLY WEAPONS OR TOY PISTOLS TO MINORS, AND TO PROVIDE PUNISHMENT THEREFOR.

SECTION 1. "Any person who shall sell, trade, give, loan or otherwise furnish any pistol, revolver, or toy pistol, by which cartridges or caps may be exploded, or any dirk, bowie knife, brass knuckles, slung shot, or other dangerous weapons to any minor, or to any person of notoriously unsound mind, shall be deemed guilty of a misdemeanor, and shall upon conviction before any court of competent jurisdiction, be fined not less than five nor more than one hundred dollars."

SECTION 2. "Any minor who shall have in his possession any pistol, revolver or toy pistol, by which cartridges may be exploded, or any dirk, bowie-knife, brass knuckles, slung shot or other dangerous weapon, shall be deemed guilty of a misdemeanor, and upon conviction before any court of competent jurisdiction shall be fined not less than one or more than ten dollars."

E.    KENTUCKY

1.    **1859 Ky. Acts 245 -** AN ACT TO AMEND AN ACT ENTITLED AN ACT TO REDUCE TO ONE THE SEVERAL ACTS IN RELATION TO THE TOWN OF HARRODSBURG.

SECTION 23: "If any person, other than the parent or guardian, shall sell, give or loan, any pistol, dirk, bowie knife, brass knucks, slung-shot, colt, cane-gun, or other deadly weapon, which is carried concealed, to any minor, or slave, or free negro, he shall be fined fifty dollars."

F.    LOUISIANA

1.    **1890 La. Acts 39 -** AN ACT MAKING IT A MISDEMEANOR FOR ANY PERSON TO SELL, GIVE OR LEASE, TO ANY MINOR, ANY PISTOL, BOWIE-KNIFE, DIRK OR ANY WEAPONS, INTENDED TO BE CARRIED OR USED AS A CONCEALED WEAPON.

SECTION 1. "It shall be unlawful for any person to sell, or lease or give through himself or any other person any pistol, dirk, bowie-knife or any other dangerous weapon which may be carried concealed to any person under the age of twenty-one years."

G.    MASSACHUSETTS

1.    **Act of March 12, 1884, 1884 Mass. Acts 57, ch. 76 -** AN ACT TO PROHIBIT THE SALE OF FIREARMS AND OTHER DANGEROUS WEAPONS TO MINORS.

*Be it enacted, etc., as follows:*

26

SECTION 1. No person shall sell or furnish to a minor under the age of fifteen years, any firearms or other dangerous weapon: *provided*, that instructors and teachers may furnish military weapons to pupils for instruction and drill.

SECTION 2. Whoever violates the provisions of this act shall for each offence be punished by fine not less than ten nor more than fifty dollars.

SECTION 3. All acts and parts of acts inconsistent herewith are hereby repealed; but such repeal shall not affect any prosecutions or suits now begun, nor prevent the institution of any suit, prosecution or proceedings to enforce penalties and liabilities already incurred under existing laws.

### H.    MICHIGAN

    **1.    1883 Mich. Pub. Acts 144 -** AN ACT TO PREVENT THE SALE AND USE OF TOY PISTOLS.

SECTION 1. "That no person shall, sell, give, or furnish to any child under the age of thirteen years, any cartridge of any form or material, or any pistol, gun, or other mechanical contrivance, specially arranged or designated for the explosion of the same."

### I.    MISSISSIPPI

    **1.    1878 Miss. Laws 175 -** AN ACT TO PREVENT THE CARRYING OF CONCEALED WEAPONS AND FOR OTHER PURPOSES.

SECTION 2. "It shall not be lawful for any person to sell to any minor or person intoxicated, knowing him to be a minor or in a state of intoxication, any weapon of the kind or description in the first section of this Act described (pistols, various knifes etc., or any pistol cartridge, and on conviction shall be punished by a fine not exceeding two hundred dollars."

SECTION 3. "Any father, who shall knowingly suffer or permit any minor son under the age of sixteen years to carry concealed in whole or in part, any weapon of the kind or description in the first section of this act described (pistols, knifes, etc.) shall be deemed guilty of a misdemeanor, and on conviction shall be fined not less than twenty dollars, nor more than two hundred dollars, and if the fine and costs are not paid, shall be condemned to hard labor . . ."

### J.    NEBRASKA

    **1.    1895 Neb. Laws 237, Art. XXVI -** STATUTES RELATING TO THE GOVERNMENT OF THE CITY OF LINCOLN.

SECTION 2. "No person shall sell, loan, or furnish, to any minor, any gun, fowling-piece, or other fire-arm, within the limits of the city, under penalty of a fine of fifty dollars for each offense."

SECTION 5. "It shall be unlawful for any parent, guardians, or other person having the care and custody of any minor, to purchase for or give to any such minor or knowingly to permit any minor

to have any toy pistol, toy guns, or other toy arms or arms or sling shot, out of which any leaden or other dangerous missiles may be discharged . . .”

### K.    NEW JERSEY

1.    **1885 N.J. Laws 52 -** AN AMENDMENT TO AN ACT TO PREVENT VENDING, USING, OR EXPLODING OF GUNS, PISTOLS, TOY PISTOLS, OR OTHER FIRE-ARMS TO OR BY PERSONS UNDER THE AGE OF FIFTEEN YEARS IN THIS STATE.

SECTION 2.  “That it shall not be lawful to sell, hire or loan to any person under the age of fifteen years any gun, pistol, toy pistol, or other fire-arms; or for any person under the age of fifteen years to purchase, barter or exchange any gun, pistol, toy pistol or other fire-arms; nor for any person under the age of fifteen years to carry, fire or use any gun, pistol, toy pistol or other fire-arms, except in the presence of his father or guardian, or for the purpose of military drill in accordance with the rules of a school.”

### L.    OHIO

1.    **1888 Oh. Laws 222 -** TO PROHIBIT THE SALE OF TOY PISTOLS IN THE STATE OF OHIO.

SECTION 6986B  “That it shall be unlawful for any firm, company or person in the state of Ohio, to sell or exhibit for sale any pistol manufactured out of any metallic or hard substance, commonly known as a toy pistol; to a minor under the age of fourteen years; any firm company or person violating the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than ten nor more than fifty dollars, or be imprisoned not less than ten days nor more than twenty days, or both and shall be liable to a civil action in damages to any person injured by such sale.”

### M.    PENNSYLVANIA

1.    **Pa. Act of June 10, 1881.**

“[makes any person] who shall knowingly and willfully sell or cause to be sold, to any person under sixteen years of age, any cannon, revolver, pistol or other such deadly weapon, guilty of an offense.”

28

**N.　TEXAS**

　　**1.　1897 Tex. Gen. Laws 221, ch. 155** - AN ACT TO PREVENT THE BARTER, SALE AND GIFT OF ANY PISTOL, DIRK, DAGGER, SLUNG SHOT, SWORD CANE, SPEAR, OR KNUCKLES MADE OF ANY METAL OR HARD SUBSTANCE TO ANY MINOR WITHOUT THE WRITTEN CONSENT OF THE PARENT OR GUARDIAN OF SUCH MINOR.

"That if any person in this State shall knowingly sell, give or barter, or cause to be sold, given or bartered to any minor, any pistol, dirk, dagger, slung shot, sword-cane, spear or knuckles made of any metal or hard substance, bowie knife or any other knife manufactured or sold for the purpose of offense or defense, without the written consent of the parent or guardian of such minor, or of someone standing in lieu thereof, he shall be punished by fine of not less than twenty-five nor more than two hundred dollars, or by imprisonment in the county jail not less than ten nor more than thirty days, or by both such fine and imprisonment and during the time of such imprisonment such offender may be put to work upon any public work in the county in which such offense is submitted."

**O.　VIRGINIA**

　　**1.　1800 Va. Acts 118, ch. 152 -** AN ACT TO PREVENT SELLING OR FURNISHING CIGARETTES OR TOBACCO IN ANY FORM, OR PISTOLS, DIRKS, OR BOWIE-KNIVES TO MINORS UNDER SIXTEEN YEARS OF AGE.

"If any person sell, barter, give or furnish, or cause to be sold, bartered, given or furnished to any minor under sixteen years of age, cigarettes, or pistols, or dirks, or bowie knives, having good cause to believe him or her to be a minor under sixteen years of age, shall be fined not less than ten dollars nor more than one hundred dollars."

　　**2.　1902-1904 Va. Acts 261, ch. 186 -** AN ACT TO PREVENT THE SALE OR GIFT OF TOY FIREARMS TO PERSONS UNDER TWELVE YEARS OF AGE, AND TO PROVIDE A PENALTY THEREFOR.

SECTION 1. "Be it enacted by the general assembly of Virginia, That it shall be unlawful for any person, firm, corporation, or association, to sell, barter, exchange, furnish, or dispose of by purchase, gift, or in any other manner, any toy gun, pistol, rifle, or other toy firearm, if the same shall, by means of powder or other explosive discharge blank or ball charges, to any person under the age of twelve years. Any firm, corporation, or association violating the provisions of this act shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than fifty dollars nor more than one hundred dollars, or confined in jail for a period not less than thirty, nor more than ninety days, either or both."

SECTION 2. "Each sale of any of the articles hereinbefore specified to any person under the age mentioned shall constitute a separate offense, and any person over the age of twelve years who shall purchase, accept, or in any manner acquire any of the toy articles of the kind hereinbefore

29

enumerated for any person under the age of twelve years, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than two hundred dollars, or confined in jail for a period not less than thirty days nor more than six months, either or both."

## IV.   <u>Laws Regulating the Storage and Transport of Gunpowder</u>

### A.   CONNECTICUT

#### 1.   1775 Conn. Pub. Acts ch. 526 - AN ACT FOR ENCOURAGING THE MANUFACTURE OF SALT PETRE AND GUN POWDER.

. . . Be it enacted, That no salt petre, nitre or gun-powder made and manufactured, or that shall be made and manufactured in this Colony, shall be exported out of the same by land or water without the license of the General Assembly or his Honor the Governor and Committee of Safety, under the penalty of twenty pounds for every hundred weight of such salt petre, nitre or gun-powder, and proportionately for a greater or lesser quantity so without license exported; to be recovered by bill, plaint, or information, in any court of record in this Colony by law proper to take cognizance thereof. . . Be it further enacted by the authority aforesaid, That no powder-mill shall be erected in this Colony for the manufacture of gun-powder without the license of the general assembly, or in their recess the Governor and Council, first had and obtained under the penalty of thirty pounds for every such offence; to be recovered as the other forgoing personalities in this act are above directed to be recovered.

#### 2.   Act of May 30, 1832, 1832 Conn. Laws 391, ch. 25 - AN ACT REGULATING THE MODE OF KEEPING OF GUN POWDER.

SEC. 1. *BE it enacted by the Senate and House of Representatives, in General Assembly convened*, That hereafter it shall be lawful for the select-men of each and every town within this State, or a majority of them, by their order, in writing, directed to the owners or persons having charge of the same, to cause to be removed to same safe and convenient place within said town, and within such time, as in said order may be prescribed, any quantity of gun powder so deposited or kept, within the limits of said town, as in the opinion of said select-men, or a majority of them, may endanger the persons or dwellings of any individuals whatsoever. Whereupon it shall become the duty of the persons thus notified, to remove the said gun powder within the time, and to the place specified in the said order.

SEC. 2. That in case the said gun powder shall not be removed pursuant to said order, as is hereinbefore prescribed, the said select-men, or a majority of them, may remove or cause the same to be removed to such place within said town, as in their opinion shall be deemed safe and convenient. And they shall have and retain a lien upon the said powder for all necessary expenses in removing and keeping the same.

SEC. 3. That those persons who may hereafter wish to deposit, or keep within the limits of any town in this State gunpowder in quantity exceeding fifty pounds, may require the select-men of such town, or a majority of them to designate some safe and convenient place for that purpose; and it shall thereupon become the duty of such selectmen, or a majority of them, in writing, to

designate and appoint a suitable place within their respective towns, for such purpose; at which place, thus designated, it shall be lawful thenceforth to deposit and keep gunpowder according to the true intent and meaning of this Act, until the select-men of said town, or a majority of them, for the time being, shall order the same to be removed pursuant to the foregoing provisions of this Act.

SEC. 4.  That if any person shall violate the provisions of this act as hereinbefore specified, he shall forfeit the sum of fifty dollars, one half thereof to the treasury of the town within which the offence is committed, and the other half to the person who may sue for and recover the same, in an action of debt.

*Provided*, if any person shall consider himself aggrieved by the doings of the select-men, he may petition the next county court, which may grant the proper relief.

> **3.**     **1821 Conn. Laws ch. 97 -** AN ACT INCORPORATING THE CITIES OF HARTFORD, NEW HAVEN, NEW LONDON, NORWICH, AND MIDDLETOWN.

SECT. 20.  There shall be a court of common council of each city, to be composed of the mayor, aldermen, and common council, who, by a major vote, shall have power to make by-laws . . . relative to prohibiting and regulating the bringing in, and conveying out, or storing of gun-powder in said cities . . .

> **B.**     **GEORGIA**

> **1.**     **Act of Dec. 26, 1831, 1831 Ga. Acts 171 -** AN ACT TO REGULATE THE TRANSPORTATION OF GUNPOWDER, AND TO AUTHORISE THE FORFEITURE OF SUCH AS SHALL BE TRANSPORTED IN VIOLATION OF THE PROVISIONS OF THIS ACT.

Sec. 1.  *Be it enacted by the Senate and House of Representatives of the State of Georgia, in General Assembly met, and it is hereby enacted by the authority of the same*, That from and after the passage of this act, it shall be the duty of all owners, agents and others, who may or shall have any gunpowder, exceeding in quantity five pounds, transported upon the waters or within the limits of this State, to have the word gunpowder marked in large letters upon each and every package which may or shall be so transported.

Sec. 2.  *And be it further enacted*, That all gunpowder exceeding five pounds in quantity, which shall hereafter be transported or engaged for transportation upon any of the waters or within the limits of this State, without being marked as directed in the first section of this act, shall be liable to seizure and forfeiture—one half to the informer, the other for the use of the Volunteer companies most convenient or contiguous to the place of seizure or forfeiture.

Sec. 3.  *And be it further enacted*, That all laws or parts of laws militating against this law, be, and they are hereby repealed.

31

### C.      IOWA

####    1.      **Act of Jan. 19, 1846, 1846 Iowa Acts 723, ch. 123 -** AN ACT TO INCORPORATE AND ESTABLISH THE CITY OF DUBUQUE.

SEC. 12.  **By-laws and ordinances.**  That the said city council shall have power, and it is hereby made their duty to make and publish from time to time . . . all such laws and ordinances as to them shall seem necessary to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of said city, and the inhabitants thereof, to impose fine, forfeitures and penalties on all persons offending against the laws and ordinances of said city, and provide for the prosecution, recovery and collection thereof, and shall have power to regulate by ordinance the keeping and sale of gun-powder within the city.

### D.      KENTUCKY

####    1.      **1876 Ky. Acts 327, § 6.**

. . . To prohibit the manufacture of gunpowder or other explosive, dangerous, or noxious compounds or substances in said city, and to regulate their sale and storage by license.

### E.      LOUISIANA

####    1.      **Act of July 1, 1817, New Orleans Ordinances and Resolutions 217 -** AN ORDINANCE FOR PREVENTING AND EXTINGUISHING FIRES.

ART. 10.  It shall not be lawful for any person to have or keep within the city and suburbs, or within two miles of the same (except the public magazine, or place of depot appointed for that purpose) any quantity of gun-powder, at any one time, exceeding one hundred pounds weight, in any one place, house, store or out-house, which said quautity [sic] of one hundred pounds shall be separated in several stone jugs or tin cannisters, each of which shall not contain more than ten pounds of powder, and shall be provided with a safe and sufficient stopper; and if any person or persons shall keep any greater quantity of gunpowder at one time than one hundred pounds, in any one place, house, store or out-house, or if the same gunpowder, so kept as aforesaid, shall not be separated in the manner herein above directed, he, she or they shall forfeit all such gunpowder so kept contrary to the true intent and meaning of this ordinance, or so permitted to be kept, and which shall not be separated as aforesaid, and shall also forfeit and pay a fine not less than twenty-five, nor more than one hundred dollars, to be recovered with costs of suit, by the Mayor or any other competent magistrate; one half to the informer, and the other half for the use of the city.

ART. 11.  The Mayor or any justice of the peace within the limits of the city, is hereby authorised, as often as he shall be informed upon oath, or affirmation, of probable cause to suspect any person or persons whomsoever, of concealing or keeping within the city or precincts, to the distance of two miles from the said city, any quantity of gunpowder, over and above one hundred pounds weight, as aforesaid, or of concealing or keeping in any boat, ship or other vessel within the port of New Orleans, any quantity of gunpowder, over and above ten pounds weight, (ships of war only excepted) to issue a search warrant to be executed in the house, store, shop, or other place, or any boat, ship or other vessel designated to him, to examine into the truth of such allegation, in order

32

that every such offender be proceeded against in the manner above specified, or in conformity with the ordinance respecting the said port, as the case may be.

**F.     MAINE**

**1.     Act of Mar. 19, 1821, 1821 Me. Laws 98, ch. 25 -** AN ACT FOR THE PREVENTION OF DAMAGE BY FIRE, AND THE SAFE KEEPING OF GUN POWDER.

SEC. 1.  BE *it enacted by the Senate and House of Representatives, in Legislature assembled*, That the Selectmen of each town within this State, containing not less than fifteen hundred inhabitants, be, and they hereby are, authorized and empowered to make rules and regulations, from time to time, in conformity with which, all gun powder which is or may be within such town, shall be kept, had or possessed therein; and no person or persons shall have, keep or possess within such town, any gun powder, in any quantity, manner, form or mode, other than may be prescribed by the rules and regulations aforesaid.

SEC. 2. *Be it further enacted*, That any person or persons who shall keep, have or possess any gun powder, within any town, contrary to the rules and regulations which shall be established by the Selectmen of such town, according to the provisions of this Act, shall forfeit and pay a fine of not less than twenty dollars, and not exceeding one hundred dollars, for each and every offence, to be recovered by action of debt in any Court proper to try the same.

SEC. 3. *Be it further enacted*, That all gun powder which shall be had, kept or possessed, within any town, contrary to the rules and regulations which shall be established by the belled. Selectmen of such town, according to the provisions of this Act, may be seized by any one or more of the Selectmen of such town, and shall within twenty days next after the seizure thereof, be libelled, by filing with any Justice of the Peace in such town, a libel, stating the time, place and cause of seizure, and the time and place when and where trial shall be had before said Justice, and a copy of said libel shall be served by the Sheriff, or his deputy, on the person or persons, in whose possession the said gun powder shall have been seized, by delivering a copy thereof to each such person, or leaving such copy at his or her usual place of abode, seven days at least, before the time which shall be specified in said libel, for the trial thereof, that such person may appear, and show cause why the gun powder, so seized or taken, should not be adjudged forfeit; and if any person shall appear to show cause why the same should not be adjudged forfeit, such appearance shall be entered on record, by said Justice; and if the gun powder, seized as aforesaid, shall be adjudged forfeit, the person or persons, whose appearance shall have been recorded as aforesaid, shall pay all costs of prosecution, and execution shall issue therefor: *Provided however*, That the person or persons, whose appearance shall have been recorded, may appeal from the judgment rendered by said Justice of the Peace, to the next Court of Common Pleas to be holden for the County where such town is situated; and the party so appealing, before such appeal shall be allowed, shall recognize, with sufficient surety or sureties to the libellant, to prosecute his said appeal and to pay all such costs as may arise after said appeal; and no further proceedings shall be had upon the judgment appealed from; and in case the party appealing shall neglect to enter his appeal, the Court after appealed to, may, upon complaint, proceed to affirm the judgment of the Justice, with additional costs.

33

SEC. 4. *Be it further enacted*, That any person who shall suffer injury by the explosion of any gun powder, had or possessed, or being within any town, contrary to the rules and regulations which shall be established in such town, according to the provisions of this Act, may have an action of the case in any Court proper to try the same, against the owner or owners of such gun powder, or against any other person or persons, who may have had the possession or custody of such gun powder, at the time of the explosion thereof, to recover reasonable damages for the injury sustained.

SEC. 5. *Be it further enacted*, That it shall, and may be lawful for any one or more of the Selectmen of any town to enter any building, or other place, in such town, to search for gun powder, which they may have reason to suppose to be concealed or kept, contrary to the rules and regulations which shall be established in such town, according to the provisions of this Act, first having obtained a search warrant therefor according to law.

SEC. 6. *Be it further enacted*, That when any stove, chimney or stove pipe, within any town containing not less than fifteen hundred inhabitants, shall be defective, or out of repair, or so constructed or placed, that any building, or other property shall be in danger of fire therefrom, the Selectmen of said town shall give notice, in writing, to the possessor or possessors of such stove, chimney or stove pipe, to remove or repair the same; and if such possessor shall for the term of six days after the giving of such notice, unnecessarily neglect to remove, or effectually repair such stove, chimney or stove pipe, such possessor shall, for each and every such neglect, forfeit and pay a fine of not less than ten dollars, nor more than fifty dollars, to be recovered by action of the case, in any Court proper to try the same.

SEC. 7. *Be it further enacted*, That the fines, forfeitures and penalties, which shall arise under this Act, shall accrue, one moiety thereof to the use of the town within which the offence shall be committed, and the other moiety to the use of the person who shall prosecute or sue for the same.

SEC. 8. *Be it further enacted*, That the rules and regulations, which shall be established in any town, according to the provisions of this Act, shall be of no force or effect, until such rules and regulations, together with this Act, shall have been published by the Selectmen of such town, three weeks successively, by printing in some newspaper printed within the County, or by posting up attested copies in three several public places in said town.

## G.    MASSACHUSETTS

### 1.    Act of July 9, 1706, 1706-07 Mass. Acts 588, ch. 4 - AN ACT FOR ERECTING OF A POWDER-HOUSE WITHIN THE TOWN OF BOSTON.

Whereas, for the better securing and safe keeping of the publick stock of gunpowder, and preventing the great loss and danger by casualties befalling the same, and considering the imminent hazard of keeping powder in storehouses with other goods and merchandises, or in or near to dwelling-houses, the government have thought it necessary to order the erecting and building of a publick magazine or powder-house on the common or training-field in Boston, --

34

*Be it therefore enacted by His Excellency the Governour, Council and Representatives in General Court assembled, and by the authority of the same,*

[SECT. 1.]  That from and after the building and fitting the said house for the receiving and lodging of gunpowder, all gunpowder imported and landed at the port of Boston shall be brought to and lodged in the said magazine or store, and not elsewhere, on pain of confiscation of all powder put or kept in any other house or place, one moiety thereof to and for the use and supply of the publick store of the province, and the other moiety to the informer, to be recovered by bill, plaint or information in any of her majesty's courts or record within the same:  *saving*, nevertheless, the ordinary town stocks of Boston and Charlestown from time to time, the fortifications and garrisons immediately under the governour's command, the quantity of fifty pounds at a time in a shop for sale, and such part of the publick stores as shall be directed by the governour and council, from time to time, to be lodged in other place or places.

*And be it further enacted by the authority aforesaid*,

[SECT. 2.]  That for all powder belonging to merchants or other private persons put into the said magazine, there shall be paid to the use of the province, one shilling per barrel at the receipt thereof, and sixpence per barrel per month for three months next after the first, and then fourpence per barrel per month during it's lying there, out of which (if there be sufficient to answer it), the charge of looking after the said house, and the powder lodged there, shall be defreyed, from time to time; the governour and council to give necessary instructions and orders from time to time, as they shall think fit, for regulating the keeping of all powder put into the said magazine, for the preserving thereof, and that it be turned once a month at the least.

[SECT. 3.]  And the keeper of the said house shall duely attend at proper hours to be assign'd by the governour and council, for the receiving and delivery out of merchants' powder.

[SECT. 4.]  And if at any time the payment for merchants' powder (an accompt whereof shall be rendred on oath) will not defrey the charge of looking after the said house, so much as is wanting shall be paid out of the publick treasury.

>    **2.**    **Act of Dec. 13, 1715, 1715-16 Mass. Acts, ch. 12 -** AN ACT IN ADDITION TO AN ACT FOR ERECTING OF A POWDER-HOUSE IN BOSTON.

Whereas the confiscation of powder kept in houses and warehouses has not been found sufficient to deter[r] men from so keeping the same, to the great discouragement and damage of such as assist in times of fire, to endeavour the extinguishing thereof, --

*Be it therefore enacted by the Lieutenant-Governour, Council and Representatives in General Court assembled, and by the authority of the same,*

[SECT. 1.]  That from and after the publication hereof, any person within the town of Boston, that shall presume to keep, in his house or warehouse, any powder above what is by law allowed, shall forfeit and pay for every half[e] barrel[l] the sum of five pounds, and so *pro rato* for every greater quantity over and above the forfeiture or confiscation of the said powder; one moiety thereof to be

35

for the use of the poor of the town, to be paid to the town treasurer, the other moiety to the firewards, or any others that shall sue for the same.

*And be it further enacted by the authority aforesaid*,

[SECT. 2.]  That the quantity of powder allowed to be kept in shops, for sale in Boston, do not exceed twenty-five pounds; any law, usage or custom to the contrary thereof notwithstanding: *sav[e]ing, nevertheless*, the ordinary town stocks, as in the afore-recited act is expressed.

And whereas there is often danger by careless persons carrying powder thro[ugh] the town uncovered, --

*Be it further enacted by the authority aforesaid*,

[SECT. 3.]  That after the publication of this act, no person whatsoever presume to carry thro[ugh] the town any half[e]-barrel[l], barrel[l] or barrel[l]s of powder, unless secured by some sufficient covering of leather or cloth, spread over it, on penalty of forfeiting ten shillings per barrel[l] for each offence, and so *pro rato* for casks of lesser size; to be recovered of the persons carrying the same, by bill, plaint or information, before any court proper to try the same.

And whereas the town of Boston has often been in great haz[z]ard of fire, by throwing of squibbs, serpents, and rocketts, and by the performing of other fireworks, --

*It is further enacted by the authority aforesaid*,

[SECT. 4.]  That any person or persons who[m]soever that shall throw any squibbs, serpents, or rocket[t]s, or perform any other fireworks within the streets, lanes or alleys in the town of Boston, or upon or from the houses within the same, shall forfeit and pay the sum of twenty shillings for every such offence, to be recovered by bill, plaint or information, before a justice of the peace, or in any of his majesty's courts of record; the one half[e] of the aforesaid fines to be to the informer, and the other moiety to the use of the poor of the town.

*And be it further enacted by the authority aforesaid*,

[SECT. 5.]  That if any children or servants, of the age of twelve years and upwards, shall offend against this act in any of the particulars therein mentioned, and their parents or masters refuse to answer the forfeiture or damage awarded against them, they shall be punished by setting in the stocks or cage, or by imprisonment, not exceeding twenty-four hours, at the discretion of the court or justice before whom[e] the prosecution shall be, according to the nature and degree of the offence, and circumstances aggravating.  And the parents or masters of any child or servant under the age of twelve years shall pay a fine of ten shillings for any such child or servant transgressing, as aforesaid.

[SECT. 6.]  And the firewards are hereby directed to take effectual care to put this act in execution, and are fully impow[e]red to sue for, recover and take the several fines and forfeitures

36

aforementioned, by bill, plaint or information, in any of his majesty's courts of record within this province.

> **3.** **Act of June 23, 1719, 1719-20 Mass. Acts 136, ch. 3 -** AN ACT IN ADDITION TO AN ACT FOR ERECTING A POWDER-HOUSE IN BOSTON.

WHEREAS gunpowder in great quantities is imported and exported at the port of Boston, and the ships or vessels in which such powder commonly is, ly at the wharffs near to the warehouses and dwelling-houses of the inhabitants of the town of Boston aforesaid, being often grounded, whereby, in case of fire, the lives and estates of his majest[y][ie]'s good subjects are in great danger, as well as able-bodied and well-disposed persons discouraged and affrighted from giving their assistance and using any endeavours for the extinguish[ing][*ment*] thereof, --

*Be it therefore enacted by His Excellency the Governour, Counsel and Representatives in the General Court assembled, and by the authority of the same,*

[SECT. 1.] That from and after the publication of this act no gunpowder shall be kept on board any ship or other vessel, lying to or grounded at any wharff within the port of Boston. And if any gunpowder shall be found on board [any] such ship or vessel lying aground, as aforesaid, such powder shall be liable to confiscation, and under the same penalty as if it were found lying in any house or warehouse.

*And be it further enacted by the authority aforesaid*,

[SECT. 2.] That no powder be carried through any town upon trucks, under the penalty of ten shillings per barrel for every barrel of powder so conveyed, and so proportionably for smaller cask.

*And be it further enacted by the authority aforesaid*,

[SECT. 3.] That such quantity of gunpowder as by law is permitted and allowed to be kept in shops for retail, shall hereafter be kept in brass or tin tunnels, and no otherwise, under the penalty of forfeiting [*all*] such gunpowder; one moiety thereof to be to the use of the poor of the town where such powder shall be found, and the other moiety to them that shall inform and sue for the same; and that the firewards of the town of Boston, for the time being, be, and hereby are, directed strictly to observe and put this law in execution; any law, usage or custom to the contrary notwithstanding.

> **4.** **Act of July 5, 1771, 1771-72 Mass. Acts 167, ch. 9 -** AN ACT FOR ERECTING TWO PUBLICK MAGAZINES FOR THE SAFE KEEPING OF POWDER; THE ONE IN THE TOWN OF BOSTON, AND THE OTHER IN THE TOWN OF WATERTOWN.

WHEREAS it is with good reason apprehended that the present situation of the magazine or powder-house on the common or training-field in Boston is unsafe for lodging and keeping the great quantities of gun-powder which are commonly placed therein, and that it is also expedient to have another public magazine out of the town of Boston, in addition to that in Charlestown, —

*Be it therefore enacted by the Governor, Council and House of Representatives,*

37

[SECT. 1.]  That two public[k] magazines, or powder-houses, be built of stone or brick, and suitably finished, as soon as may be, at the publick expence, fit for stor[e]ing and safe keeping of gunpowder; the one in the town of Boston, behind, or at the north-western end of, the hills on the northern side of the common, or training-field, there; and the other, within the town of Watertown, in the county of Middlesex, in such place in said town as may be agreed upon by a committee that may be appointed by the general assembly to build said magazine; and that from and after the finishing such new magazines, all the gunpowder in the present magazine[s] shall, without delay, at the expence of the respective owners thereof, be removed from thence into one of the new magazines, or into both of them, or into the magazine at Charlestown, in such proportions as the commander-in-chief shall order; and that all the gunpowder which shall be imported and landed, in the port of Boston aforesaid, after finishing such new magazines, or either of them, shall be carried into and placed in one or both of them, or in the magazine at Charlestown, according to such order as aforesaid, and not el[e]s[e]where, on pain of forfeiting all such gunpowder as shall be lodged or kept in any other place; one moiety thereof to and for the use of this province, and the rest, to the informer; to be recovered by bill, plaint or information in any court of record in this province.  And the owner or owners of such gunpowder shall also forfeit the sum of ten pounds for every half-barrel of such gunpowder, and after that rate for every greater quantity, lodged in any other place; to be recovered by action of debt, in any court proper for the trial thereof, by him that shall sue for the same:  *saving, nevertheless*, that the ordinary town stocks of gunpowder, of each and every town or district within this province, may be placed and kept in any other suitable place or places, as the selectmen thereof, respectively, shall appoint; and that a quantity of gunpowder, not exceeding five-and-twenty pounds, may be kept in any shop for sale (provided it be kept in brass or tin tunnels):  *saving*, likewise, all needful stocks and gunpowder for any fort, fortress or garrison within this province; which may, nevertheless, be lodged and kept in such fortress:  *saving*, *also*, all such public[k], or provincial, stocks of gunpowder as by the commander-in-chief, for the time being, shall be ordered to be lodged in any other place or places.

*And be it further enacted*,

[SECT. 2.]  That a keeper shall, from time to time, be appointed by the commander-in-chief, [by] for each of the said magazines, who shall duly attend, each one, his respective magazine, at such hours and times as shall be directed and ordered by the commander-in-chief, for taking in and delivering out, all such gunpowder as shall, from time to time, be wanted by the respective owners thereof; and whose duty it shall be, in all respects, to take due care of all the gunpowder therein, for the preservation thereof, and not to neglect turning the same, once [in] every month, at least, as long as it shall remain therein:  and that no powder be taken in or delivered out, but between the hours of sun-rising and sun-s[i][e]tting.

*And be it further enacted*,

[SECT. 3.]  That for all gunpowder which shall be put into the said magazines, or either of them, saving such as belong to the public stock, there shall be paid into the hands of the respective keepers thereof, for the use of the province, one shilling for each barrel, upon receipt thereof; and sixpence for each barrel, by the month, for three months after the first month from the receipt thereof; and fourpence for each barrel, for every month afterwards; as long as it shall remain

38

therein: which monies, to be received by the several keepers of the said magazines, respectively, they shall each of them account for, upon oath, to the commander-in-chief and the council; and the same shall be applied towards defr[e]aying the charges of keeping and attending the said magazines, managing and taking due care of the gunpowder therein; and if there shall, at any time, be a deficiency for those purposes, it shall be made up and paid out of the province treasury; and if, at any time, there should be a surplusage, it shall be paid into the province treasury.

**5.**      **Act of Mar. 1, 1783, 1782 Mass. Acts 119, ch. 46 -** AN ACT IN ADDITION TO THE SEVERAL ACTS ALREADY MADE FOR THE PRUDENT STORAGE OF GUN POWDER WITHIN THE TOWN OF BOSTON.

*Whereas the depositing of loaded Arms in the Houses of the Town of Boston, is dangerous to the Lives of those who are disposed to exert themselves when a Fire happens to break out in the said Town:*

*Be it enacted by the Senate and House of Representatives in General Court assembled, and by the Authority of the same*, That if any Person shall take into any Dwelling House, Stable, Barn, Out House, Ware House, Store, Shop, or other Building within the Town of Boston, any Cannon, Swivel, Mortar, Howitzer, Cohorn, or Fire Arm, loaded with, or having Gun Powder in the same, or shall receive into any Dwelling House, Stable, Barn, Out House, Store, Ware House, Shop, or other Building within the said Town, any Bomb, Grenade, or other Iron Shell, charged with, or having Gun Powder in the same, such Person shall forfeit and pay the Sum of *Ten Pounds*, to be recovered at the Suit of the Firewards of the said Town, in an Action of Debt, before any Court proper to try the same; one Moiety thereof to the Use of the said Firewards, and the other Moiety to the Support of the Poor of the Town of Boston.

*And be it further enacted by the Authority aforesaid*, that all Cannon, Swivels, Mortars, Howitzers, Cohorns, Fire Arms, Bombs, Grenades, and Iron Shells of any Kind, that shall be found in any Dwelling House, Out House, Stable, Barn, Store, Ware House, Shop, or other Building, charged with, or having in them any Gun Powder, shall be liable to be seized by either of the Firewards of the said Town: And upon Complaint made by the said Firewards to the Court of Common Pleas, of such Cannon, Swivels, Mortars, or Howitzer, being so found, the Court shall proceed to try the Merits of such Complaint by a Jury; and if the Jury shall find such Complaint supported, such Cannon, Swivel, Mortar, or Howitzer, shall be adjudged forfeit, and be sold at public Auction; and one Half of the Proceeds thereof shall be disposed of to the Firewards, and the other Half to the Use of the Poor of the Town of Boston. And when any Fire Arms, or any Bomb, Grenade, or other Shell, shall be found in any House, Out House, Barn, Stable, Store, Warehouse, Shop, or other Building, so charged, or having Gun Powder in the same, the same shall be liable to be seized in a Manner aforesaid; and on Complaint thereof, made and supported before a Justice of the Peace, shall be sold and disposed of as is above provided for Cannon.

*Be it further enacted*, That Appeals shall be allowed in Prosecutions upon this Act as is usual in other Cases.

39

6.    **Act of June 26, 1792, 1792 Mass. Acts 21, ch. 7 -** AN ACT IN ADDITION TO THE SEVERAL ACTS NOW IN FORCE WHICH RESPECT THE CARTING & TRANSPORTING GUN POWDER THROUGH THE STREETS OF THE TOWN OF BOSTON & THE STORAGE THEREOF IN THE SAME TOWN.

*Whereas the provisions in the said Acts made have been found insufficient to prevent the carting & transporting Gun Powder through the Streets of the said Town in a dangerous & alarming mode.*

*Be it Enacted by the Senate & House of Representatives in General Court Assembled & by the authority of the same*, that from & after the first day of August next no Gun Powder shall be carried or transported to or from the Magazine within the said Town or through any of the Streets thereof in any quantity exceeding twenty five pounds, being the quantity allowed by Law to be kept in Shops for Sale, unless the same be carried & transported in a Waggon or carriage closely covered with leather or canvas, & without iron on any part thereof, to be first approbated by the Firewards of said Town and marked in capitals, with the words, *Approved Powder Carriage* under the penalty of forfeiting all such Gun Powder, one moiety thereof to the use of the poor of the said Town & the other moiety to the use of him or them who shall inform & sue for the same.

*And be it further enacted, by the authority aforesaid*, That all Gun Powder which shall be imported into the said Town of Boston from & after the said first day of August shall be landed at such place or places only & be carried to the Magazine aforesaid by such passage by Land or Water only as shall be directed & pointed out by the Firewards of the said Town under the penalty of forfeiting to the uses aforesaid all such Powder as shall be landed or conveyed otherwise than is in this Act provided – The Penalties & Forfeitures aforesaid to be sued for & recovered by Bill, Plaint, or Information in any Court proper to try the same – And the Firewards aforesaid are hereby directed from time to time to publish their regulations & orders respecting the same in three of the Public News Papers in the said Town six weeks successively; *provided nevertheless*, that nothing in this Act shall be construed to extend, or operate as a prohibition to the transporting of Powder from & out of the Magazine in the town of Boston into any part of this Commonwealth, or from the Powder Mills in the Country to the Magazine aforesaid in such Carts or Carriages as hath been customary & heretofore used.

7.    **Act of June 19, 1801, 1801 Mass. Acts 292, ch. 20 -** AN ACT TO PROVIDE FOR THE STORING & SAFE KEEPING OF GUN POWDER IN THE TOWN OF BOSTON, & TO PREVENT DAMAGE FROM THE SAME.

SECT. 1ST. *Be it enacted by the Senate & House of Representatives, in General Court Assembled, & by the Authority of the same*, That all Gun Powder imported & landed at the Port of Boston, shall be brought to & lodged in the Powder House or Magazine in said Town, & not elsewhere, on pain of confiscation of all Powder put or kept in any other House or place; -- one Moiety thereof to and for the use & supply of the Public Store of the State, & the other Moiety to the informer; *Provided nevertheless*, That it shall & may be lawful for any person to keep in his House, or Shop for Sale, by retail, the quantity of Twenty-five pounds of Gun Powder at one time, which quantity shall be kept in brass, copper or tin Tunnels, & no otherwise, under the penalty of forfeiting all

40

such Gun Powder – one Moiety to the use of the Firewards of the town of Boston, & the other Moiety to the use of him or them who shall inform of the same.

SECT. 2D. *And be it further enacted by the Authority aforesaid*, That for all Powder belonging to Merchants or other private persons, put into the said Magazine, there shall be paid to the use of the Commonwealth twenty cents per barrel, containing one hundred Pounds weight, at the receipt thereof, and ten cents per barrel of like weight, per month, after the first month, during all the time which it shall be stored or kept therein, & twenty five cents upon each delivery of any quantity thereof; out of which (if there be sufficient to answer it), -- the charge of looking after the said House & the Powder lodged there shall be defrayed – And the Governor, with the advice & consent of the Council, is hereby authorized to appoint a Keeper of the said Magazine, & to give necessary instructions & orders from time to time, as they shall think fit, for regulating the keeping, turning & managing of all Powder put into said Magazine for the preserving thereof.  And the said Keeper shall give bond to the Treasurer of the Commonwealth, for the use thereof, in such sum & with such surety as to the Governor & Council shall appear proper, for the faithful discharge of the duties of his office.  And the Keeper of said House shall duly attend at proper hours, to be assigned by the Governor & Council, for the receiving & delivering out of Merchants' Powder.  And if, at any time, the payment for Merchants' Powder (an account whereof shall be rendered an oath) will not defray the expence of looking after the said House, so much as is wanting shall be paid out of the Publick Treasury.

SECT. 3D. *And be it further enacted*, That no Gun Powder shall be kept on board any Ship or other vessel lying to, or grounded at any Wharf within the Port of Boston; and if any Gun Powder shall be found on board such Ship or Vessel, lying at any Wharf or aground, such powder shall be liable to confiscation, & under the same penalty as if it were found lying in any House or Ware-house.

SECT. 4TH. *And be it further enacted*, That any person within the town of Boston, that shall presume to keep in his house, warehouse, or other building, any powder, above what is by Law allowed, shall forfeit & pay, for every half barrel, the sum of Twenty Dollars, & so in proportion for any greater quantity over & above the forfeiture & confiscation of the said Powder – one moiety thereof to the use of the Town, -- the other moiety to him or them who shall inform of the same.

SECT. 5. *And be it further enacted*, That it shall be the duty of the Firewards of the town of Boston, to prosecute for all breaches of this Act in any Court proper to try the same; & that a Law, made in the year one thousand seven hundred & six, for erecting a Powder house in the town of Boston, & one act made in the year one thousands seven hundred & fifteen; -- one act in the year one thousand seven hundred & nineteen, & one act made in the year one thousand seven hundred & eighty in addition to the same, be & hereby are repealed.

8.     **Act of June 12, 1808, 1807 Mass. Acts 378, ch. 136 -** AN ACT IN ADDITION TO ACTS REGULATING THE STORAGE, SAFE KEEPING AND TRANSPORTATION OF GUN POWDER, WITHIN THE TOWN OF BOSTON.

SECT. 1. *Be it enacted by the Senate and House of Representatives, in General Court assembled, and by the authority of the same*, That no ship or other vessel, on board of which gun powder shall

41

be laden, shall lay at any wharf in the town of Boston, nor within two hundred yards of any wharf within said town.

SECT. 2. *And be it further enacted*, That when any gun powder shall be landed in the town of Boston from on board any ship or other vessel laying in the harbour of Boston, the same shall be brought to, and landed at Tileston's wharf, and shall be immediately carried from the place of landing, to the public powder house, on Pine Island, in the town of Roxbury, either in boats, or in a waggon or waggons, cart or carts, or other carriage closely covered with leather or canvas, and without any iron on any part thereof, and which shall have been approved by the fire wards of the town of Boston, and marked in capital letters with the words, Approved Powder Carriage. And that any gun powder shall be intended to be laden on board any ship or other vessel, in the harbour of Boston, the same shall not be brought through any part of the town of Boston by land, unless the same be brought in a waggon, cart, or other carriage, made and approved as aforesaid, nor unless such gun powder be brought to Tileston's wharf aforesaid, and be thence carried directly on board the ship or other vessel, on board which the same is to be laden.

SECT. 3. *And be it further enacted*, That no person or persons, not in public service, or on military duty, shall keep, have or possess in any house, ware-house, ship or other building, nor in any street, lane, alley, or passage-way, yard or cellar, nor in any waggon, cart, or other carriage, nor on any wharf, nor on board any ship or other vessel, nor in any place within the town of Boston, gun powder in any quantity exceeding five pounds, in any way or manner, otherwise than as by this act is permitted and allowed.

SECT. 4. *And be it further enacted*, That all gun powder, which shall be found within the town of Boston, contrary to the provisions of this act, shall be forfeited, and may be seized by any one or more of the fire wards of said town, and shall be libelled according to the provisions of the act passed on the seventh day of March, one thousand eight hundred and four, entitled "An act in addition to the several acts now in force, which respect the transporting, storing, and safe keeping of gun powder, in the town of Boston;" and such gun powder shall be forfeited, one moiety thereof to the use of the commonwealth, and the other moiety thereof, to the use of the fire wards of said town of Boston: *Provided always*, that it shall and may be lawful for any person or persons, to keep in his or their house, ware-house or shop, for sale by retail, any quantity of gun powder not exceeding twenty-five pounds in the whole; *provided* the same be constantly kept in copper, brass or tin canisters, closely covered with copper, brass or tin, and not otherwise.

SECT. 5. *And be it further enacted*, That if any gun powder shall be found within the town of Boston, contrary to the provisions of this act, the owner or owners of such gun powder, or other person or persons in whose possession the same shall be found, besides the forfeiture of the powder, shall forfeit and pay forty cents for each and every pound of such gun powder, one moiety to the use of any person or persons, who shall prosecute and sue for the same; which forfeiture of forty cents as aforesaid, may be recovered by action of the case, in any court proper to try the same.

SECT. 6. *And be it further enacted*, That when any gun powder shall have been seized and libelled as aforesaid, if the owner or owners, or any person or persons who possessed the same at the time of the seizure thereof, shall appear and dispute the forfeiture, and said gun powder shall be finally decreed and adjudged forfeited, such owner or other person who shall so appear and dispute such

42

forfeiture, shall pay all costs of prosecution, which may arise after such appearance shall have been made, and judgment may be therefor rendered, and a writ of execution issued accordingly.

SECT. 7. *And be it further enacted*, That every person who shall suffer any injury by the explosion of any gun powder, had, possessed, or being within the town of Boston, contrary to the provisions of this act, may have an action of the case, in any court proper to try the same, against the owner or owners of such gun powder, or against any other person or persons who may have had the possession or custody or such gun powder, at the time of the explosion thereof, to recover reasonable damages for the injury sustained.

SECT. 8. *And be it further enacted*, That it shall and may be lawful for any two or more of the fire wards in the town of Boston, to enter any building, or other place in the town of Boston, to search for gun powder, which they may have reason to suppose to be concealed or kept, contrary to the provisions of this act, first having obtained a search warrant therefor according to law.

SECT. 9. *And be it further enacted*, That an act, entitled, "An act in addition to the several acts now in force, which respect the carting and transporting gun powder through the streets of the town of Boston, and the storage thereof in the same town;" passed the twenty-sixth day of June, in the year seventeen hundred and ninety-two, be, and the same hereby is repealed:  And also, that the first, third, and fourth sections of an act, entitled, "An act to provide for the storage and safe-keeping of gun powder, in the town of Boston, and to prevent damage from the same;" passed the nineteenth day of June, in the year one thousand eight hundred and one, be, and the said sections hereby are repealed:  *Provided however*, that all actions, suits, processes, and forfeitures already commenced or incurred shall be commenced and prosecuted according to said laws, the said repeals notwithstanding.

SECT. 10.  *And be it further enacted*, That this act shall be in force, from and after the passing thereof; and that it shall be the duty of the fire wards aforesaid, to cause the same to be immediately published, in two or more of the Boston newspapers, and to continue the publication thereof, six weeks successively.

> **9.** **Act of June 14, 1814, 1814 Mass. Acts 533, ch. 47 -** AN ACT TO PROVIDE FOR THE SAFE KEEPING OF GUN-POWDER IN THE TOWN OF ROXBURY.

SEC. 1. *Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same*, That from and after the first day of August next, no person or persons (not on military duty) shall keep, have or possess, in any store, barn, house, or other building, or in, or upon any place or thing whatever, within the town of Roxbury, except in a public powder-house in said town, Gun-powder in any quantity exceeding five pounds, in any way or manner, otherwise than as by this act is permitted:  *Provided nevertheless*, That nothing in this act shall be construed to operate as a prohibition to the transporting of Gun-powder through the town of Roxbury aforesaid, or to, or from the public magazine in said town, from or into any part of this Commonwealth.

SEC. 2. *Be it further enacted*, That no merchant or private armed vessel, on board of which Gun-powder shall be laden in quantity exceeding twenty-five pounds, shall lay within two hundred yards of any wharf within said town.

SEC. 3. *Be it further enacted*, That all Gun-powder found within the town of Roxbury, contrary to the provision of this act, shall be forfeited, and may be seized by any one or more of the fire-wards of said town; and it shall be the duty of such fire-ward or fire-wards, within twenty days after such seizure, and praying for a decree of forfeiture; and the Judges of said Court shall have power to hear and determine the cause by a jury, where there is a claimant, but without a jury, if upon proclamation no claimant appear, and to decree the forfeiture and disposition of such property according to law; and may decree a sale and distribution of the proceeds, first deducting all charges; and if such libels be not supported, restitution of the property shall be decreed without costs; but if a claimant appear, and disputes the forfeiture, and said Gun-powder shall be finally decreed forfeited, such claimant shall pay all costs of prosecution, which may have legally arisen thereon.

SEC. 4. *Be it further enacted*, That all such Gun-powder so forfeited, shall be forfeited one third part thereof to the use of the Commonwealth, one third part to the use of the fire-ward or fire-wards making such seizure, and one third part to the use of the poor of the said town of Roxbury: *Provided always*, That it shall and may be lawful for any person or persons, to keep in his or their house, ware-house or shop, for sale by retail, any quantity of Gun-powder, not exceeding twenty-five pounds in the whole; *Provided*, The same be constantly kept in copper, brass, or tin canisters, closely covered with copper, brass, or tin, and not otherwise.

SEC. 5. *Be it further enacted*, That if any Gun-powder shall be found in the town of Roxbury aforesaid, contrary to the provisions of this act, the owner or owners of the same, or other person or persons in whose possession it shall be found, besides the forfeiture aforesaid, shall forfeit and pay forty cents for every pound of such Gun-powder, one moiety thereof to the use of the poor of said town of Roxbury, and the other moiety to the use of him or them who shall sue for the same; which forfeiture of forty cents may be recovered by action of the case, in any Court proper to try the same.

SEC. 6. *Be it further enacted*, That it shall and may be lawful for any one or more of the fire-wards of said town of Roxbury, to enter any building or other place in said town of Roxbury, in the day time, to search for Gun-powder, which they may have reason to suppose to be concealed or kept contrary to the provisions of this act, having first obtained a search warrant therefor, according to law.

> **10.  Act of February 15, 1825, 1824 Mass. Acts 524, ch. 78 -** AN ACT REGULATING THE TRANSPORTATION OF GUN POWDER IN AND THROUGH THE TOWN OF CHARLESTOWN.

SEC. 1. *Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same*, That from and after the passing of this Act, all Gun Powder, brought into or conveyed through the town of Charlestown by the Middlesex Canal, in any boat or otherwise, the same shall be closely and entirely covered with leather or painted canvass, and shall proceed without delay, (other than is necessary in passing locks,) through the Mill Pond to Charles River and to the place of its destination: *Provided nevertheless*, That whenever such boat or other

vehicle be impeded in its passage by wind, low water, or other cause, the same shall be removed at a distance of not less than one hundred yards from the shore or landing place in said Mill Pond, not shall it approach said landing place again, unless it proceed without delay to Charles River; and no boat or other vehicle loaded or principally loaded with Gun Powder, shall approach another loaded in like manner and belonging to the same concern within one hundred yards, and no such boat or vehicle shall be allowed to have any fire on board, nor be left without being under the immediate care and inspection of some suitable person.

SEC. 2. *Be it further enacted*, That whenever any quantity of Gun Powder, exceeding fifty pounds, is conveyed into or through said town of Charlestown otherwise than by the Canal, the same shall proceed without delay, to the place of its destination in carriages or vehicles closely and entirely covered with leather or painted canvass, and the bottom and sides covered with some soft substance that shall prevent any dangerous friction; and all Gun Powder, whether conveyed by land or water carriage, shall be enclosed in tight casks, boxes or canisters that shall prevent the escape of any particle of their contents; and no load of Gun Powder shall exceed fifteen hundred pounds, or be approached or followed by another load of Gun Powder, belonging to the same concern, within two hundred yards, nor be left without being under the immediate care of some suitable person: *Provided however*, That the provisions of this act shall not extend to the transportation of Gun Powder on the old road leading from Cambridge common to the Malden bridge, or in any part of said Town of Charlestown north and West of said road.

SEC. 3. *Be it further enacted*, That Gun Powder shall not be landed in the Town of Charlestown from any vessel or boat, unless the passage to the Powder House by water is so far obstructed, as to render it dangerous or impassible, and in all such cases, when it is necessary for Powder to be landed, it may be done by an application for that purpose being first made to one or more of the Fire Wards of said Town, and under his or their direction, it shall be transported forthwith to the Powder House.

SEC. 4. *Be it further enacted*, That Gun Powder found within the Town of Charlestown aforesaid, in violation of the provisions of this Act, may be seized by one or more of the Fire Wards of said Town, and shall be forfeited agreeably to the provisions of an Act entitled "An Act to provide for the safe keeping of Gun Powder in the Town of Charlestown." *Provided however*, That the seizure and forfeiture, in consequence of a violation of this Act, shall in no case exceed five hundred pounds of any one load.

11.    **Act of Mar. 6, 1847, 1847 Mass. Acts 342, ch. 51 -** AN ACT TO REGULATE THE KEEPING OF GUN-COTTON AND OTHER LIKE SUBSTANCES.

*Be it enacted by the Senate and House of Representatives, in General Court assembled, and by the authority of the same, as follows:*

The inhabitants of any town, and the government of any city in this Commonwealth, may order that no gun-cotton, or other substance prepared, like it, for explosion, shall be kept within the limits of such town or city, excepting under the regulations and penalties that are now applicable by law to gunpowder; and, if it shall be considered necessary for public safety, they may restrict the

45

quantity to be so kept to one fifth of the weight of gunpowder allowed by law in each case provided for.

    **H.**    **NEBRASKA**

        **1.**    **1895 Neb. Laws 233 -** AN ORDINANCE REGULATING AND PROHIBITING THE USE OF FIRE-ARMS, FIRE-WORKS AND CANNON IN THE CITY OF LINCOLN . . . PRESCRIBING PENALTIES FOR VIOLATION OF THE PROVISIONS OF THIS ORDINANCE, AND REPEALING ORDINANCES IN CONFLICT HEREWITH.

No person shall keep, sell, or give away any gunpowder or guncotton in any quantity without permission in writing signed by the Chief of Fire Department and City Clerk, and sealed with the corporate seal, under a penalty of twenty-five dollars for every offense: Provided, any person may keep for his own defense a quantity of gunpowder or guncotton not exceeding one pound.

    **I.**    **NEW HAMPSHIRE**

        **1.**    **Act of Feb. 28, 1786, 1786 N.H. Laws 383 -** AN ACT TO PREVENT THE KEEPING OF LARGE QUANTITIES OF GUN-POWDER IN PRIVATE HOUSES IN PORTSMOUTH, AND FOR APPOINTING A KEEPER OF THE MAGAZINE BELONGING TO SAID TOWN.

*WHEREAS, the keeping of large quantities of Gun-Powder in private houses in Portsmouth, aforesaid, or in merchant ships, or vessels lying at the wharfs in said town, would greatly endanger the lives and properties of the inhabitants thereof, in case of fire; which danger might be prevented, by obliging the owners of such powder, to deposit the same in the magazine provided by said town for that purpose:*

*Therefore,*

§ I.  BE IT ENACTED BY THE SENATE AND HOUSE OF REPRESENTATIVES, IN GENERAL COURT CONVENED, That if any person or persons, shall keep in any dwelling-house, store or other building on land, within the limits of said *Portsmouth*, except the magazine aforesaid, more than ten pounds of gun-powder at any one time, which ten pounds shall be kept in a tin cannister properly secured for that purpose, such person or persons shall forfeit the powder so kept, to the firewards of said *Portsmouth*, to be laid out by them in purchasing such utensils as they may judge proper for the extinguishing of fire: and the said Firewards are hereby directed and empowered to seize, and cause the same to be condemned in any Court of Law or Record proper to hear and try the same, to be disposed of for the purchase aforesaid.  And the offender shall also forfeit and pay a fine for the use of the poor of said *Portsmouth*, equal to the value of the powder so kept in any store, dwelling-house, or building; which fine, shall be sued for and recovered by the Overseers of the Poor of said *Portsmouth*, for the use of said Poor, in any Court of Law proper to try the same.

§ II.  AND BE IT FURTHER ENACTED BY THE AUTHORITY AFORESAID, That every master of any merchant-ship or vessel, bringing gun-powder into said *Portsmouth*, shall, within the space of

forty-eight hours after his arrival, deposit in said magazine, all the gunpowder by him so brought as aforesaid; and if he shall neglect so to do, he shall pay a fine of *thirty pounds* for the use of the Poor of said *Portsmouth*, to be recovered by said Overseers, in manner aforesaid.

§ III.  AND BE IT FURTHER ENACTED, That there shall be chosen annually, or oftener if necessity require, by the inhabitants of said *Portsmouth*, being legal voters, a keeper of said magazine, whose duty it shall be, to receive into, and deliver out of said magazine, all the powder so deposited, and to account therefore, who shall have a right to demand and receive for his time and trouble in attending on said business, at the rate of *one shilling* per hundred weight, for all quantities of powder above ten pounds, that he shall so receive into and deliver out of said magazine; and for all quantities under ten pounds, at the rate of *a half-penny* per pound.

> **2.**    **Act of July 2, 1825, 1825 N.H. Laws 73 -** AN ACT TO REGULATE THE KEEPING AND SELLING, AND THE TRANSPORTING OF GUN-POWDER.

SECT. 1. BE *it enacted by the Senate and House of Representatives in General Court convened*, That there shall not at any time be kept in any ware-house, store, shop, or other building in the compact part of any town of village in this State, a greater quantity of gun-powder than three quarter cask or seventy-five pounds; and any person or persons so keeping a greater quantity, shall forfeit and pay for every day during which such greater quantity of gun-powder shall be kept as aforesaid, a sum not exceeding five dollars, nor less than one dollar, to be recovered by any person sueing for the same in an action of debt before any justice of the peace, or court proper to try the same, with costs of suit, one half for the use of the prosecutor and the other half for the use of the town in which such gun-powder is kept; or, if sued for by the firewards or selectmen of any town, then the whole of said forfeiture shall be kept for the use of said town, to be expended by said firewards or selectmen in purchasing materials necessary and proper for extinguishing fires.  And the said firewards or selectmen are hereby authorized and empowered to seize any gun-powder kept as aforesaid in a greater quantity than one quarter cask, and cause the same to be condemned in any court proper to hear and try the same, the avails of which shall be expended for the purposes aforesaid.

SECT. 2.  *And be it further enacted*, That every person keeping gunpowder to sell by retail in less quantity than seventy-five pounds, and who shall not at all times keep the same in a tin canister or canisters or other incombustible vessel or vessels, covered and secured from fire, or in cask which shall be enveloped in substantial and close leathern bags or sacks, shall forfeit and pay for each and every day, he, she or they shall so keep it, a sum not exceeding five dollars nor less than one dollar, to be sued for and recovered with costs of suit in the manner and for the uses and purposes aforesaid.

SECT. 3.  *And be it further enacted*, That gunpowder pounds be enveloped in substantial and close leathern bags or sacks; and any person or persons transporting gunpowder as aforesaid, in a greater quantity and without being enveloped as aforesaid, except the same be conveyed in a closely covered carriage, shall forfeit and pay a sum not more than fifty dollars nor less than ten dollars, to be sued for and recovered with costs of suit, in the manner and for the uses and purposes aforesaid.

SECT. 4. *And be it further enacted*, That no person shall at any time transport or carry from town to town or from place to place any gunpowder for the purpose of peddling, or selling it by retail, on penalty that the owner or owners, or person or persons selling it, or offering it for sale, shall forfeit and pay a sum not exceeding five dollars nor less than one dollar for each cask of gunpowder so transported or carried and sold or offered for sale, to be recovered with costs of suit and applied to the same uses and purposes as herein before directed.

SECT. 5. *And be it further enacted*, That if any person or persons shall sell or offer for sale by retail any gunpowder in any highway, or in any street, lane, or alley, or on any wharf, or on any parade or common, such person so offending shall forfeit and pay for each and every offence a sum not more than five dollars nor less than one dollar, to be recovered and applied as aforesaid.

SECT. 6. *And be it further enacted*, That if any person or persons shall within this State, in the night time between sunsetting and sunrising, sell or offer to sell by retail, or deal out any gunpowder, such person so offending shall forfeit and pay for each and every such offence a sum not more than five dollars nor less than one dollar, to be recovered and applied as aforesaid.

SECT. 7. *And be it further enacted*, That all prosecutions for offences against this act shall be commenced within three months after the offence shall have been committed, and not afterwards.

### 3. 1891 N.H. Laws 332, ch. 117 - SAFE-KEEPING OF GUNPOWDER AND OTHER EXPLOSIVES.

If any person shall carry from town to town, or from place to place, any gunpowder for the purpose of peddling or selling it by retail in quantities less than twenty-five pounds, or shall sell, or offer to sell, by retail, any gunpowder in any highway or street, or on any wharf, parade, or common, or if any person shall sell or deal out any gunpowder in the night time, between sunset and sunrise, he shall forfeit for each offense a sum not more than five dollars.

## J. NEW JERSEY

### 1. 1811 N.J. Laws 300 - AN ACT TO REGULATE GUN POWDER MANUFACTORIES AND MAGAZINES WITHIN THIS STATE.

No person or persons whatsoever shall be permitted within this state to erect or establish or cause to be erected or established any manufactory which shall be actually employed in manufacturing gun powder either by himself or any other person, either on his own land or another, within the distance of a quarter of a mile from any dwelling house, barn or out house, without the consent under hand and seal of all and every the owner or owners of such dwelling house. . .

### 2. 1886 N.J. Laws 358 - AN ACT TO REGULATE THE MANUFACTURE AND STORAGE OF GUN POWDER, DYNAMITE AND OTHER EXPLOSIVE.

No person or persons or corporations shall after the passage of this act, be permitted within this state to erect, have or maintain, or cause to be erected, had or maintained any establishment,

storehouse or building in which in which shall be manufactured, stored or kept any gun powder, blasting powder, dualin, dynamite, forcite, giant powder, nitroglycerine, or any powder or materials of which nitroglycerine is an essential ingredient or forms a component part, or any other explosive within the distance of one thousand feet from any public road . . .

### K.    NEW YORK

1.    **Act of Mar. 24, 1772, 1761-1775 N.Y. Laws 682, ch. 1549 -** AN ACT TO PREVENT THE DANGER ARISING FROM THE PERNICIOUS PRACTICE OF LODGING GUN-POWDER IN DWELLING-HOUSES, STORES, OR OTHER PLACES WITHIN THE CITY OF NEW-YORK, OR ON BOARD OF VESSELS WITHIN THE HARBOUR.

WHEREAS the City of *New-York* has lately been greatly endangered by the storing of Gun-Powder to the Southward of *Fresh-Water,* contrary to Law, notwithstanding the Corporation have long since provided a Powder-House for that Purpose.

I. *Be it therefore Enacted by his Excellency the Governor, the Council, and the General Assembly, and it is hereby Enacted by the Authority of the same,* That from and after the passing of this Act, it shall not be lawful for any Person or Persons, other than Shop-keepers and Retailers of Gun-Powder, to have or keep in any Place within two Miles of the City-Hall of the said City, more than Six Pounds of Gun-Powder, nor for Shopkeepers and Retailers more than Twenty-eight Pounds Weight of Gunpowder, and that in four separate Stone Jugs, or Leathern Bags, each of which shall not contain more than Seven Pounds of Gun-Powder, upon Pain of forfeiting all such Gun-Powder; and the Sum of *Forty Pounds* for every Hundred Weight, and in that Proportion for a greater or less Quantity; and upon Pain of forfeiting all such Quantities which any Person may lawfully keep as aforesaid, and which shall not be separated as above directed, with full Costs of Suit to any Person or Persons who will inform and sue for the same, by any Action, Bill, or Information, in any of his Majesty's Courts of Record in this Colony; which Courts are hereby impowered and required to give Special Judgment in such Actions, Bills, or Informations to be brought upon this Act, as well for the Recovery of such Gun-Powder in Specie, as for the Penalty aforesaid, besides Costs, and to award effectual Execution thereon.

II. *And be it further Enacted by the Authority aforesaid,* That it shall be lawful for the Mayor or Recorder, or any two Justices of the Peace of the City and County of *New-York,* upon Demand made by any one or more Housholder or Housholders, being an Inhabitant or Inhabitants of the said City, within two Miles of the City-Hall of the said City, assigning a reasonable Cause of Suspicion, on Oath; of the Sufficiency of which Cause the said Mayor or Recorder, or Justices, is and are to judge, to issue his or their Warrant or Warrants, under his or their Hands and Seals, for searching in the Day-Time for Gun-Powder within the Limits aforesaid, any such Building or Place whatsoever, or any such Ship or Vessel within twelve Hours after her Arrival and fastening to the Wharf, or to any other Ship or Vessel along Side of the Wharf or Key, of which Building, Place, Ship or Vessel such reasonable Cause of Suspicion shall be assigned, on Oath, as aforesaid; and that upon every or any such Search, it shall be lawful for the Searchers or Persons finding the same, immediately to seize, and then, or at any Time within twelve Hours after such Seizure, to amove, or Cause to be amoved, all such Gun-Powder as shall be found within the Limits aforesaid, or on board of such Vessel as aforesaid, upon any such Search, exceeding the Quantity allowed by this

49

Act, to some proper Magazine, now or to be built for the Purpose of Storing of Gun-Powder; and the same being so amoved, it shall be lawful to detain and keep the same until it shall be determined in one of his Majesty's Courts of Record of this Colony, whether the same shall be forfeited by Virtue of this Act; and the Person or Persons so detaining the same, shall not in the mean Time be subject or liable to any Action or Suit for the keeping or detaining the same, until it shall be determined, whether the same be forfeited as aforesaid.

III. *Provided always, and be it Enacted, by the same Authority,* That nothing is this Act contained, shall be construed to countenance or authorize any Person having such Warrant, to take Advantage of the same, for serving any civil Process of any kind whatsoever, but that all such Service shall be absolutely null and void.

IV. *Provided also, and it is hereby further enacted by the Authority aforesaid,* That it shall not be lawful for any Person or Persons interested in such Gun-Powder, or any Person or Persons by Collusion with the Owners or Proprietors thereof, to have or maintain any Action, Bill, or Information, upon this Act; any Thing herein contained to the contrary notwithstanding.

V. AND for preventing the dangerous Carriage of Gun-Powder, in and through the Streets of the City of *New-York,* within two Miles of the City Hall of the said City: *Be it Enacted by the Authority aforesaid*, That from and after the passing of this Act, it shall not be lawful for any Person or Persons, to carry or convey in or through any of the Streets or Lanes within the Limits aforesaid, more than Five Hundred Pounds Weight of Gun-Powder at a Time; and that all Gun-Powder which shall be carried or conveyed in any Carts or Carriages, or by Hand or otherwise, in or thro' any of the Streets or Lanes aforesaid, after the Time aforesaid, shall be in tight Casks, well headed and hooped, and shall be put into Bags or Cases of Leather, and intirely covered therewith, so as that no such Gun-Powder be spilt or scattered in the Passage thereof; and if at any Time after the passing of this Act, any Gun-Powder shall be carried or conveyed by any Person or Persons, in or through any of the Streets or Lanes aforesaid, in any greater Quantity, or in any other Manner than as aforesaid, all such Gun-Powder shall be forfeited, and shall and may be seized by any Person or Persons, to his or their own Use and Benefit, the Person or Persons so offending, being thereof lawfully convicted before two Justices of the Peace. *Provided always,* That this Act or any Thing herein contained, shall not extend or be construed to extend in any wise, to affect any Ship of War, Storehouse, or Magazine belonging to his Majesty, his Heirs or Successors, wherein Gun-Powder or other Stores shall be kept, for the Use of the Public or the Powder House above-mentioned.

VI. *And be it further Enacted by the Authority aforesaid,* That if any Suit or Action shall be commenced or prosecuted against any Person or Persons, for any Thing done in Pursuance of this Act, in every such Case, such Person or Persons, shall and may plead the general Issue, and give this Act and the Special Matter in Evidence, at any Tryal to be had thereupon, and that the same was done in Pursuance, or by the Authority of this Act; and if a Verdict shall pass for the Defendant or Defendants, or the Plaintiff or Plaintiffs, shall become non-suit or discontinue his, her, or their Suit or Action after Issue joined, or if upon Demurrer or other-wise, Judgment shall be given against the Plaintiff or Plaintiffs, the Defendant or Defendants, shall and may recover treble Costs, and shall have the like Remedy for the same, as any Defendant or Defendants, hath or have in any other Case by Law.

50

VII. *Provided always, and be it Enacted by the Authority aforesaid,* That all Suits, Actions, and Prosecutions to be brought, commenced or prosecuted against any Person or Persons, for any Thing done or to be done, in Pursuance or by Authority of this Act, shall be laid and tryed in the County where the Fact was committed, and shall be commenced and prosecuted without wilful Delay, within six Calendar Months next after the Fact committed, and not otherwise.

VIII. *And be it further Enacted by the Authority aforesaid,* That if any Powder other than such Quantity as any Person by this Act, may lawfully keep in his Custody, shall be found during any Fire, or Alarm of Fire in the said City, by any of the Firemen of the said City, it shall be lawful for him to seize the same, without Warrant from a Magistrate, and to hold and have the same to his own Use; any Thing in this Act to the contrary notwithstanding.

### L.    OHIO

1. **1849 Oh. Laws 408 -** AN ACT REGULATING THE STORAGE, SAFE-KEEPING AND TRANSPORTATION OF GUNPOWDER IN THE TOWN OF PROVIDENCE.

That the said town council of Ripley shall have power to ordain and establish laws and ordinances . . . to regulate the sale of gunpowder therein.

### M.    RHODE ISLAND

1. **Act of Oct. 1821, 1821 R.I. Laws 23 -** AN ACT REGULATING THE STORAGE, SAFE-KEEPING AND TRANSPORTATION OF GUNPOWDER IN THE TOWN OF PROVIDENCE.

Section 1. *Be it enacted by the General assembly, and by the authority thereof it is enacted*, That no person except on military duty in the public service of the United States or of this State, shall keep, have or possess, in any house, warehouse, shop or other building, nor in any street, lane, alley, passage-way, yard or cellar, nor in any waggon, cart or other carriage, nor on any wharf, nor on board of any ship or other vessel, nor in any place within the town of Providence, gunpowder in any quantity exceeding five pounds, in any way or manner other than by this act may be permitted and allowed; and all gunpowder had, kept or possessed contrary to the provisions hereof, shall be forfeited and liable to be seized and proceeded against in the manner herein after provided.

Sec. 2. *And be it further enacted*, That it shall not be lawful for any person or persons to sell any gunpowder which may at the time be within the town of Providence, in any quantity, by wholesale or retail, without first having obtained, from the Town Council of said town, a license to sell gunpowder; and every such license shall be written or printed, and signed by the president of said council, or their clerk, on a paper upon which shall be written or printed a copy of this act; and every such license shall be in force for one year from the date thereof, unless annulled by said council, and no longer; but such license may, prior to the expiration of that time, be renewed by indorsement thereon for a further term of one year, and so from year to year: *Provided always*, That the said town-council may annul any such license, if, in their opinion, the person or persons licensed have forfeited the right of using the same by any violation of the laws relative thereto; and every person who shall receive a license as aforesaid shall pay therefor the sum of five dollars,

and on having the same renewed shall pay therefor the sum of one dollar, which shall be paid to the clerk of said council, for their use, for the purpose of defraying the expences of carrying this act into execution.

Sec. 3.  *And be it further enacted*, That any person or persons who shall keep, have, possess or transport any gunpowder within the town of Providence, contrary to the provisions of this act, or who shall sell any gunpowder therein without having a license therefor, then in force, shall forfeit and pay a fine of not less than twenty dollars, and not exceeding five hundred dollars, for each and every offence; and if any gunpowder, kept contrary to the provisions of this act, shall explode in any shop, store, dwelling-house, ware-house or other building, or in any place in said town, the occupant, tenant or owner of which has not a license in force to keep and sell gunpowder therein, or which gunpowder shall have been kept in any manner contrary to the terms and conditions of such license, such occupant, tenant or owner shall forfeit and pay a fine of not less than twenty dollars, nor more than five hundred dollars.

Sec. 4.  *And be it further enacted*, That all gunpowder which shall be kept, had or possessed, within the town of Providence, or brought into, or transported through the same, contrary to the provisions of this act, may be seized and taken into custody by any one or more of the firewards of said town, and the same shall, within ten days next after the seizure thereof, be libelled, by filing, in the office of the Clerk of the Court of Common Pleas within and for the county of Providence, a libel, stating the time and place and cause of such seizure; a copy of which libel, or the substance thereof, together with a summons or notice, which such Clerk is hereby authorized to issue, shall be served on the person or persons from whose custody or possession, or in whose tenement, such gunpowder shall have been seized, if such person or persons be an inhabitant or inhabitants of this State, by delivering a copy thereof to such person or persons, or leaving such copy at his, her or their usual place of abode, twenty days at least before the sitting of the court at which the same is to be heard, that such person or persons may appear and shew cause why the gunpowder so seized and taken should not be adjudged forfeit; and if the gunpowder so seized shall be adjudged forfeit, the person or persons in whose custody or possession the same was seized, or the occupant or tenant of the place wherein the same was seized, shall pay all costs of prosecution, and execution shall be issued therefor, provided it appear that such person or persons had due notice of such prosecution by service as aforesaid; and in case the person or persons in whose custody or possession, or in whose tenement, such gunpowder may be seized, shall be unknown to the fireward or firewards making such seizure, or in case such gunpowder, at the time of seizure, may not be in the custody or possession of any person, or if it shall appear by the return of the officer, that such person or persons cannot be found, or has no known place of abode in this State, then said court shall and may proceed to adjudication thereon; and such libel or summons, and also such writ of execution for costs, shall and may be served and executed in any county in this State, by any officer competent to execute civil process in like cases.

Sec. 5.  *And be it further enacted*, That any person or persons who shall rescue, or attempt to rescue, any gunpowder seized as aforesaid, or shall aid or assist therein, or who shall counsel or advise, or procure the same to be done, or who shall molest, hinder or obstruct any fireward in such seizure, or in carrying gunpowder, so seized, to a place of safety, shall forfeit and pay a fine for each offence of not less than twenty dollars, and not exceeding five hundred dollars; and it is hereby made the duty of all magistrates, civil officers, and of all the good citizens of said town in

52

their respective stations, and as far as they may be required, to aid and assist such fireward or firewards in executing the duties hereby required.

Sec. 6.  *And be it further enacted*, That the said firewards, or any of them, may enter the store or place of any person or persons licensed to sell gunpowder, to examine and ascertain whether the laws relating thereto are strictly observed; and also whenever there may be any alarm of fire; and in such last case may cause the powder there deposited to be removed to a place of safety, or to be destroyed by wetting or otherwise, as the exigency of the case may require; and it shall be lawful for any one or more of the firewards aforesaid to enter any dwelling-house, store, building or other place in the said town, to search for gunpowder, which they may have reason to suspect to be concealed or unlawfully kept therein, first having obtained, from some Justice of the Peace of said town, a search warrant therefor, which warrant any one of the Justices of said town is hereby respectively authorized to issue, upon the complaint of such fireward or firewards, supported by his or their oath or affirmation.

Sec. 7.  *And be it further enacted*, That any person who shall suffer injury by the explosion of any gunpowder had, kept or transported within the town of Providence, contrary to the provisions of this act, may have an action of the case in any court proper to try the same, against the owner or owners of such gunpowder, or against any other person or persons who may have had the custody or posession of the same at the time of the explosion thereof, to recover reasonable damages for the injury thus sustained.

Sec. 8.  *And be it further enacted*, That no ship or other vessel on board of which gunpowder shall be laden, shall lie at any wharf in the town of Providence, nor at any place north of India Point channel within said town.

Sec. 9.  *And be it further enacted*, That when any gunpowder shall be landed in the town of Providence, from on board any ship, boat or other vessel, the same shall and may be brought to, and landed at, such place or places as may be designated by the town-council of said town; and when any gunpowder shall be intended to be laden on board of any ship or vessel lying in the harbor of Providence, the same shall and may be brought to and delivered and laden from such place or places as may be designated as aforesaid; and no gunpowder shall be landed at, or shipped from, any other wharf or place in said town, nor detained an unnecessary length of time at said wharf or place.

Sec. 10.  All gunpowder which shall be transported through said town, to whatever place it may be destined, shall he put into strong leather bags, closely tied, and on which shall be printed, in Roman capitals, the word "GUNPOWDER," and shall so remain in said bags whilst it is within the bounds of said town, and shall not be suffered to remain a longer time than is necessary in the boat or carriage in which it may be transported:  *Provided however*, That said bags may be taken off whenever said powder shall be deposited in some magazine, as hereinafter designated.

Sec. 11.  All gunpowder transported through said town, except when carried by hand, shall be conveyed in a cart, waggon, or other carriage, closely covered with leather or canvas, marked as aforesaid with the word "gunpowder," in some conspicuous place thereon, excepting, however, that a quantity of gunpowder, not exceeding in the whole four casks, of twenty-five pounds each,

53

may be received and put into any cart or waggon which is to pass through any part of the town on its way to the country: *Provided*, That each cask shall be put into a leather bag, closely tied up and marked as aforesaid, and so remain until without the bounds of said town.

Sec. 12.  All boats employed in transporting gunpowder shall have the casks of powder covered with canvas, and shall have a red flag displayed in the bow or stern of the boat, so long as any powder remains on board.

Sec. 13.  All persons who wish to have a licence to keep and sell gunpowder within the town, shall make application to the town-council in writing, stating their place of business, and whether they wish to sell by wholesale or retail, or both; and to each person or firm, who may be approbated, a certificate of licence shall be granted, on payment of the fee established by law.

Sec. 14.  Every person or firm, who may be licenced to sell gunpowder by retail, shall be allowed to keep in the place or building designated in the licence, twenty-five pounds of gunpowder, and no more, at one time, which shall always be kept in tin or copper cannisters, capable of containing no more than twelve and a half pounds each, with a small aperture at the top, and a tin or copper cover thereto.

Sec. 15.  Every person or firm, who may be licenced to sell gunpowder by wholesale shall provide and keep a tin or copper chest, with two handles, and a tight cover, furnished with a hinge, and secured with a padlock, all of tin or copper; such chest shall always be kept on the lower floor on the right side of, and close to, the principal door or entrance from the street into the building so licenced, except when otherwise designated by this council, and shall always be kept locked, except when powder is put in or taken out; and such person or firm, so licenced, shall be allowed to deposite and keep, in such tin or copper chest, a quantity of gunpowder not exceeding four casks of twenty five pounds each; the heads of each cask not to be opened, and each cask to be kept in a strong leather bag, closely tied and marked as aforesaid.

Sec. 16.  *And be it further enacted*, That every person or firm, licenced to keep and sell gunpowder as aforesaid, by wholesale or retail, shall have and keep a sign-board placed over the door or building in which such powder is kept, on which shall be painted, in Roman capitals, the words "licenced to sell gunpowder."

Sec. 17.  *And be it further enacted*, That no gunpowder shall be kept, otherwise than as before provided for licenced dealers, at any place within the town of Providence, except in such place or places, and in such buildings, as may be designated by the town-council thereof.

Sec. 18.  *And be it further enacted*, That all fines, penalties and forfeitures, except otherwise herein prescribed, which may arise and accrue under the provisions of this act, shall and may be prosecuted for, and recovered by, indictment or action of the case in any court of competent jurisdiction; one half thereof to and for the use of the poor of said town, to be paid over to the treasurer thereof, and one half to and for the use of any person or persons who may prosecute or sue for the same; and this act shall be deemed and taken to be a public act, and shall and may be proceeded on as such.

54

Sec. 18. *And be it further enacted*, That the act entitled "an act relative to the keeping of gunpowder in the town of Providence," be and the same is hereby repealed: *Provided however*, That the same shall continue in force for the purposes of prosecuting all offences which may have been committed prior to the passing hereof.

### N. VERMONT

1. **Act of Nov. 28, 1876, 1876 Vt. Laws 336 -** AN ACT TO INCORPORATE THE VILLAGE OF NORTH TROY.

SEC. 2. Said corporation shall have power to make such prudential by-laws, rules and regulations as they shall from time to time deem proper . . . to regulate the manufacture and keeping of gunpowder, ashes, and all other combustible or dangerous materials . . .

2. **Act of Nov. 15, 1888, 1888 Vt. Laws 260 -** AN ACT TO INCORPORATE THAT PART OF THE VILLAGE OF SWANTON, IN THE TOWN OF SWANTON, INCLUDED IN FIRE DISTRICT NUMBER ONE, IN SAID VILLAGE.

SEC. 30. The president and trustees shall be *ex officio* fire wardens and may inspect the manner of manufacturing and keeping gun-powder, lime, ashes, matches, lights, fire works of all kinds, and other combustibles, and the construction and repairs of fire-places, stoves, flues, and chimneys. The majority of said fire wardens may, if they deem the same dangerous, order the persons manufacturing and keeping such gun-powder, lime, ashes, matches, lights, fire-works or combustibles, in what manner to manufacture and keep the same, and the owners of such fire-places, stoves, flues or chimneys, how to repair, the same and a person who does not obey such order shall be fined not more than twenty dollars.

### O. WISCONSIN

1. **Charter and Ordinances of the City of La Crosse, with the Rules of the Common Council, 239-242, (1888) (available at The Making of Modern Law: Primary Sources).**

ORDINANCES OF LA CROSSE, AN ORDINANCE TO PROVIDE FOR LICENSING VENDORS OF GUNPOWDER AND OTHER EXPLOSIVE SUBSTANCES AND TO REGULATE THE STORING, KEEPING AND CONVEYING OF ALL DANGEROUS AND EXPLOSIVE MATERIALS AND SUBSTANCES WITHIN THE CITY OF LA CROSSE, AND IN RELATION TO THE STORAGE AND SALE OF LIME THEREIN,

§ 1. It shall be unlawful for any person to keep for sale, sell or give away any gunpowder, giant powder, nitro-glycerine, gun-cotton, dynamite or any other explosive substance of like nature or use without having first obtained a license therefor from the city of La Crosse in the manner hereinafter provided. Any person convicted of a violation of this section shall be punished by a fine of twenty-five dollars for each offense. . . § 3. It shall be unlawful for any person licensed pursuant to the foregoing sections of this ordinance to have or keep at his or her place of business an amount of gunpowder or other explosive material greater in the aggregate than fifty pounds at

any one time, or to keep the same in any other than cases or canisters made of tin, or other metal holding not to exceed ten pounds each. Such gunpowder or other explosive materials shall be kept in places remote from fires and lighted lamps or candles, and where the same may be easily accessible so as to be removed in case of fire. No person shall sell any gunpowder or other explosive material after the lighting of lamps in the evening unless in sealed canisters or cases; and all places where business is carried on under any such license shall have a sign put up in a conspicuous place at or near the front door thereof with the word "gunpowder" painted thereon in large letters. Any person violating any provision of this section shall, upon conviction, be punished by a fine of not less than five dollars nor more than fifty dollars for each offense; and upon any such conviction the common council may at its discretion by resolution duly passed revoke the license of the person so convicted. This ordinance shall not be construed as to prevent persons who are not vendors of the articles mentioned in the title thereof from keeping gunpowder in quantities not exceeding one pound for their own use.

# United States Court of Appeals
## For the First Circuit

### NOTICE OF APPEARANCE

**No.** 25-1918          **Short Title:** Granata v. Campbell

The Clerk will enter my appearance as counsel on behalf of (*please list names of all parties represented, using additional sheet(s) if necessary*):

Giffords Law Center to Prevent Gun Violence and Brady Center to Prevent Gun Violence          as the

[  ] appellant(s)          [  ] appellee(s)          [✔] amicus curiae

[  ] petitioner(s)          [  ] respondent(s)          [  ] intervenor(s)

/s/ Jean-Paul Jaillet
Signature

April 1, 2026
Date

Jean-Paul Jaillet
Name

Choate, Hall & Stewart LLP
Firm Name (if applicable)

617-248-5259
Telephone Number

Two International Place
Address

617-502-5259
Fax Number

Boston, MA 02110
City, State, Zip Code

jjaillet@choate.com
Email (required)

Court of Appeals Bar Number: 1136189

Has this case or any related case previously been on appeal?

[  ] No          [✔] Yes   Court of Appeals No. 22-1478

============================================================================

**Attorneys for both appellant and appellee must file a notice of appearance within 14 days of case opening**. New or additional counsel may enter an appearance outside the 14 day period; however, a notice of appearance may not be filed after the appellee/respondent brief has been filed without leave of court. 1st Cir. R. 12.0(a).

**Counsel must complete and file this notice of appearance in order to file pleadings in this court**. Counsel not yet admitted to practice before this court must promptly submit a bar application. 1st Cir. R. 46.0(a)(2).

# United States Court of Appeals
## For the First Circuit

_____

### NOTICE OF APPEARANCE

**No.** 25-1918          **Short Title:** Granata v. Campbell

The Clerk will enter my appearance as counsel on behalf of *(please list names of all parties represented, using additional sheet(s) if necessary)*:

Giffords Law Center to Prevent Gun Violence and Brady Center to Prevent Gun Violence_____ as the

[ ] appellant(s)          [ ] appellee(s)          [✔] amicus curiae

[ ] petitioner(s)          [ ] respondent(s)          [ ] intervenor(s)

/s/ Madeleine M. Kausel                    April 1, 2026
Signature                                  Date

Madeleine M. Kausel
Name

Choate, Hall & Stewart LLP          617-248-4926
Firm Name (if applicable)           Telephone Number

Two International Place              617-502-4926
Address                             Fax Number

Boston, MA 02110                    mkausel@choate.com
City, State, Zip Code               Email (required)

Court of Appeals Bar Number: 1206855

Has this case or any related case previously been on appeal?

[ ] No          [✔] Yes   Court of Appeals No. 22-1478

====================================================================

**Attorneys for both appellant and appellee must file a notice of appearance within 14 days of case opening**. New or additional counsel may enter an appearance outside the 14 day period; however, a notice of appearance may not be filed after the appellee/respondent brief has been filed without leave of court. 1st Cir. R. 12.0(a).

**Counsel must complete and file this notice of appearance in order to file pleadings in this court**. Counsel not yet admitted to practice before this court must promptly submit a bar application. 1st Cir. R. 46.0(a)(2).

# United States Court of Appeals
## For the First Circuit

### NOTICE OF APPEARANCE

**No.** 25-1918          **Short Title:** Granata v. Campbell

The Clerk will enter my appearance as counsel on behalf of *(please list names of all parties represented, using additional sheet(s) if necessary)*:
Giffords Law Center to Prevent Gun Violence and Brady Center to Prevent Gun Violence          as the

[  ] appellant(s)          [  ] appellee(s)          [✔] amicus curiae

[  ] petitioner(s)          [  ] respondent(s)          [  ] intervenor(s)


/s/ Sarah B. Gonsenhauser          April 1, 2026
Signature                                     Date

Sarah B. Gonsenhauser
Name

Choate, Hall & Stewart LLP          617-248-5069
Firm Name (if applicable)                  Telephone Number

Two International Place          617-502-5069
Address                                        Fax Number

Boston, MA 02110          sgonsenhauser@choate.com
City, State, Zip Code                  Email (required)

Court of Appeals Bar Number: 1220021


Has this case or any related case previously been on appeal?

[  ] No          [✔] Yes   Court of Appeals No. 22-1478
=========================================================================
**Attorneys for both appellant and appellee must file a notice of appearance within 14 days of case opening.** New or additional counsel may enter an appearance outside the 14 day period; however, a notice of appearance may not be filed after the appellee/respondent brief has been filed without leave of court. 1st Cir. R. 12.0(a).

**Counsel must complete and file this notice of appearance in order to file pleadings in this court.** Counsel not yet admitted to practice before this court must promptly submit a bar application. 1st Cir. R. 46.0(a)(2).